UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

PROGRESSIVE PLUMBING, INC.,

Chapter 11
Case No.:

Expedited Hearing Requested

Estimated Time for Hearing: 15 Minutes

Debtor.

_____/

**EMERGENCY MOTION TO COMPEL COMPLIANCE WITH THE AUTOMATIC STAY AND REQUEST FOR EMERGENCY PRELIMINARY HEARING**

Debtor, Progressive Plumbing, Inc., by and through its proposed undersigned counsel, and pursuant to 11 U.S.C. §§ 105 and 362, hereby moves the Court for an order enforcing the automatic stay and requests an emergency preliminary hearing on the relief sought herein. In support, Debtor states as follows:

Preliminary Statement – Certificate of Need for Emergency Relief

One of Debtor's creditors, Allied World Specialty Insurance Company f/k/a Darwin National Assurance Company ("Darwin"), sent letters to many third party general contractors who owe the Debtor money. In these letters, Darwin demanded that all future payments owed to Debtor be made to Darwin instead. The effect of these pre-petition letters is that no one is getting paid. After filing this chapter 11, Debtor requested that Darwin retract the letters and cooperate in communicating with the third parties that all funds should be paid to Debtor on account of the automatic stay. Darwin has refused. If Debtor does not receive immediate relief, then Debtor may lose its ability to ever collect these funds, finish these profitable jobs, and pay subcontractors and materialmen. These fund are the proverbial "melting ice cream cone," and if clear instructions are

1

not sent out soon to these third parties to pay Debtor, then Debtor may not have the cash flow to continue as a going concern and may have to liquidate.

### Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Procedural Background

3.      On August 24, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.      The Debtor is operating its business and managing its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### Factual Background

5.      Debtor is a plumbing contractor in Clermont who has been in business since 1985. Debtor's role is generally as a subcontractor on large commercial construction projects. Debtor has 39 employees and multiple ongoing jobs which jobs continue to provide for Debtor's current and future cash flow.

6.      On March 20, 2013, Darwin and Debtor entered into a General Indemnity Agreement (the "GIA") whereby Darwin agreed to stand as surety for certain jobs performed by Debtor.

7.      For months, Darwin and Debtor have engaged in a dispute regarding Debtor's performance on a project in Atlanta. Darwin issued a demand to Debtor for immediate payment of over $750,000.00 as an indemnity under the GIA.

8.      Debtor simply did not have the liquidity to comply with this request and further

2

disputed the amount due. After long and seemingly productive negotiations, Darwin and Debtor reached a settlement whereby, on July 8, 2015, Debtor executed a promissory note in the amount of $752,107.33 in favor of Darwin (the "Note"). The Note provided for monthly payments on a ten year amortization with a five year term.

9.      To secure the Note, Darwin demanded collateral, and Debtor and its affiliates and principals executed a Mortgage and Security Agreement (as amended, the "Darwin Mortgage"). The Darwin Mortgage purportedly granted a second mortgage to Darwin in the Headquarters and the Shop, along with property owned by Debtor's principals personally. The Darwin Mortgage (as amended) was recorded on July 27, 2015.

10.     Barely one week after recording the Darwin Mortgage, Darwin called a default under the terms of the Note based on allegations that Debtor had misapplied approximately $36,000.00. Darwin then demanded the immediate execution of deeds to all of the real property collateral and the immediate turnover to Darwin of all funds from all of Debtor's jobs.

11.     To make matters much worse, on August 6, 2015, barely a week after recording the Darwin Mortgage, Darwin sent letters to certain of Debtor's general contractors on jobs which were bonded by Darwin, instructing and demanding that they forward all amounts due to Debtor to Darwin instead (the "Bonded Job Letters"). Copies of certain of the Bonded Job Letters issued by Darwin are attached hereto as **Composite Exhibit A**.

