Case No.: 6:15-bk-07275-KSJ

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

PROGRESSIVE PLUMBING, INC.,

Chapter 11
Case No.: 6:15-bk-07275-KSJ

Debtor.
_____/

**RESPONSE IN OPPOSITION TO EMERGENCY MOTION TO USE CASH COLLATERAL, NOTICE OF NON-CONSENT OF USE OF CASH COLLATERAL, AND REQUEST FOR ADEQUATE PROTECTION UNDER 11 U.S.C. § 363**

Creditor Allied World Specialty Insurance Company f/k/a Darwin National Assurance Company ("Allied"), by and through the undersigned counsel, respectfully (1) submits this Response in Opposition to Debtor Progressive Plumbing, Inc.'s ("PPI") Emergency Motion to Use Cash Collateral (Doc. 4) (the "Motion to Use Cash Collateral"), (2) provides notice that Allied does not consent to PPI's use of Allied's cash collateral for anything other than its contractually mandated purpose of paying obligations for which Allied would be liable under any surety bonds it issued on behalf of PPI, and (3) requests adequate protection from PPI under 11 U.S.C. §§ 361 and 363 as follows:

**INTRODUCTION**

1.  As a preliminary matter, Allied denies a number of the meritless allegations contained in PPI's Chapter 11 Case Management Summary (Doc. 2) (the "Case Management Summary"), including, but not limited to, any express or implied allegation that Allied acted wrongfully relative to PPI or otherwise. In any event, Allied opposes and does not consent to PPI's use of the proceeds of any contract covered by a bond issued by Allied (collectively, the "Bonded Contract Proceeds") for anything other than the contractually mandated purpose of paying obligations for which Allied would be liable under the surety bonds it issued on behalf of

PPI.  Allied requests the Court to condition PPI's use of any cash collateral consisting of Bonded Contract Proceeds on, among other things (1) PPI's segregation of the Bonded Contract Proceeds from other funds in PPI's bankruptcy estate, (2) PPI's use of the Bonded Contract Proceeds for the sole purpose of satisfying obligations for which Allied would be liable under its bonds, and (3) Allied's express written consent to PPI's use of the Bonded Contract Proceeds.

## SUMMARY OF RELEVANT FACTS

2.  The Case Management Summary confirms that PPI is a commercial plumbing contractor who executed an Agreement of Indemnity in favor of Allied in 2013 (the "Indemnity Agreement").  (Doc. 2, ¶ 9).  PPI and others executed the Indemnity Agreement in favor of Allied to induce Allied to issue various performance and payment bonds on behalf of PPI relative to its plumbing contracts.  Allied has attached a copy of the Indemnity Agreement as **Exhibit A** for the Court's convenience.

3.  Among other things, the Indemnity Agreement clarifies that (1) PPI is a mere trustee in relation to any Bonded Contract Proceeds it receives and (2) the sole purpose of the Bonded Contract Proceeds is the satisfaction of obligations for which Allied would be liable under the bonds it issued on behalf of PPI.  Specifically, under Section 3.8 of the Indemnity Agreement, entitled "TRUST FUNDS," PPI and others expressly covenanted and agreed:

> **[T]o hold as a trust fund and/or as a constructive or equitable trust**, all interest, title and rights in any contract or undertaking referred to in any Bond, or in, arising in any matter out of, or any Bond, **including but not limited to payments for or on account of any contract, in which the Surety has an interest, which will inure to [Allied's] benefit** for any liability for Loss it may have or sustain under any Bond; and, further, **it is expressly declared that all moneys due or to become due under any contract covered by any Bond are trust funds, whether in the Indemnitors' possession or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract for which [Allied] would be liable under any Bond**; said trust also inures to [Allied's] benefit for any liability or Loss it may have or sustain under

any Bond or under this Agreement, and this Agreement constitutes notice of such trust.

(Emphasis added). As explained in more detail below, this trust fund provision is sufficient to create an express trust under Florida law.