12.     The Bonded Job Letters threatened and continue to threaten Debtor's general contractors with double liability if the general contractors make payments to the Debtor and not to Darwin. The effect of the Bonded Job Letters has been to freeze both Debtor and Darwin out from payments of any of these funds.

13.     In addition, Darwin also sent a letter on August 8, 2015, to a general contractor

3

named KAST Construction Company, LLC ("KAST"), demanding that KAST make all payments due to Debtor on its contract with Debtor to Darwin instead, even though the job Debtor has with KAST *is not bonded by Darwin* (the "KAST Letter," and collectively with the Bonded Job Letters, the "Letters"). The KAST Letter is particularly egregious because Darwin has no even remote connection with the KAST job. A copy of the KAST Letter is attached as **Exhibit B**.

14.     The Letters may have been sent prepetition, but they continue to have the effect that Darwin desired, namely to put pressure on Debtor to pay its debts to Darwin or face the consequence of failing to receive any funds on these jobs.

15.     Debtor's business likely cannot survive without being able to collect these funds and complete these jobs.

16.     On all but one of the jobs from which Darwin demanded payment, Debtor was not in default. Debtor was timely completing its performance obligations and has earned receivables for work done. On these jobs, Darwin has not stepped in to make payments and is not the "completing surety" which would otherwise give Darwin rights of subrogation to the funds.

17.     On the Petition Date, counsel for Debtor immediately sent a letter to counsel for Darwin explaining the existence of the automatic stay, citing to case law requiring affirmative action by Darwin to comply with the stay, and requesting cooperation and a retraction of the Letters. A copy of the letter dated August 24, 2015, is attached hereto as **Exhibit C**.

18.     On the Petition Date, the undersigned spoke with counsel for Darwin by telephone and stated that counsel for Darwin should review the case law. The undersigned also agreed to wait 24 hours for a response before Debtor would file this Motion.

19.     On the date of this Motion, counsel for Darwin informed the undersigned that Darwin would not retract any of the Letters.

4

<u>Relief Requested and Incorporated Memorandum of Law</u>

20.    Among other things, the automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," "any act to create, perfect, or enforce any lien against property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(3), (4), & (5).

21.    Furthermore, the automatic stay often requires creditors to undo collection actions and processes which a creditor initiated prior to a bankruptcy filing. *See In re Mims*, 209 B.R. 746, 748 (Bankr. M.D. Fla. 1997).  If a creditor puts in place collection activities that will continue to have an effect post-petition, "[n]o action is unacceptable" because "no action is to thwart the effectiveness of the automatic stay." *Id.* (citing *Elder v. City of Thomasville,* 12 B.R. 491 (Bankr. M.D. Ga. 1981)).

22.    In such a situation, "[t]he creditor and its agents, including its attorney, have an **affirmative duty** to stop" the collection activity.  *Mims*, 209 B.R. at 748 (requiring creditor to undo prepetition garnishment action) (emphasis added).  *See also In re Carpenter*, 2010 WL 2573985, fn. 1 ("there is an affirmative duty to undo a prepetition act who continuation postpetition violates the automatic stay"); *Eskanos & Adler, P.C. v. Leetien*, (9th Cir. 2002) 309 F.3d 1210, 1216. (holding that § 362(a) imposes an affirmative duty upon a creditor to discontinue post-petition collection actions without delay).

23.    Additionally, "[o]nce the creditor receives actual notice [of a bankruptcy], the burden shifts to the creditor to prevent violations of the automatic stay." *In re Joachin*, 2015 WL 4300890, at *2 (Bankr. S.D. Fla. 2015).

24.    A willful violation of the stay does not require a specific intent to violate the

automatic stay; it is sufficient that the creditor knew of the automatic stay and that the creditor's actions were intentional. *Cuffee v. Atl. Bus. & Comty. Dev. Corp. (In re Atl. Bus. & Comty. Dev. Corp.)*, 901 F.2d 325, 329 (3rd Cir. 1990).