4. The Indemnity Agreement also requires PPI and others to indemnify and hold Allied harmless from all liability for and all "Loss." Under Section 3.2 of the Indemnity Agreement, entitled "INDEMNITY," PPI and others covenanted and agreed to:

> [A]t all times jointly and severally to indemnify and hold [Allied] harmless from and against any and all liability for any and all Loss, and in connection, Indemnitors will pay [Allied] for all Loss specified or otherwise described in [Allied's] notice, no later than close of business on the Due Date with respect to such notice, whether or not [Allied] has actually made any payment thereon as of such Due Date.

The Indemnity Agreement defines "Loss" to mean:

> [T]he underlying dollar amount of all Claims and of all damages, expenses, costs, professional and consulting fees (including all legal fees and disbursements), interest and expenses of every nature (including premium and fees due-but-unpaid for the issuance and continuance of the Bonds) which [Allied] sustains or incurs or becomes liable for by reason of (a) being requested to execute or procure the execution of any Bond; or (b) having executed or procured the execution of any Bond; or (c) the administration of any amendment, waiver or supplement to any Bond; or (d) any Indemnitor's failure to perform or comply with any of the covenants and conditions of this Agreement; or (e) enforcement of, attempted enforcement of, or preservation of rights under any Bond or this Agreement.

5. In addition to agreeing to hold all Bonded Contract Proceeds in trust for the benefit of Allied, PPI and others assigned various rights to Allied as collateral for the indemnity obligations owed to Allied. In that regard, Section 5.1 of the Indemnity Agreement, entitled "ASSIGNMENT; COLLATERAL," states:

> Each Principal and Indemnitor[1] hereby assigns, transfers, pledges, conveys and sets over to [Allied], as collateral to secure every obligation under this

---

[1] PPI qualifies as both a "Principal" and an "Indemnitor" under the Indemnity Agreement.

1012799                                        3

Agreement, whether such obligation has arisen before or after the date of this Agreement (with the assignment of any contract to become effective as of the date of the bond covering such contract), a security interest in the following, whether now owned or hereafter existing or acquired:

(a) all of the Principals' and/or Indemnitors' rights, title and interest in, and arising in any manner out of, all contracts referred to in the Bonds (whether or not bonded), or in, or arising in any manner out of the Bonds;

(b) **any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds including, but not limited to, all percentages retained, progress payments, deferred payments, compensation for extra work and proceeds of damage claims**;

(c) all of the Principals' and/or Indemnitors' rights, title and interest in and to all machinery, supplies, equipment, plants, tools and materials of every nature and description which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites;

(d) all proprietary systems, software or any other assets of a similar nature which are employed by the Principals in connection with any and all contractual work referred to in the bonds;

(e) all of the Principals' and/or Indemnitors' rights, title and interest in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bond supporting such subcontracts;

(f) all actions, causes of action, claims and demands whatsoever which the Principal and/or Indemnitors may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialman and

(g) all proceeds of the foregoing.

Section 5.1.2 clarifies that the foregoing assignment (1) is effective as of the date of the Indemnity Agreement's execution and delivery as to each contract covered by bonds executed prior to such date and (2) as to any Bond executed and delivered on or after the date of the Indemnity Agreement's execution and delivery, the assignment will be effective as of the Bond' effective date.

6. With respect to the various "Events of Default" giving rise to Allied's right to take possession of the collateral assigned to it, including "any and all sums that may be due" under any bonded contract (*i.e.*, the Bonded Contract Proceeds), Section 5.2 of the Indemnity Agreement further provides:

> [Allied], or any persons [Allied] designates, may enforce the security interest granted herein and **may take, and are hereby authorized and empowered by each Principal and each Indemnitor to take, any action necessary to obtain possession of the funds, rights and property subject thereto if any of the following occur** (each and "Event of Default"):
>
> (1) any abandonment, breach of or failure, refusal or inability to perform, any contract referred to in the Bonds or of any breach of any said Bonds;
>
> (2) a failure by any Principal or Indemnitor, or delay, refusal, or inability to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract covered by a Bond;
>
> (3) any breach of an obligation set forth in Article III of this Agreement;
>
> (4) any Indemnitor's assignment for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for any Indemnitor or its property, whether insolvent or not, **or any Indemnitor's application for reorganization or arrangement under the terms of the United States Bankruptcy Code** or any similar laws of any state, possession or territory of the United States, or if other Persons initiate such proceedings, the continuance of those proceedings for a period of thirty days . . . .

(Emphasis added).

7. Notwithstanding PPI's erroneous assertion to the contrary, Allied perfected the assignment/security interest granted by the Indemnity Agreement on February 10, 2015, well

more than 90 days before PPI petitioned for bankruptcy protection.[2] In that regard, Section 7.13 of the Indemnity Agreement specifically authorized Allied to utilize the Indemnity Agreement as a Financing Statement under the Uniform Commercial Code as follows:

> This Agreement will constitute a Security Agreement to [Allied] and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by [Allied] without in any way abrogating, restricting or limiting the rights of [Allied] under this Agreement or under law, or in equity.

As authorized by the Indemnity Agreement, Allied perfected its security interest by filing the Indemnity Agreement as a Financing Statement with the Florida Secretary of State on February 10, 2015, a copy of which is attached hereto as **Exhibit B**.

8. In reliance upon its rights under the Indemnity Agreement, including its rights as a trust beneficiary of the Bonded Contract Proceeds, Allied issued various performance and payment bonds on behalf of PPI in relation to PPI's plumbing contracts (collectively the "Bonded Contracts"), including the following Bond (collectively, the "Bonds):

| Bond Type | Bond No. | Obligee/Beneficiary | Project | Penal Sum |
|---|---|---|---|---|
| Subcontract Performance Bond | D00000007 | Kellogg & Kimsey, Inc. | 1800 West End Hotel & MX Development, Nashville, TN | $1,750,000 |
| Subcontract Payment Bond | D00000007 | Kellogg & Kimsey, Inc. | 1800 West End Hotel & MX Development | $1,750,000 |
| Subcontract Performance Bond | D00000178 | Kellogg & Kimsey, Inc. | Courtyard by Marriott, Jupiter, FL | $635,000 |
| Subcontract Labor and Material Payment Bond | D00000178 | Kellogg & Kimsey, Inc. | Courtyard by Marriott, Jupiter, FL | $635,000 |
| Performance Bond | D00000179 | Kast Construction, LLC | Waterclub on Snell Isle, St. Petersburg, FL | $1,328,250 |
| Labor & Material Payment Bond | D00000179 | Kast Construction, LLC | Waterclub on Snell Isle, St. Petersburg, FL | $1,328,250 |

---

[2] Allied filed a UCC3 on August 6, 2015 to correct the secured party's name from Allied World Insurance Company to Allied World Specialty Insurance Company. This amendment relates back to the UCC1 filing date of February 10, 2015 and does not affect perfection. **See Exhibit B**