25.     By sending the Letters, Darwin essentially exercised a right of non-judicial garnishment. The effect of the Letters is the same as the effect of a writ of garnishment, namely, a demand for payment from a third party and a threat of double payment if the third party refuses.

26.     By refusing to retract the Letters, Darwin is, through its inaction, allowing the collection process it started prepetition to continue postpetition. This inaction is, effectively, an "act to collect, assess, or recover a claim against the debtor."

27.     Case law around the country is unanimous that the failure to act in such a situation as this is tantamount to action and therefore a willful violation of the automatic stay. Darwin's inaction in this case is "to thwart the effectiveness of the automatic stay."

WHEREFORE, the Debtor respectfully requests entry of an order requiring Darwin to issue written retractions of the Letters to each recipient as soon as possible, reserving jurisdiction to hear evidence and argument on potential sanctions and fees for Darwin's willful violation of the automatic stay pursuant to § 105 and § 362(k), setting an emergency preliminary hearing as soon as possible, and granting such other and further relief as is just and equitable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail and/or CM/ECF to all creditors listed to all parties registering for CM/ECF this 26th day of August, 2015, including Darwin National Assurance Company, c/o Jonathan Cohen, Esq., jcohen@jcohenpa.com, 500 East Broward Blvd., Suite 1710, Fort Lauderdale, Florida 33394.

/s/ Michael A. Nardella
Michael A. Nardella, Esq.
Florida Bar No. 051265
Nardella & Nardella, PLLC
250 East Colonial Drive, Suite 102
Orlando, FL 32801
(407) 966-2680
mnardella@nardellalaw.com

Proposed Counsel for Debtors

and

/s/ Roman V. Hammes
Roman V. Hammes, Esq.
Florida Bar No. 087250
Roman V. Hammes, P.L.
250 East Colonial Drive, Suite 305
Orlando, FL 32801
(407) 650-0003
roman@romanvhammes.com

Proposed Counsel for Debtors

**<u>Composite Exhibit A</u>**



James A. Keating
AVP – Surety Claims
James.Keating@AWAC.com

August 6, 2015

***VIA CERTIFIED MAIL AND FACSIMILE***
Welbro Building Corporation
B. Holmes
2301 Maitland Center Parkway
Suite 250
Maitland, FL 32751

RE:    Surety:        Darwin National Assurance Co.
       Principal:     Progressive Plumbing, Inc.
       Obligee:       Welbro Building Corporation
       Project:       Plumbing at Residence Inn by Marriott, Orlando, FL
       Bond No.:      D000000187

Dear Mr. Holmes:

Allied World Insurance Co. and its affiliates and subsidiaries, including Darwin National Assurance Company ("Allied World") is the surety on the above referenced project. As you know Allied World has received numerous claims of non-payment on the referenced project and other projects. Allied World has sustained losses across numerous projects as a result of bonds issued to Progressive Plumbing, Inc. ("PPI").

As Surety, and pursuant to our Power of Attorney granted by PPI, in a certain Agreement of Indemnity executed by PPI in favor of Allied World, we are directing Welbro Building Corporation ("OBLIGEE"), to make ANY and ALL current and future payments due to PPI directly to Allied World for Allied World's direct distribution to all properly performing subcontractors and suppliers and/or for reimbursement for project related losses. We have attached a copy of the Agreement of Indemnity for your reference.

Effective immediately, please forward all funds due to PPI to Allied World at the following address:

          James A. Keating, Esquire
          Allied World Ins. Co.
          30 South 17th Street, 16th Floor
          Philadelphia, PA 19103

ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.    30 South 17th Street       T. 267 800 1819       E. info@awac.com
                                              16th Floor                 F. 267 800 1859       www.awac.com
                                              Philadelphia, PA 19103

Welbro Building Corporation
B. Holmes
August 6, 2015
Page 2 of 2

OBLIGEE's failure to follow the above direction may jeopardize Allied World's rights with respect to the bond issued for this project, and Allied World will assert your failure to follow these instructions as a defense to any claim that you may file against the performance bond issued on behalf of PPI. Furthermore, should OBGLIEE fail to follow these instructions, Allied World will be entitled to collect from OBLIGEE for any proper payment bond claims that Allied World may be forced to pay. As such, your cooperation is greatly appreciated.