| Bond Type | Bond No. | Obligee/Beneficiary | Project | Penal Sum |
|---|---|---|---|---|
| Performance Bond | D00000181 | Pinkerton & Laws of Georgia, Inc. | Westin Jekyll Island, Jekyll Island, GA | $1,469,918 |
| Labor and Materials Payment Bond | D00000181 | Pinkerton & Laws of Georgia, Inc. | Westin Jekyll Island, Jekyll Island, GA | $1,469,918 |
| Subcontract Performance Bond | D00000182 | The Evergreen Corporation d/b/a Evergreen Construction | Hyatt Place Columbia, Columbia, South Carolina | $730,800 |
| Subcontract Labor and Material Payment Bond | D00000182 | The Evergreen Corporation d/b/a Evergreen Construction | Hyatt Place Columbia, Columbia, South Carolina | $730,800 |
| Subcontract Performance Bond | D00000183 | D&D Construction Services of Orlando, Inc. | Concord Orlando Courtyard, Orlando, FL | $615,000 |
| Subcontract Labor and Material Payment Bond | D00000183 | D&D Construction Services of Orlando, Inc. | Concord Orlando Courtyard, Orlando, FL | $615,000 |
| Subcontract Performance Bond | D00000185 | D&D Construction Services of Orlando, Inc. | Maderia Beach Courtyard, Maderia Beach, FL | $494,990 |
| Subcontract Labor and Material Payment Bond | D00000185 | D&D Construction Services of Orlando, Inc. | Maderia Beach Courtyard, Maderia Beach, FL | $494,990 |
| Subcontract Performance Bond | D00000186 | The Evergreen Corporation d/b/a Evergreen Construction | Hyatt House @ Downtown, Atlanta, GA | $978,000 |
| Subcontract Labor and Material Payment Bond | D00000186 | The Evergreen Corporation d/b/a Evergreen Construction | Hyatt House @ Downtown, Atlanta, GA | $978,000 |
| Subcontract Performance Bond | D00000187 | WELBRO Building Corporation | Residence Inn by Marriott, Orlando, FL | $996,200 |
| Subcontract Labor and Material Payment Bond | D00000187 | WELBRO Building Corporation | Residence Inn by Marriott, Orlando, FL | $996,200 |

9.      As of July 15, 2015, Allied had paid $691,597.23 to satisfy claims that PPI's subcontractors and suppliers had asserted against the Bonds.  Moreover, Allied continues to face significant exposure to PPI's subcontractors and suppliers relative to the Bonded Contracts, and Allied continues to face significant exposure to the obligees/beneficiaries of the Bonds.

10.     The Motion to Use Cash Collateral seeks the Court's authority to use cash collateral that "is comprised of cash on hand and funds to be received through the continued

payments on jobs from general contractors." To the extent the "cash on hand" and/or the "continued payments on jobs from general contractors" relate to Bonded Contracts, Allied possesses an interest in those payments by virtue of Allied's status as the trust beneficiary of those payments, Allied's status as a secured party relative to those payments, and Allied's status as subrogee of PPI's subcontractors/suppliers and the obligees/beneficiaries of the Bonds, which interest possessed by Allied is superior to the interest of PPI or any third-party.

## ALLIED'S SUPERIOR INTEREST IN CASH COLLATERAL AS TRUST BENEFICIARY

11. As explained above, Section 3.8 of the Indemnity Agreement, entitled "TRUST FUNDS," clarifies that (1) PPI holds/receives Bonded Contract Proceeds as a trustee, (2) Allied is the trust beneficiary of the Bonded Contract Proceeds, (3) the sole purpose of the Bonded Contract Proceeds is the satisfaction of obligations for which Allied would be liable under the Bonds. Section 3.8 of the Indemnity Agreement creates an express trust under Florida law. In fact, in *Matter of Jenkins*, 110 B.R. 74 (Bankr. M.D. Fla. 1990), the Honorable Judge Thomas E. Baynes, Jr. held that the following substantially similar trust fund provision of an indemnity agreement was sufficient to create an express trust under Florida law:

> The Undersigned and their successors, executors and administrators agree to hold all money or other proceeds of a Contract, however received, **as a trust for the benefit of Surety and to use such money or other proceeds for the purpose of performing the Contract and discharging the obligations of the Bond, and for no other purpose until the Bond is completely exonerated**.

Id. at 76 (emphasis added).