Thank you for your attention to this matter. Should you have any questions or concerns, please feel free to call me anytime.

Very Truly Yours,

JAMES A. KEATING, ESQ.
Assistant Vice President – Surety Claims

JAK/
Enclosure
CC:    Progressive Plumbing, Inc. – via electronic mail only
       Michael Sasso, Esq., atty for Progressive Plumbing – via electronic mail only
       Jonathan P. Cohen, Esq., atty for Allied World Ins. Co. – via electronic mail only



James A. Keating
AVP – Surety Claims
James.Keating@AWAC.com

August 6, 2015

***VIA CERTIFIED MAIL AND FACSIMILE***
Shaner Development Corporation
Peter Belmore
1965 Waddle Road
State College, PA 16801

RE:      Surety:      Darwin National Assurance Co.
            Principal:   Progressive Plumbing, Inc.
            Obligee:    Shaner Development Corporation
            Project:     Plumbing - Madeira Beach Courtyard, LF
            Bond No.:   D000000185

Dear Mr. Belmore:

Allied World Insurance Co. and its affiliates and subsidiaries, including Darwin National Assurance Company ("Allied World") is the surety on the above referenced project.  As you know Allied World has received numerous claims of non-payment on the referenced project and other projects.  Allied World has sustained losses across numerous projects as a result of bonds issued to Progressive Plumbing, Inc. ("PPI").

As Surety, and pursuant to our Power of Attorney granted by PPI, in a certain Agreement of Indemnity executed by PPI in favor of Allied World, we are directing Shaner Development Corporation ("OBLIGEE"), to make ANY and ALL current and future payments due to PPI directly to Allied World for Allied World's direct distribution to all properly performing subcontractors and suppliers and/or for reimbursement for project related losses.  We have attached a copy of the Agreement of Indemnity for your reference.

Effective immediately, please forward all funds due to PPI to Allied World at the following address:

            James A. Keating, Esquire
            Allied World Ins. Co.
            30 South 17th Street, 16th Floor
            Philadelphia, PA 19103

OBLIGEE's failure to follow the above direction may jeopardize Allied World's rights with respect to the bond issued for this project, and Allied World will assert your

ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.    30 South 17th Street    T. 267 800 1819    E. info@awac.com
16th Floor    F. 267 800 1859    www.awac.com
Philadelphia, PA 19103

Shaner Development Corporation
Peter Belmore
August 6, 2015
Page 2 of 2

failure to follow these instructions as a defense to any claim that you may file against the performance bond issued on behalf of PPI. Furthermore, should OBGLIEE fail to follow these instructions, Allied World will be entitled to collect from OBLIGEE for any proper payment bond claims that Allied World may be forced to pay. As such, your cooperation is greatly appreciated.

Thank you for your attention to this matter. Should you have any questions or concerns, please feel free to call me anytime.

Very Truly Yours,

JAMES A. KEATING, ESQ.
Assistant Vice President – Surety Claims

JAK/
Enclosure
CC:    Progressive Plumbing, Inc. – via electronic mail only
       Michael Sasso, Esq., atty for Progressive Plumbing – via electronic mail only
       Jonathan P. Cohen, Esq., atty for Allied World Ins. Co. – via electronic mail only

 **ALLIED WORLD** ASSURANCE COMPANY

James A. Keating
AVP – Surety Claims
James.Keating@AWAC.com

August 6, 2015

***VIA CERTIFIED MAIL AND FACSIMILE***
Pinkerton & Laws of Georgia, Inc.
Henry Hene
1165 Northchase Parkway
Suite 100
Marietta, GA 30067