12. Multiple other courts throughout the United States have also concluded that similar trust fund provisions were sufficient to impress an express trust upon bonded contract proceeds received by a contractor, whether the trust fund provisions be found in indemnity agreements, bonded contracts, or subcontracts on bonded projects. *See, e.g., In re Poynter*, 535

F. App'x 479 (6th Cir. 2013) (indemnity agreement); *In re Marrs-Winn Co., Inc.*, 103 F.3d 584 (7th Cir. 1996) (subcontract); *Fed. Ins. Co. v. Fifth Third Bank*, 867 F.2d 330 (6th Cir. 1989) (bonded contract); *Favre v. Lyndon Prop. Ins. Co.*, 2008 WL 3271100 (S.D. Miss. Aug. 6, 2008) (indemnity agreement); *In re Hastings*, 438 B.R. 743 (Bankr. N.D. Ala. 2008) (indemnity agreement); *In re McCormick*, 283 B.R. 680 (Bankr. W.D. Pa. 2002) (indemnity agreement); *In re Wright*, 266 B.R. 848 (Bankr. E.D. Ark. 2001) (indemnity agreement); *Matter of Jenkins*, 110 B.R. 74 (Bankr. M.D. Fla. 1990); *Westview Investments, Ltd. v. U.S. Bank Nat. Ass'n*, 138 P.3d 638 (Wash. Ct. App. 2006) (bonded contract); *Chang v. Redding Bank of Commerce*, 35 Cal. Rptr. 2d 64 (Cal. Ct. App. 1994) (bonded contract).

13. Therefore, at the very most, PPI possesses bare legal title to the right to "continued payments on jobs" that are covered by the Bonds and Allied possesses equitable title to the right to such payments, which equitable title is not property of PPI's bankruptcy estate under 11 U.S.C. § 541(d). Consequently, any Bonded Contract Proceeds cannot be used, without Allied's consent, for any purpose other than satisfying obligations for which Allied would be liable under any of the Bonds. *See* 11 U.S.C. § 541(d). The only **arguable** right PPI could possess relative to use "continued payments on jobs" covered by the Bonds is the bare legal right to use those Bonded Contract Proceeds to satisfy obligations for which Allied would be liable under the Bonds. *See Varon v. Salmon (In re Martin Fein & Co., Inc.)*, 43 B.R. 623, 626 (Bankr. S.D.N.Y. 1984) ("where the debtor's interest in property consists only of bare legal title to a constructive trust, lacking any equitable interest in the trust res, the estate acquires nothing more than bare legal title"). However, even if PPI possesses legal title to Bonded Contract Proceeds, PPI has no right to recover those proceeds for the benefit of the estate. *Krommenhoek v. A-Mark*

*Precious Metals, Inc. (In re Bybee)*, 945 F.2d 309, 315 (9th Cir. 1991) ("Property in which the debtor possessed only legal title cannot be recovered for the benefit of the bankruptcy estate").

### ALLIED'S SUPERIOR INTEREST IN CASH COLLATERAL AS SECURED CREDITOR

14. Allied also possesses a superior interest in the Bonded Contract Proceeds in its capacity as a secured creditor. As collateral for its indemnity and other obligations to Allied, PPI and others specifically assigned an/or granted a security interest in, among other things, "any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds" under Section 5.1.1 of the Indemnity Agreement. Allied perfected that assignment/security interest long before PPI petitioned for bankruptcy protection. The Indemnity Agreement expressly authorizes and empowers Allied to take "any action necessary to obtain possession of the funds" upon the occurrence of an "Event of Default." Numerous "Events of Default" have incurred under the Indemnity Agreement, including PPI's failure to pay its subcontractors/suppliers relative to the Bonded Contracts and PPI's petition for bankruptcy protection. Consequently, Allied possesses a superior right to possession of any Bonded Contract Proceeds paid or to be paid under the Bonded Contracts.