RE:      Surety:        Darwin National Assurance Co.
           Principal:     Progressive Plumbing, Inc.
           Obligee:      Pinkerton & Laws of Georgia, Inc.
           Project:       Plumbing at Westin Jekyll Island, GA
           Bond No.:    D000000181

Dear Mr. Hene:

Allied World Insurance Co. and its affiliates and subsidiaries, including Darwin National Assurance Company ("Allied World") is the surety on the above referenced project. As you know Allied World has received numerous claims of non-payment on the referenced project and other projects. Allied World has sustained losses across numerous projects as a result of bonds issued to Progressive Plumbing, Inc. ("PPI").

As Surety, and pursuant to our Power of Attorney granted by PPI, in a certain Agreement of Indemnity executed by PPI in favor of Allied World, we are directing Pinkerton & Laws of Georgia, Inc. ("OBLIGEE"), to make ANY and ALL current and future payments due to PPI directly to Allied World for Allied World's direct distribution to all properly performing subcontractors and suppliers and/or for reimbursement for project related losses. We have attached a copy of the Agreement of Indemnity for your reference.

Effective immediately, please forward all funds due to PPI to Allied World at the following address:

           James A. Keating, Esquire
           Allied World Ins. Co.
           30 South 17th Street, 16th Floor
           Philadelphia, PA 19103

ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.    30 South 17th Street    T. 267 800 1819    F. info@awac.com
16th Floor    F. 267 800 1859    www.awac.com
Philadelphia, PA 19103

Pinkerton & Laws of Georgia, Inc.
Henry Hene
August 6, 2015
Page 2 of 2

OBLIGEE's failure to follow the above direction may jeopardize Allied World's rights with respect to the bond issued for this project, and Allied World will assert your failure to follow these instructions as a defense to any claim that you may file against the performance bond issued on behalf of PPI.  Furthermore, should OBGLIEE fail to follow these instructions, Allied World will be entitled to collect from OBLIGEE for any proper payment bond claims that Allied World may be forced to pay.  As such, your cooperation is greatly appreciated.

Thank you for your attention to this matter.  Should you have any questions or concerns, please feel free to call me anytime.

Very Truly Yours,

JAMES A. KEATING, ESQ.
Assistant Vice President – Surety Claims

JAK/
Enclosure
CC:     Progressive Plumbing, Inc. – via electronic mail only
        Michael Sasso, Esq., atty for Progressive Plumbing – via electronic mail only
        Jonathan P. Cohen, Esq., atty for Allied World Ins. Co. – via electronic mail only



James A. Keating
AVP - Surety Claims
James.Keating@AWAC.com

August 6, 2015

***VIA CERTIFIED MAIL AND FACSIMILE***
D&D Construction Services of Orlando, Inc.
Darand Williams
2707 Rew Circle
Ocoee, FL 34761

RE:     Surety:         Darwin National Assurance Co.
        Principal:      Progressive Plumbing, Inc.
        Obligee:        D&D Construction Services of Orlando, Inc.
        Project:        Plumbing at Concord Orlando Courtyard, FL
        Bond No.:       D000000183

Dear Mr. Williams:

Allied World Insurance Co. and its affiliates and subsidiaries, including Darwin National Assurance Company ("Allied World") is the surety on the above referenced project. As you know Allied World has received numerous claims of non-payment on the referenced project and other projects. Allied World has sustained losses across numerous projects as a result of bonds issued to Progressive Plumbing, Inc. ("PPI").

As Surety, and pursuant to our Power of Attorney granted by PPI, in a certain Agreement of Indemnity executed by PPI in favor of Allied World, we are directing D&D Construction Services of Orlando, Inc. ("OBLIGEE"), to make ANY and ALL current and future payments due to PPI directly to Allied World for Allied World's direct distribution to all properly performing subcontractors and suppliers and/or for reimbursement for project related losses. We have attached a copy of the Agreement of Indemnity for your reference.