### ALLIED'S SUPERIOR INTEREST IN CASH COLLATERAL AS EQUITABLE SUBROGEE

15. In addition to Allied's superior rights as a trust beneficiary and a secured creditor, Allied has an equitable subrogation interest in the Bonded Contract Proceeds, which interest is superior to any interest held by PPI's estate or any other creditors thereof. *See generally*, *Prairie State National Bank v. United States*, 164 U.S. 227, 32 Ct. Cl. 614, 17 S. Ct. 142, 41 L. Ed. 412 (1896); *Henningsen v. United States Fidelity & Guaranty Co.*, 208 U.S. 404, 28 S. Ct. 389, 52 L. Ed. 547 (1908); *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S. Ct. 232, 9 L. Ed. 2d

190 (1962), *National Shawmut Bank of Boston v. New Amsterdam Casualty Co.*, 411 F.2d 843 (1st Cir. 1969); *n re Jones Construction & Renovation, Inc.*, 337 B.R. 579, 583-84 (Bankr. E.D. Va. 2006); *In re Larbar Corp.*, 177 F.3d 439 (6th Cir. 1999). This superior interest exists regardless of whether the Bonded Contract Proceeds are in PPI's possession or the possession of the obligees/beneficiaries of the Bonds. A surety who pays the debt of its principal becomes equitably subrogated to the rights of the person he paid to enforce his right to be reimbursed. *Transamerica Ins. Co. v. United States*, 164 U.S. 227 (Fed. Cir. 1993). Additionally, "[t]he law is clear that a surety under these circumstances has a right to the payments due the contractor to the extent of full reimbursement." *In re Larbar Corp.*, 177 F.3d 439, 443 (6th Cir. 1999). A surety may set-off "profits" from certain bonded contracts against losses on other bonded contracts. *See In re Larbar Corp.*, 177 F.3d 439, 443-446 (6th Cir. 1999) (mutuality evidenced by common obligee, and allowing set-off encourages completion of losing projects). A surety's equitable subrogation rights attach regardless of whether the payments relate to a performance bond or a payment bond, and the surety's equitable subrogation rights relate "back to the date of the surety's issuance of the bonds . . . ." *Id*. at 443-44.

16. Thus, in light of Allied's subrogation rights, the Bonded Contract Proceeds are not property of PPI's bankruptcy estate. As the United States Supreme Court has explained:

> The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among the bankrupt's debtors…. So here if the surety at the time of adjudication was, as it claimed, either the outright legal or equitable owner of this fund, or had an equitable lien **or prior right to it**, **this property interest of the surety never became part of the bankruptcy estate to be administered, liquidated, and distributed to general creditors of the bankrupt**.

*Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36 (1962) (emphasis added). Allied is entitled to possession/use of the Bonded Contract Proceeds over and above all others because (1) Allied has paid multiple claims under the Bonds; (2) Allied is accruing costs and expenses and faces

additional exposure under the Bonds; and (3) Allied is in the best position to adjust claims the Bonds and mitigate its loss (which loss would immediately become a claim against PPI and its estate.

## **ADEQUATE PROTECTION IS WARRANTED**

17. To the extent PPI intends to complete the Bonded Contracts, or intends to perform its fiduciary obligation as trustee of the proceeds of the Bonded Contracts, PPI must provide adequate protection to Allied under 11 U.S.C. §§ 363 and 361.  Under 11 U.S.C.A. § 363(e),

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

Under 11 U.S.C. § 361,

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by--
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity,  this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

25. The Court can grant adequate protection by conditioning PPI's use of any cash collateral consisting of Bonded Contract Proceeds on, among other things (1) PPI's segregation of the Bonded Contract Proceeds from other funds in PPI's bankruptcy estate, (2) PPI's use of

the Bonded Contract Proceeds for the sole purpose of satisfying obligations for which Allied would be liable under its bonds, and (3) Allied's express written consent to PPI's use of the Bonded Contract Proceeds. Because PPI's officers' salaries, insurance payments, utility payments, and other various other debts mentioned in the Case Management Summary are not covered by the Bonds, the Court should prohibit PPI from using the Bonded Contract Proceeds to pay any such debts owed by PPI. The Court may also require Bonded Contract Proceeds to be paid directly to Allied to be utilized for the satisfaction of obligations for which Allied would be liable under the Bonds.