Effective immediately, please forward all funds due to PPI to Allied World at the following address:

             James A. Keating, Esquire
             Allied World Ins. Co.
             30 South 17th Street, 16th Floor
             Philadelphia, PA 19103

OBLIGEE's failure to follow the above direction may jeopardize Allied World's rights with respect to the bond issued for this project, and Allied World will assert your

ALLIED WORLD ASSURANCE COMPANY (US) INC.    30 South 17th Street       T. 267 800 1819        E. info@awac.com
                                           16th Floor                 F. 267 800 1859        www.awac.com
                                           Philadelphia PA 19103

D&D Construction Services of Orlando, Inc.
Darand Williams
August 6, 2015
Page 2 of 2

failure to follow these instructions as a defense to any claim that you may file against the performance bond issued on behalf of PPI. Furthermore, should OBGLIEE fail to follow these instructions, Allied World will be entitled to collect from OBLIGEE for any proper payment bond claims that Allied World may be forced to pay. As such, your cooperation is greatly appreciated.

Thank you for your attention to this matter. Should you have any questions or concerns, please feel free to call me anytime.

Very Truly Yours,

JAMES A. KEATING, ESQ.
Assistant Vice President – Surety Claims

JAK/
Enclosure
CC:    Progressive Plumbing, Inc. – via electronic mail only
       M. Sasso, Esq., atty for Progressive Plumbing – via electronic mail only
       J. P. Cohen, Esq., atty for Allied World Ins. Co. – via electronic mail only

 **ALLIED WORLD** ASSURANCE COMPANY

James A. Keating
AVP – Surety Claims
James.Keating@AWAC.com

August 6, 2015

***VIA CERTIFIED MAIL AND FACSIMILE***
The Evergreen Corporation dba Evergreen Construction
Bill McCorkle
3200 Cobb Galleria Parkway
Suite 240
Atlanta, GA 30339

RE:     Surety:     Darwin National Assurance Co.
          Principal:    Progressive Plumbing, Inc.
          Obligee:     The Evergreen Corporation dba Evergreen Construction
          Project:     Plumbing at Hyatt House at Downtown Atlanta, GA
          Bond No.:   D000000186

Dear Mr. McCorkle:

     Allied World Insurance Co. and its affiliates and subsidiaries, including Darwin National Assurance Company ("Allied World") is the surety on the above referenced project. As you know Allied World has received numerous claims of non-payment on the referenced project and other projects. Allied World has sustained losses across numerous projects as a result of bonds issued to Progressive Plumbing, Inc. ("PPI").

     As Surety, and pursuant to our Power of Attorney granted by PPI, in a certain Agreement of Indemnity executed by PPI in favor of Allied World, we are directing The Evergreen Corporation dba Evergreen Construction ("OBLIGEE"), to make ANY and ALL current and future payments due to PPI directly to Allied World for Allied World's direct distribution to all properly performing subcontractors and suppliers and/or for reimbursement for project related losses. We have attached a copy of the Agreement of Indemnity for your reference.

     Effective immediately, please forward all funds due to PPI to Allied World at the following address:

          James A. Keating, Esquire
          Allied World Ins. Co.
          30 South 17th Street, 16th Floor
          Philadelphia, PA 19103

ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.   30 South 17" Street   T. 267 800 1819   F. info@awac.com
16" Floor   F. 267 800 1857   www.awac.com
Philadelphia, PA 19103

The Evergreen Corporation dba Evergreen Construction
Bill McCorkle
August 6, 2015
Page 2 of 2

OBLIGEE's failure to follow the above direction may jeopardize Allied World's rights with respect to the bond issued for this project, and Allied World will assert your failure to follow these instructions as a defense to any claim that you may file against the performance bond issued on behalf of PPI. Furthermore, should OBGLIEE fail to follow these instructions, Allied World will be entitled to collect from OBLIGEE for any proper payment bond claims that Allied World may be forced to pay. As such, your cooperation is greatly appreciated.