## Conclusion

29. Allied opposes and does not consent to PPI's use of the proceeds of the Bonded Contract Proceeds for anything other than the contractually mandated purpose of paying obligations for which Allied would be liable under the Bonds. Allied requests the Court to condition PPI's use of any cash collateral consisting of Bonded Contract Proceeds on, among other things (1) PPI's segregation of the Bonded Contract Proceeds from other funds in PPI's bankruptcy estate, (2) PPI's use of the Bonded Contract Proceeds for the sole purpose of satisfying obligations for which Allied would be liable under its bonds, and (3) Allied's express written consent to PPI's use of the Bonded Contract Proceeds.

Dated: August 27, 2015

        Respectfully submitted,

        */s/Jonathan P. Cohen*
        Jonathan P. Cohen
        Florida Bar No.: 11526
        **Jonathan P. Cohen, P.A.**
        500 E. Broward Blvd.
        Suite 1710

Fort Lauderdale, FL 33394
(954) 462-8850
(954) 848-2987 -fax
jcohen@jcohenpa.com
service@jcohenpa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 27, 2015, I electronically filed the foregoing using CM/ECF and by U.S. Mail to the entities or individuals listed on the mailing matrix.

*/s/ Jonathan P. Cohen*
Jonathan P. Cohen

```
Label Matrix for local noticing        Progressive Plumbing, Inc.            Allied World Specialty Ins Co f/k/a Darwin N
113A-6                                  1064 W Highway 50                     C/O Jonathan P. Cohen, Esq.
Case 6:15-bk-07275-KSJ                  Clermont, FL 34711-2835               500 E. Broward Blvd. Suite 1710
Middle District of Florida                                                    Fort Lauderdale, FL 33394-3012
Orlando
Thu Aug 27 07:11:47 EDT 2015

Canon Financial Services                Darwin National Assurance Co          Ferguson Enterprises Inc
158 Gaither Drive                       1690 New Britian Ave                  12500 Jefferson Ave
Mount Laurel, NJ 08054-1716             Suite 101                             Newport News, VA 23602-4314
                                        Farmington, CT 06032-3361


First Green Bank                        Florida Department of Revenue         Ford Motor Credit
18251 US Hwy 441                        Bankruptcy Unit                       Tax Dept, WHQ Room 612
Mount Dora, FL 32757-6718               Post Office Box 6668                  One American Road
                                        Tallahassee FL 32314-6668             Dearborn, MI 48126-2701


Hughes Supply Inc                       Internal Revenue Service              Internal Revenue Service
One Hughes Way                          Centralized Insolvency                Post Office Box 7346
Orlando, FL 32805                       PO Box 7346                           Philadelphia PA 19101-7346
                                        Philadelphia, PA 19101-7346


Lake County Tax Collector               Marlin Business Bank                  Nissan Motor Acceptance
Attn:  Bob McKee                        2795 E Cottonwood Pkwy                Corporation
Post Office Box 327                     #120                                  PO Box 650214
Tavares FL 32778-0327                   Salt Lake City, UT 84121-7092         Attn: Katherine Melendrez
                                                                              Dallas, TX 75265-0214


United States Trustee - ORL +           Michael A Nardella +                  Roman V Hammes +
Office of the United States Trustee     Nardella & Nardella, PLLC             Roman V. Hammes, P.L
George C Young Federal Building         250 East Colonial Drive, Ste 102      250 East Colonial Drive, Suite 305
400 West Washington Street, Suite 1100  Orlando, FL 32801-1231                Orlando, FL 32801-1231
Orlando, FL 32801-2210


Jonathan P Cohen +
Jonathan P. Cohen, P.A.
500 East Broward Blvd., Suite 1710
Fort Lauderdale, FL 33394-3012
```

           The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


```
(u)Allied World Specialty Insurance Company    End of Label Matrix
                                                Mailable recipients    18
                                                Bypassed recipients     1
                                                Total                  19
```