Thank you for your attention to this matter. Should you have any questions or concerns, please feel free to call me anytime.

Very Truly Yours,

JAMES A. KEATING, ESQ.
Assistant Vice President – Surety Claims

JAK/
Enclosure
CC:    Progressive Plumbing, Inc. – via electronic mail only
       M. Sasso, Esq., atty for Progressive Plumbing – via electronic mail only
       J. P. Cohen, Esq., atty for Allied World Ins. Co. – via electronic mail only

**Exhibit B**



**JPC**
JONATHAN P. COHEN, P.A.

August 8, 2015

*Sent by certified mail*
Mike Neal
President
KAST Construction Company LLC
701 Northpoint Parkway
Suite 400
West Palm Beach, Florida 33407

Re:     **Project: The Water Club North Palm Beach**
        **Contractor: KAST Construction Company, LLC**
        **Subcontractor: Progressive Plumbing, Inc.**

Dear Mr. Neal:

This office serves as legal counsel for Allied World Insurance Co., its affiliates and subsidiaries, including Darwin National Assurance Company ("Allied World" or "Surety") in pursuit of indemnification and reimbursement from Progressive Plumbing, Inc. ("PPI").

Allied World is PPI's surety on several projects spanning three states and has issued payment and performance bonds in connection thereto. As a result of payments made in settlement of numerous payment bond claims, Allied World has sustained substantial losses for which PPI and its indemnitors are legally obligated to repay under the terms of an agreement of indemnity executed by and between Allied World, PPI and its indemnitors. See attached.

Pursuant to a power of attorney and assignment of rights granted by PPI to Allied World in the agreement of indemnity, Allied World is now directing KAST Construction Company LLC to make ANY and ALL current and future payments of any kind or nature due to PPI, on the project known as The Water Club North Palm Beach, directly to Allied World in connection with the reimbursement and indemnification of the Surety for losses sustained on other projects.

Please forward all payments to the following address by **August 17, 2015**:

James A. Keating, Esquire
Allied World Ins. Co.
30 South 17th Street, 16th Floor
Philadelphia, PA 19103

500 East Broward Blvd. I Suite 1710 I Fort Lauderdale, FL 33394

P 954-462-8850 I F 954-848-2987 I jcohenpa.com

If you have any questions, please do not hesitate to contact me. Your cooperation is greatly appreciated.

Yours truly,

JONATHAN P. COHEN
For the Firm

500 East Broward Blvd. I Suite 1710 I Fort Lauderdale, FL 33394
P 954-462-8850 I F 954-848-2987 I jcohenpa.com

**Exhibit C**



NARDELLA&
NARDELLA
PLLC

Michael A. Nardella
mnardella@nardellalaw.com
Direct: (407) 966-2676

August 24, 2015

**VIA EMAIL TO JAMES.KEATING@AWAC.COM & JCOHEN@JCOHENPA.COM**

Allied World Insurance Co.
Darwin National Assurance Co.
c/o James Keating, Esq.
30 S. 16th Street, 16th Floor
Philadelphia, PA 19103

Allied World Insurance Co.
Darwin National Assurance Co.
c/o Jonathan Cohen, Esq.
500 E. Broward Blvd., Suite 1710
Ft. Lauderdale, FL 33394

Dear Jim and Jonathon:

This firm represents Progressive Plumbing, Inc. ("PPI") and related entities and affiliates with regard to the voluntary Petition for chapter 11 bankruptcy filed by PPI on August 24, 2015 (the "Petition") before the United States Bankruptcy Court, Middle District of Florida, Orlando Division, Case No. 6:15-bk-07275 (the "Chapter 11").

It has come to my attention that you sent multiple letters dated August 6, 2015, to various account debtors of PPI including Kellogg & Kimsey, Inc., Evergreen Corporation, Pinkerton & Laws of Georgia, Inc., Shaner Development Corporation, Welbro Building Corporation, and D&D Construction Services of Orlando, Inc. (collectively, the "Initial Letters"). In the Initial Letters, you demanded that these account debtors pay your client directly rather than paying PPI on all related jobs and for all outstanding amounts owed to PPI. Additionally, it has come to my attention that you sent a letter dated August 8, 2015, to KAST Construction Company, LLC ("KAST"), similarly demanding payment directly from KAST (the "KAST Letter").

Upon the filing of the Petition, pursuant to 11 U.S.C. § 362(a), a stay is imposed automatically which bars any collection activities by creditors of PPI. Among other things, the stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," "any act to create, perfect, or enforce any lien against property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(3), (4), & (5).

Mr. James Keating, Esq.
Mr. Jonathan Cohen, Esq.
August 24, 2015
Page 2 of 3

Furthermore, the automatic stay often requires creditors to undo collection actions and processes which a creditor initiated prior to a bankruptcy filing. *See In re Mims*, 209 B.R. 746, 748 (Bankr. M.D. Fla. 1997) (Jennemann, J.). If a creditor puts in place collection activities that will continue to have an effect post-petition, "[n]o action is unacceptable" because "no action is to thwart the effectiveness of the automatic stay." *Id.* (citing *Elder v. City of Thomasville*, 12 B.R. 491 (Bankr.M.D.Ga.1981)).

In such a situation, "[t]he creditor and its agents, including its attorney, have an **affirmative duty to stop**" the collection activity. *Mims*, 209 B.R. at 748 (emphasis added). *See also In re Carpenter*, 2010 WL 2573985, fn. 1 ("there is an affirmative duty to undo a prepetition act who continuation postpetition violates the automatic stay"). Additionally, "[o]nce the creditor receives actual notice [of a bankruptcy], the burden shifts to the creditor to prevent violations of the automatic stay." *In re Joachin*, 2015 WL 4300890, at *2 (Bankr. S.D. Fla. 2015).

Whether or not your client had the right to send the Initial Letters, now that PPI has filed its Petition, your client has no right to collect those funds from PPI's account debtors nor any right to keep funds sent to it by those accounts debtors post-petition. In fact, your client has an affirmative duty to retract the Initial Letters and inform each account debtor that payments should be sent to PPI and not to your client. We must ask that you do so immediately as any delay could cause PPI significant damages which we will seek from the Court from your client and/or you if not done without delay. Due to the Initial Letters, PPI has not received all of the cash flow it needs to effectively operate. We would be willing to get on a conference call with each account debtor explaining the situation and informing them that all payments must be made to PPI. Your cooperation is appreciated.

The same analysis applies to the KAST Letter, except to add that your client appears to have had no colorable right to send that letter as your client is not the surety for that job. The KAST Letter appears to be intentional interference with contract and must be retracted immediately for that additional reason in addition to interfering with the automatic stay.

Please be further advised that PPI has not waived, and does not hereby waive, any rights, remedies, or recourse available to it as a result of the actions which have occurred, or any inaction in the future, all of which rights and remedies are expressly reserved by PPI. Moreover, the execution and delivery of this letter shall neither operate nor be construed as a waiver of any right, power, or remedy of PPI, or any term, provision, representation, warranty, or covenant contained in any document or agreement, all of which are expressly preserved.

Sincerely,

Nardella & Nardella, PLLC

Michael A. Nardella

Mr. James Keating, Esq.
Mr. Jonathan Cohen, Esq.
August 24, 2015
Page 3 of 3


cc:     Bill Lawson (via email only)
        Kim French (via email only)
        Michael Sasso, Esq. (via email only)