## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
### www.flmb.uscourts.gov

In re:

PROGRESSIVE PLUMBING, INC.,

PROGRESSIVE SERVICES, LLC, and
GRACIOUS LIVING DESIGN
CENTER, INC.

Debtors.

_____/

CHAPTER 11
CASE NO.: 6:15-BK-07275-KSJ

JOINTLY ADMINISTERED WITH
CASE NO.: 6:15-BK-07276-KSJ
CASE NO.: 6:15-BK-07277-KSJ

### JOINT PLAN OF REORGANIZATION SUBMITTED BY
### PROGRESSIVE PLUMBING, INC., PROGRESSIVE SERVICES, LLC,
### & GRACIOUS LIVING DESIGN CENTER, INC.

COUNSEL FOR DEBTORS

MICHAEL A. NARDELLA, ESQ.
NARDELLA & NARDELLA, PLLC
250 EAST COLONIAL DR, SUITE 102
ORLANDO, FL 32801

ROMAN V. HAMMES, ESQ.
ROMAN V. HAMMES, P.L.
1920 NORTH ORANGE AVENUE, SUITE 100
ORLANDO, FL 32804

March 25, 2016

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| **In re:** | **CHAPTER 11** |
| | **CASE NO.: 6:15-BK-07275-KSJ** |
| **PROGRESSIVE PLUMBING, INC.,** | |
| **PROGRESSIVE SERVICES, LLC, and** | **JOINTLY ADMINISTERED WITH** |
| **GRACIOUS LIVING DESIGN** | **CASE NO.: 6:15-BK-07276-KSJ** |
| **CENTER, INC.** | **CASE NO.: 6:15-BK-07277-KSJ** |
| **Debtors.** | |
| _____/ | |

### JOINT PLAN OF REORGANIZATION SUBMITTED BY PROGRESSIVE PLUMBING, INC., PROGRESSIVE SERVICES, LLC, & GRACIOUS LIVING DESIGN CENTER, INC.

PROGRESSIVE PLUMBING, INC. ("Plumbing"), PROGRESSIVE SERVICES, LLC ("Services"), and GRACIOUS LIVING DESIGN CENTER, INC. ("Gracious"), (Plumbing, Services, and Gracious may collectively be referred to as the "Debtor" or "Debtors"), by and through their undersigned counsel, hereby propose the following plan of reorganization (the "Plan"), pursuant to Chapter 11 of the Code, 11 U.S.C. § 101, *et seq.*

### ARTICLE I – DEFINITIONS

For the purpose of the Plan, the following terms will have the meaning set forth below:

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) of the Code, and of a kind referred to in § 507(a)(1) of the Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Chapter 11 Case of preserving the Debtors' Estates and operating the businesses of the Debtors, including wages, salaries, or commissions for services, compensation

for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Allied** shall mean Allied World Specialty Insurance Company f/k/a Darwin National Assurance Company.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of § 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed pursuant to § 1111(a) of the Code by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by Debtors with the Bankruptcy Court pursuant to § 521(1) and Rule 1007(b) and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by one of the Debtors on or before the Claims Objection Bar Date,

until such objection or proceeding has been overruled, dismissed or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

**Allowed Interest** shall mean an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) scheduled in the list of equity security holders prepared and filed by the Debtors with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Order of the Bankruptcy Court.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**Assets** shall mean the Debtors' real and personal property.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Case** shall mean the bankruptcy cases of Plumbing, Services, and Gracious, which are pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Code.

**Bankruptcy Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereof.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division.

**Bankruptcy Estate** shall mean the Estate created pursuant to § 541 of the Code by the commencement of Debtors' Chapter 11 cases and shall include all property of the Estates as defined in such Section.

**Bar Date** shall mean December 7, 2015 for all non-governmental creditors and February 24, 2016 for governmental creditors.

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Orlando, Florida are required or authorized to close.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits or other similar items.

**Causes of Action** shall mean the following actions and causes of action and the proceeds thereof, whether or not commenced as of the date hereof, all of which shall be vested in the Debtors:  (a) all proceedings, commenced or to be commenced pursuant to Bankruptcy Code § 502 and §§ 544-551 (or equivalent provisions of applicable non-bankruptcy laws); (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtors, any party named or identified in the Debtors' schedules or statement of financial affairs, any pleadings filed in these Chapter 11 cases; and (c) the Debtors' rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity and any other indirect claim of any kind whatsoever.

**Claim** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**Class** shall mean any Class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.*, shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Claim Objection Bar Date** shall mean ninety (90) days after the Confirmation Date, which shall be the last date on which the Debtors can object to any Claim.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereof.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to § 1129 of the Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code.

**Creditor** shall have the same meaning as set forth in § 101(1) of the Code.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court pursuant to § 1125 of the Code, together with any amendments or modifications thereto.

**Disputed Claim** shall mean a Claim against one of the Debtors which is not an Allowed Claim and which has not been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Unsecured Claim** shall mean any Unsecured Claim which is not an Allowed Unsecured Claim.

**Distribution** shall mean the Distribution to the holders of Allowed Claims.

**Effective Date** shall mean a date thirty (30) days after the Bankruptcy Court has entered the Confirmation Order, or as otherwise defined in this Plan.

**Equity Infusion** shall mean a lump sum provided by William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II, or the New Investor, to receive equity in Plumbing and to assist with funding Plumbing's Plan if Class 31 does not vote in favor of the Plan.

**Equity Interest** shall mean any and all authorized equitable interests in the Debtors.

**Estate Assets** shall mean all the assets, property and cash of the Debtors, as defined in § 541 of the Code (excluding assets previously distributed, expended or otherwise disposed of by the Debtors prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action.

**FGB** shall mean First Green Bank.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceedings is pending.

**Fiscal Year** shall mean the fiscal years of the Debtors, which commences on the first day of January and concludes on the final day of December in that same calendar year.

**Impaired Class** shall mean any Class whose members are holders of Claims or Interests which are impaired within the meaning of § 1124 of the Code.

**Insider** shall have the same meaning as set forth in § 101(31) of the Code.

**Intellectual Property** shall mean any and all pending, registered, common law and any other U.S. and foreign intellectual property of the Debtors, including, but not limited to, all copyrights, patent rights, trademark rights, service mark rights, trade dress rights, internet domain names, world wide web sites and all pages thereof, know-how, trade secret rights, proprietary or confidential technical information, procedures, formulae, databases, data skill, expertise, experience, materials, customer lists, licenses, information and other proprietary rights and processes, object and source codes, software and registration rights of mask works of circuit designs under the Semiconductor Chip Protection Act of 1984, as amended, and similar rights under corresponding foreign laws, whether now or hereafter owned by the Debtors or which any person is under an obligation to assign to the Debtors, and all goodwill, improvements and modifications related thereto.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interests, membership interests, or other equity instruments in the Debtors.

**IRS** shall mean the Internal Revenue Service.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtors, the Creditors' Committee, or any other party with standing to bring such a challenge.

**New Investor** means that certain individual or entity that, provided Class 31 votes against the Plan, is the successful bidder for the equity in Plumbing.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of the Debtors; provided, however, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean August 24, 2015, the date on which the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

**Plan** shall mean this Chapter 11 plan of reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payments** shall mean payments made by the Reorganizing Debtors pursuant to the terms of the Plan, including the payment of Nonordinary Course Administrative Claims.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Claim** shall mean a Claim other than an Administrative Claim to the extent such Claim is entitled to priority in payment under § 507 of the Code.

**Priority Tax Claim** shall mean a Claim of a governmental unit other than an Administrative Claim to the extent such Claim is entitled to priority in payment under § 507(a)(8).

*Pro Rata* means as to any Allowed Class 31 Claims as of the Effective Date or such later date on which such claim becomes Allowed, a fraction of (i) the numerator of which is the amount of such Allowed Class 31 Claim and (ii) the denominator of which is the sum of (x) all Allowed Class 4 Claims as of such date plus (y) all Disputed Class 31 Claims as of such date.

**Professional** shall mean: (i) any professional retained in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to § 1129(a)(4) of the Bankruptcy Code.

**Property** shall have the same meaning as the term "property of the estate" delineated in § 541 of the Code.

**Reorganizing Debtors** or a **Reorganizing Debtor** shall mean Plumbing, Services, and/or Gracious on and after the Effective Date.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable nonbankruptcy laws. A Secured Claim which is challenged by the Debtors shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court and

the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in 11 U.S.C. § 101(51).

**Statutory Rate** shall mean the applicable rate of interest required to be paid on *ad valorem* real property taxes.

**Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under § 507(a)(8) of the Code.

**Unclaimed Property** shall mean any cash, or any other Property of the Debtors unclaimed for a period of six (6) months after any Distribution, or, in the event that the Distribution was made on the Final Distribution Date, six (6) months after the Final Distribution Date.

**Unimpaired Class** shall mean any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of § 1124 of the Code.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim, Priority Claim, or an Administrative Claim.

**Unsecured Pot** shall mean the total amount of $380,000 which Plumbing shall pay Pro Rata to its Allowed Unsecured Claims in Class 31 if it does not otherwise pay all Allowed Class 31 Claims in full.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests treated under Articles III-V of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    Class 1 – FGB (Plumbing, Services, and Gracious).

Class 1 consists of the Allowed Secured Claim of FGB in the amount of $1,015,142.21 as to Plumbing and Services, and non-recourse as to Gracious. The Class 1 Claim is secured by a first priority lien on Debtors' headquarters real property, an assignment of leases and rents on same, Plumbing's and Services' personalty, and Plumbing's and Services' accounts. Class 1 is impaired.

B.    Class 2 – FGB (Plumbing and Gracious).

Class 2 consists of the Allowed Secured Claim of FGB in the amount of $494,403.66 as to Plumbing and non-recourse as to Gracious. The Class 2 Claim is secured by a second priority lien on Debtors' headquarters real property, and a junior priority lien on Plumbing's accounts. Class 2 is impaired.

C.    Class 3 – FGB (Services).

Class 3 consists of the Allowed Secured Claim of FGB in the amount of $100,086.65 as to Services. The Class 3 Claim is secured by a junior priority lien on Services' accounts. Class 3 is impaired.

D.    Class 4 – Internal Revenue Services (Plumbing).

Class 4 consists of the Allowed Secured Claim of the IRS in the amount of approximately $242,444.20[1] as to Plumbing. The Class 4 Claim is secured by a junior priority lien on Plumbing's headquarters real property and the adjacent lots. Class 4 is impaired.

---

[1] The IRS filed a secured claim for $573,216.86 (Claim 5). On February 25, 2016, a check for $267,772.66 was mailed to the IRS as a payment on its allowed secured claim. The check represented the net proceeds from the sale of Plumbing's fab shop. The check is to be applied to the IRS' allowed secured claim per order of the Court (Doc. No. 208).

Additionally, Plumbing has been making adequate protection payments of $12,000 to the IRS on a monthly basis since November 25, 2015. As of the filing of the plan, the Debtor has made $48,000 in adequate protection payments to the IRS. These amounts will need to be credited against the IRS's Allowed Secured Claim. It is estimated that the Debtor will make an additional $24,000 in adequate protection payments to the IRS prior to confirmation.

E.    Class 5 – Allied (Plumbing, Services, and Gracious).

Class 5 consists of the Allowed Secured Claim of Allied in an amount to be determined by the Court.  The Class 5 Claim is secured by a junior priority lien on Debtors' headquarters and a junior priority lien on certain accounts of Plumbing.  Class 5 is impaired.

F.    Class 6 – Canon Financial Services, Inc. (Plumbing)

Class 6 consists of the Allowed Secured Claim of Canon in an amount to be determined by the Court. The Class 6 Claim is secured by a lien on Plumbing's copy machine. The Debtor intends to file a motion to value this claim at $5,000.00. The secured portion of the claim will be treated in this class. The unsecured portion will be treated in Class 31. Class 6 is impaired.

G.    Class 7 – Marlin (Plumbing).

Class 7 consists of the Allowed Secured Claim of Marlin in an amount to be determined by the Court. The Class 7 Claim is secured by a lien on Plumbing's server. The Debtor intends to file a motion to value this claim at $3,200.00. The secured portion of the claim will be treated in this class. The unsecured portion will be treated in class 31. Class 7 is impaired.

H.    Class 8 – PNC Equipment Financing, LLC (Plumbing).

Class 8 consists of the Allowed Secured Claim of PNC in the amount of approximately  $13,659.48. The Class 8 Claim is secured by an interest in Plumbing's plotter. This class is unimpaired.

I.    Class 9 – Ford Motor Credit Company, LLC (Plumbing).

---

Additionally, Plumbing made payments to the IRS on its secured claim prior to the execution of the adequate protection agreement. These payments totaled $15,000 and will need to be credited against the IRS's Allowed Secured Claim.

Class 9 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $5,732.58. The Class 9 Claim is secured by an interest in a 2011 Ford Ranger (Vin 9270). This class is unimpaired.

J.      Class 10 – Ford Motor Credit Company, LLC (Plumbing).

Class 10 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $5,704.61. The Class 10 Claim is secured by an interest in a 2011 Ford Ranger (Vin 1106). This class is unimpaired.

K.      Class 11 – Ford Motor Credit Company, LLC (Plumbing).

Class 11 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $5,707.58. The Class 11 Claim is secured by an interest in a 2011 Ford Ranger (Vin 9314). This class is unimpaired.

L.      Class 12 – Ford Motor Credit Company, LLC (Plumbing).

Class 12 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $5,998.12. The Class 12 Claim is secured by an interest in a 2011 Ford Ranger (Vin 9287). This class is unimpaired.

M.      Class 13 – Ford Motor Credit Company, LLC (Plumbing).

Class 13 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $12,252.42. The Class 13 Claim is secured by an interest in a 2011 Ford Explorer (Vin 6426). This class is unimpaired.

N.      Class 14 – Ford Motor Credit Company, LLC (Plumbing).

Class 14 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $14,620.77. The Class 14 Claim is secured by an interest in a 2011 Ford F150 (Vin 1117). This class is unimpaired.

O.      Class 15 – Nissan Motor Acceptance Corporation (Plumbing).

Class 15 consists of the Allowed Secured Claim of Nissan in the amount of approximately $14,907.98. The Class 15 Claim is secured by an interest in a 2013 Nissan Frontier (Vin 6953). This class is unimpaired.

P.  Class 16 – Nissan Motor Acceptance Corporation (Plumbing).

Class 16 consists of the Allowed Secured Claim of Nissan in the amount of approximately $14,907.98. The Class 16 Claim is secured by an interest in a 2013 Nissan Frontier (Vin 7058). This class is unimpaired.

Q.  Class 17 – Nissan Motor Acceptance Corporation (Plumbing).

Class 17 consists of the Allowed Secured Claim of Nissan in the amount of approximately $14,907.98. The Class 17 Claim is secured by an interest in a 2013 Nissan Frontier (Vin 7077). This class is unimpaired.

R.  Class 18 – Nissan Motor Acceptance Corporation (Plumbing).

Class 18 consists of the Allowed Secured Claim of Nissan in the amount of approximately $14,908.20. The Class 18 Claim is secured by an interest in a 2013 Nissan Frontier (Vin 7092). This class is unimpaired.

S.  Class 19 – Ally Bank (Services).

Class 19 consists of the Allowed Secured Claim of Ally in the amount of approximately $6,096.68. The Class 19 Claim is secured by an interest in a 2010 Ford F150 (Vin 1538). This class is unimpaired.

T.  Class 20 – Ally Bank (Services).

Class 20 consists of the Allowed Secured Claim of Ally in the amount of approximately $21,852. The Class 20 Claim is secured by an interest in a 2015 Chevrolet City Express (Vin 4179). This class is unimpaired.

U.  Class 21 – Ally Bank (Services).

15

Class 21 consists of the Allowed Secured Claim of Ally in the amount of approximately $21,828.06. The Class 21 Claim is secured by an interest in a 2015 Chevrolet City Express (Vin 4255). This class is unimpaired.

V.      Class 22 – Lake County Tax Collector (Plumbing and Gracious).

Class 22 consists of the Allowed Secured Claim related to the 2014 real estate tax certificate issued to TLGFY in the amount of $2,367.53 (Certificate No. 3040) on the Debtor's property at 1064 W. Highway 50, Clermont. Class 22 is impaired.

W.      Class 23 – Lake County Tax Collector (Plumbing and Gracious).

Class 23 consists of the Allowed Secured Claim related to the 2014 real estate tax certificate issued to Ascot Capital in the amount of $13,761.86 (Certificate No. 3042) on the Debtors' property at 1064 W. Highway 50, Clermont. Class 23 is impaired.

X.      Class 24 – Lake County Tax Collector (Plumbing and Gracious).

Class 24 consists of the Allowed Secured Claim of the Lake County Tax Collector for 2015 real estate taxes on the Debtors' property at 1064 W. Highway 50, Clermont in the amount of $15,152.13. Class 24 is unimpaired.

Y.      Class 25 – Lake County Tax Collector (Plumbing and Gracious).

Class 25 consists of the Allowed Secured Claim related to the 2014 real estate tax certificate issued to Cazenovia Creek in the amount of $804.20 (Certificate No. 3039) on the Debtors' property at West Juniata Street, Clermont. Class 25 is impaired.

Z.      Class 26 – Lake County Tax Collector (Plumbing and Gracious).

Class 26 consists of the Allowed Secured Claim of the Lake County Tax Collector for 2015 real estate taxes on the Debtors' property at West Juniata Street, Clermont in the amount of $874.32. Class 26 is unimpaired.

AA.    Class 27 – Lake County Tax Collector (Plumbing).

Class 27 consists of the Allowed Secured Claim related to the 2014 real estate tax certificate issued to Cazenovia Creek in the amount of $999.19 (Certificate No. 3041) on the Debtors' property at West Broome Street, Clermont. Class 27 is impaired.

BB.    Class 28 – Lake County Tax Collector (Plumbing).

Class 28 consists of the Allowed Secured Claim of the Lake County Tax Collector for 2015 real estate taxes on the Debtors' property at West Broome Street, Clermont in the amount of $699.46. Class 28 is unimpaired.

CC.    Class 29 – Lake County Tax Collector (Plumbing).

Class 29 consists of the Allowed Secured Claim of the Lake County Tax Collector for 2015 tangible personal property taxes in the amount of $3,483.88. Class 29 is unimpaired.

DD.    Class 30 – Lake County Tax Collector (Gracious).

Class 30 consists of the Allowed Secured Claim of the Lake County Tax Collector for 2015 tangible personal property taxes in the amount of $653.30. Class 30 is unimpaired.

EE.    Class 31 – Unsecured Creditors of Plumbing.

Class 31 consists of all Allowed Unsecured Claims against Plumbing. Class 31 is impaired.

FF.    Class 32 – Unsecured Creditors of Services.

Class 32 consists of all Allowed Unsecured Claims against Services. Class 32 is impaired.

GG.    Class 33 – Unsecured Creditors of Gracious.

Class 33 consists of all Allowed Unsecured Claims against Gracious. Class 33 is impaired.

HH.   Class 34 – Equity (Plumbing).

Class 34 shall consist of all equitable interest in Plumbing.  Class 34 is impaired.

II.   Class 35 – Equity (Services).

Class 35 shall consist of all equitable interest in Services.  Class 35 is impaired.

JJ.   Class 36 – Equity (Gracious).

Class 36 shall consist of all equitable interest in Gracious.  Class 36 is impaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES

A.   Administrative Expense Claims.

Holders of all allowed Administrative Expense Claims of the Debtors as approved by the Court shall be paid in full on the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Court.  However, nothing in this provision of the Plan shall preclude the Debtors from paying any holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim holder consents to different payment terms.  The Allowed Administrative Claims shall be paid from the Equity Infusion on the Effective Date, and if such funds are not available from the proceeds, shall be paid from the Debtor's cash on hand from operation of the facility. The anticipated Administrative Expense Claims are anticipated to be the Allowed Administrative Claim of Nardella & Nardella, PLLC and Roman V. Hammes, P.L. in an amount approximately $100,000.00 over the pre-petition retainer.

1.    Nonordinary Course Administrative Claims.

a.    Any person, including any professional who has rendered services to the Debtors during the course of the Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under § 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; provided, however, that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim.  Failure to file a timely application, motion, or request for allowance pursuant to this Section by any holder of a Nonordinary Course Administrative Expense Claim shall bar such a claimant from seeking recovery on such Claim.

b.    Each holder of a Nonordinary Course Administrative Claim of the Debtors shall be paid by the Debtors one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such holder, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court.  As provided for in Article VIII of the Plan, Debtor's cash-on-hand as of the Effective Date shall be first used to pay Nonordinary Course Administrative Claims.  However, nothing in this provision of the Plan shall preclude the Debtor from paying any holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim holder consents to different payment terms.

2.     Ordinary Course Administrative Claims.  Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtors in accordance with the terms and conditions of the agreement or applicable law giving rise thereto and consistent with the approved debtor in possession facility budget.

3.     United States Trustee's Fees. All outstanding fees due to the United States Trustee will be paid in full on the Effective Date.

B.     Priority Tax Claims.

Except to the extent that the Holders and the Debtors have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall be paid the full amount of their claim with 3% interest in equal monthly installments over 60 months. The following lists the priority tax claims in this case:

| Tax Creditor | Debtor | Priority Amount | Monthly Payment |
|---|---|---|---|
| IRS | Gracious | $2,101.32 | $37.75 |
| IRS | Plumbing | $253,537.52 | $4,555.75 |
| Florida Department of Revenue | Plumbing | $3,678.09 | $66.09 |
| Georgia Department of Revenue | Plumbing | $5,257.75 | $94.48 |
| Georgia Department of Labor | Plumbing | $7,689.60 | $138.16 |
| Tennessee Department of Revenue | Plumbing | $5,685.44 | $102.15 |
| Tennessee Department of Revenue | Plumbing | $2,326.35 | $41.80 |
| North Carolina Dept of Revenue | Plumbing | $12,144.16 | $218.21 |
| South Carolina Dept of Revenue | Plumbing | $915.55 | $16.46 |

**ARTICLE IV – TREATMENT OF IMPAIRED CLASSES OF CLAIMS.**

    A.    Determination of Allowed Amounts.

        Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the date on which the Plan provides for a Distribution to be made on account of such Claim, then no Distribution on account of such Claim shall be made until the Claim becomes an Allowed Claim. Notwithstanding Confirmation of the Plan, the Debtors reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief. The Reorganizing Debtors will be responsible for all Claim objections, and all such objections will be filed on or before the Claims Objection Bar Date. Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to adjudicate any objections to Claims filed on or before the Claims Objection Bar Date.

    B.    Class 1 – FGB (Plumbing, Services, and Gracious).

        In full satisfaction of its Allowed Secured Claim, FGB's Allowed Class 1 Claim shall be treated as follows: (a) FGB shall retain is liens on the Property, and (b) FGB shall receive monthly payments based on a 20 year amortization, fixed 4.25% interest rate, and a maturity 7 years from the Effective Date. All other terms of the existing loan documents shall remain in place. The Debtors shall sign loan modification documents and security agreement necessary to evidence this obligation to FGB if reasonably requested by FGB. Gracious shall continue to remain liable for the obligations of Class 1 solely to the extent of any collateral pledged by Gracious.

C.    <u>Class 2 – FGB (Plumbing and Gracious).</u>

In full satisfaction of its Allowed Secured Claim, FGB's Allowed Class 2 Claim shall be treated as follows: (a) FGB shall retain is liens on the Property, and (b) FGB shall receive monthly payments based on a 20 year amortization, fixed 4.25% interest rate, and a maturity 7 years from the Effective Date. All other terms of the existing loan documents shall remain in place. The Debtors shall sign loan modification documents and security agreement necessary to evidence this obligation to FGB if reasonably requested by FGB. Gracious shall continue to remain liable for the obligations of Class 2 solely to the extent of any collateral pledged by Gracious.

D.    <u>Class 3 – FGB (Services).</u>

In full satisfaction of its Allowed Secured Claim, FGB's Allowed Class 3 Claim shall be treated as follows: (a) FGB shall retain is liens on the Property, and (b) FGB shall receive monthly payments based on a 5 year amortization, fixed 4.25% interest rate, and a maturity 5 years from the Effective Date. All other terms of the existing loan documents shall remain in place. The Debtors shall sign loan modification documents and security agreement necessary to evidence this obligation to FGB if reasonably requested by FGB.

E.    <u>Class 4 –IRS (Plumbing).</u>

In full satisfaction of its Allowed Secured Claim, the IRS's Allowed Class 4 Claim shall be treated as follows: (a) IRS shall retain its lien on the Property of Plumbing, (b) IRS shall be paid in full, with 3% interest, over 60 months and (c) payments to the IRS will commence on the Effective Date.

F.    <u>Class 5 – Allied (Plumbing, Services, and Gracious).</u>

In full satisfaction of its Allowed Secured Claim, Allied's Allowed Class 5 Claim shall be treated as follows: (a) Allied shall retain is liens on the Property. (b) Allied shall receive

monthly payments on that certain Promissory Note dated July 8, 2015, in the original principal amount of $752,107.33 (the "Allied Note") which Allied Note shall be reinstated and decelerated and any missed or incorrect payments shall be immediately rectified by the Debtors. (c) Allied shall receive a mortgage on that certain condominium located at 4434 Gearhart Road in Tallahassee (the "Condo") to further secure the obligations of Class 5. Allied shall receive all of the net proceeds of the sale of the Condo, and the sale of any non-debtor collateral, which Allied shall apply to the obligations under subparagraphs (d) and (e) below, except that if the proceeds are in excess of the total amount owed pursuant to subparagraphs (d) and (e) below, the remaining proceeds shall be applied against the Allied Note. Plumbing will immediately list the Condo on the market after confirmation at $180,000.00, and lower the listing price by 10% if not sold within 30 days, and by 5% for each 30 days thereafter. Plumbing shall continue to pay taxes, insurance, association fees, and any other fees related to the Condo prior to the sale. (d) Allied shall receive payment in full of whatever amount the Court or other competent tribunal determines Debtors owe to Allied on account of the claims made by Evergreen Construction Company ("Evergreen") and related to that certain adversary proceeding Case No. 6:15-ap-00145-KSJ. Payments shall be made in monthly installments based on a 10 year amortization, fixed 4.5% interest rate, with a 6 year maturity date. Payments shall commence 30 days after a final, non-appealable judgment is entered declaring the amount owed by Debtors to Allied and related to same. If Allied settles with Evergreen prior to a final determination by the Court as to Debtors' liability, the bankruptcy court shall determine what amount is owed to Allied. (e) Allied shall receive payment in full of whatever amount the Court determines Debtors owe to Allied on account of the claims made by Kellogg & Kimsey, Inc. ("Kellogg") and related to Claim No. 35-1. Payments shall be made in monthly installments based on a 10 year amortization, fixed 4.5% interest rate, and a 6 year maturity. Debtors shall file a claims

objection against the Kellogg claim.   Payments shall commence 30 days after a final, non-appealable judgment or order is entered declaring the amount owed by Debtors on Claim No. 35-1.  Debtors will receive credit and shall not pay Allied any amounts Debtors are to pay Kellogg due to Kellogg's Claim No 35-1, contingent upon Kellogg giving Allied credit for such receipts. If Allied settles with Kellogg prior to a final determination by the Court as to Debtors' liability, the bankruptcy court shall determine what amount is owed to Allied. (f) Debtors will provide Allied with copies of all insurance policies related to Kellogg and Evergreen.  (g) Upon the Effective Date, Debtors shall release Allied of any claims accruing prior to the Effective Date, except for any and all claims related to Evergreen and Kellogg.

The Debtors shall sign loan documents and security agreements necessary to evidence this obligation to Allied if reasonably requested by Allied.  Provided that Debtors are current with their obligations under Class 5, Allied shall be prohibited from taking any action to collect against Lawson Investment Group, Inc., and Central Florida Supply, Inc., but in the event of a default under the terms of this Class 5, this limited conditional injunction shall immediately and automatically dissipate.

G.    Class 6 – Canon Financial Services, Inc. (Plumbing).

In full satisfaction of its Allowed Secured Claim, Canon's Allowed Class 6 Claim shall be treated as follows: (a) Canon shall retain its lien on the Property and (b) Canon shall receive monthly payments based on a straight 5 year amortization at 4.25% interest with payments commencing on the Effective Date.

H.    Class 7 – Marlin (Plumbing).

In full satisfaction of its Allowed Secured Claim, Marlin's Allowed Class 7 Claim shall be treated as follows: (a) Marlin shall retain its lien on the Property and (b) Marlin

shall receive monthly payments based on a straight 5 year amortization at 4.25% interest with payments commencing on the Effective Date.

I.    Class 8 – PNC Equipment Financing, LLC (Plumbing).

The holder of the Class 8 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

J.    Class 9 – Ford Motor Credit Company, LLC (Plumbing).

The holder of the Class 9 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $978.

K.    Class 10 – Ford Motor Credit Company, LLC (Plumbing).

The holder of the Class 10 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $1,444.

L.    Class 11 – Ford Motor Credit Company, LLC (Plumbing).

The holder of the Class 11 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $972.

M.    Class 12 – Ford Motor Credit Company, LLC (Plumbing).

The holder of the Class 12 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this

claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $992.

N.    Class 13 – Ford Motor Credit Company, LLC (Plumbing).

The holder of the Class 13 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $500.

O.    Class 14 – Ford Motor Credit Company, LLC (Plumbing).

The holder of the Class 14 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $1,956.

P.    Class 15 – Nissan Motor Acceptance Corporation (Plumbing).

The holder of the Class 15 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $922.

Q.    Class 16 – Nissan Motor Acceptance Corporation (Plumbing).

The holder of the Class 16 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $922.

R.    Class 17 – Nissan Motor Acceptance Corporation (Plumbing).

The holder of the Class 17 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $922.

S.    Class 18 – Nissan Motor Acceptance Corporation (Plumbing).

The holder of the Class 18 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $922.

T.    Class 19 – Ally Bank (Services).

The holder of the Class 19 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

U.    Class 20 – Ally Bank (Services).

The holder of the Class 20 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

V.    Class 21 – Ally Bank (Services).

The holder of the Class 21 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

W.    Class 22 – Lake County Tax Collector (Plumbing and Gracious).

In full satisfaction of its Allowed Secured Claim, the holder of the Allowed Class 22 Claim shall be treated as follows: (a) the holder shall retain its lien on the property and (b) the holder shall be paid in full over 60 months with the tax certificate interest rate of 0.25% so that monthly payments equal $39.70. All payments shall be sent to TLGFY c/o Capital One, N.A. as

collateral assignee, P.O. Box 54347, New Orleans, LA 70154 and payments shall commence on the Effective Date.

  X. <u>Class 23 – Lake County Tax Collector (Plumbing and Gracious).</u>

    In full satisfaction of its Allowed Secured Claim, the holder of the Allowed Class 23 Claim shall be treated as follows: (a) the holder shall retain its lien on the property and (b) the holder shall be paid in full over 60 months with the tax certificate interest rate of 0.25% so that monthly payments equal $230.81. All payments shall be sent to Ascot Capital at P.O. Box 645040, Cincinnati, OH 45264 and payments shall commence on the Effective Date.

  Y. <u>Class 24 – Lake County Tax Collector (Plumbing and Gracious).</u>

    The holder of the Class 24 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

  Z. <u>Class 25 – Lake County Tax Collector (Plumbing and Gracious).</u>

    In full satisfaction of its Allowed Secured Claim, the holder of the Allowed Class 25 Claim shall be treated as follows: (a) the holder shall retain its lien on the property and (b) the holder shall be paid in full over 60 months with the tax certificate interest rate of 0.25% so that monthly payments equal $13.49. All payments shall be sent to Cazenovia Capital at P.O. Box 54897, New Orleans, LA 70154 and payments shall commence on the Effective Date.

  AA. <u>Class 26 – Lake County Tax Collector (Plumbing and Gracious).</u>

    The holder of the Class 26 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

  BB. <u>Class 27 – Lake County Tax Collector (Plumbing).</u>

    In full satisfaction of its Allowed Secured Claim, the holder of the Allowed Class 27 Claim shall be treated as follows: (a) the holder shall retain its lien on the property and (b) the holder shall be paid in full over 60 months with the tax certificate interest rate of 0.25% so that

monthly payments equal $16.76. All payments shall be sent to Cazenovia Capital at P.O. Box 54897, New Orleans, LA 70154 and payments shall commence on the Effective Date.

    CC.    <u>Class 28 – Lake County Tax Collector (Plumbing).</u>

    The holder of the Class 28 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

    DD.    <u>Class 29 – Lake County Tax Collector (Plumbing).</u>

    The holder of the Class 29 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

    EE.    <u>Class 30 – Lake County Tax Collector (Gracious).</u>

    The holder of the Class 30 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

    FF.    <u>Class 31 – Unsecured Creditors of Plumbing.</u>

    Plumbing will pay the holders of Class 31 Claims in full, except that the maximum sum to be paid shall no greater than an aggregate sum of $380,000 (the "Unsecured Pot") which Plumbing believes is the maximum amount of legitimate Allowed Class 31 Claims. Class 31 is impaired. Each holder of an Allowed Unsecured Claim will be paid a Pro Rata share of the Unsecured Pot if not paid in full. Payments will be made over 120 months and shall commence on the thirtieth day after a final order is entered determining all remaining Disputed Claims. Payments shall continue until either the Unsecured Pot or 100% of all Class 31 Claims are paid in full.

    GG.    <u>Class 32 – Unsecured Creditors of Services.</u>

    Services will pay each holder of an Allowed Unsecured Claim in full in equal monthly installments over 24 months.

    HH.    <u>Class 33 – Unsecured Creditors of Gracious.</u>

Gracious will pay each holder of an Allowed Unsecured Claim in full in equal monthly installments over 12 months.

II.    Class 34 – Equity (Plumbing).

Class 34 consists of all equitable interests in Plumbing. All currently issued and outstanding Equity Interests in Plumbing shall be extinguished on the Effective Date and new Equity Interests in the Reorganized Debtor shall be re-vested with William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II, or their designee wholly-owned subsidiaries or vehicles, or New Investor.

JJ.    Class 35 – Equity (Services).

Class 35 consists of all equitable interests in Services. All currently issued and outstanding Equity Interests in Services shall be extinguished on the Effective Date and new Equity Interests in the Reorganized Debtor shall be re-vested with William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II, or their designee wholly-owned subsidiaries or vehicles.

KK.    Class 36 – Equity (Gracious).

Class 36 consists of all equitable interests in Gracious. All currently issued and outstanding Equity Interests in Gracious shall be extinguished on the Effective Date and new Equity Interests in the Reorganized Debtor shall be re-vested with William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II, or their designee wholly-owned subsidiaries or vehicles.

LL.    Terms Pertinent to All Classes.

In the event of a breach of any of the terms of this Plan or related documents by Debtors, any holders of Claims in the Classes outlined above shall provide Debtors with written notice of the default and at least seven days' notice to cure monetary defaults and fourteen days'

notice to cure non-monetary defaults, unless more time is required under any relevant loan documents.

## ARTICLE V – UNEXPIRED LEASES AND EXECUTORY CONTRACTS

The Debtors shall assume the executory contracts or leases listed on **Exhibit "A"** and pay the specified cure amount to the counter-party by the Effective Date, except that the Debtors retain the right to reject any of the contracts or leases listed on Exhibit A at the hearing on confirmation.  Any executory contract or lease not expressly assumed before the entry of the Confirmation Order shall be deemed rejected.  It is the position of the Debtors that the executory contracts listed in the respective Schedules of Executory Contracts filed pursuant to Rule 1007, are the only executory contracts to which the Debtors were a party on the Petition Date.  If such counter-party disputes the amount of the cure amount, they shall have until seven (7) days prior to the confirmation hearing of the Plan to object to such cure amount.  The cure amount, as determined by the Court, shall be paid from the Debtor's operations income on the Effective Date.  If the cure amount is determined to be higher than the Debtor is willing to pay, the Debtor will reject the contract at the confirmation hearing.

## ARTICLE VI – MEANS OF IMPLEMENTATION.

1.    Potential Equity Infusion, Potential Auction and Operation of Plumbing.

The Plan is premised on the continuing operations income of the Debtors as sufficient to continue operations moving forward.  The Plan for Plumbing may also be premised on the influx of an Equity Infusion by William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II or, to the extent applicable under the Plan, any third party investor with the highest and best offer for the equity in Plumbing and the ongoing operations of Plumbing.  However, the cash flow received by the Reorganized Debtors' ongoing operations are sufficient to make payments under the Plan, will allow the Reorganized Debtors to continue

operations, and to pay ordinary course expenses, including but not limited to, payroll and administrative costs.

If, and only if, Class 31 does not vote in favor of the Plan, the Debtors shall conduct an auction of Plumbing's equity interest at the hearing on confirmation of the Plan. Any party desiring to purchase the equity interests in Plumbing, shall deposit in escrow with the Debtors' attorneys, at least five (5) business days prior to the hearing on confirmation of the Plan, but not less than $10,000.00 (the "Minimum Deposit"). The Minimum Deposit is only refundable if such party is not the successful bidder at the auction. Any party who timely makes the Minimum Deposit shall be deemed a Qualified Bidder. William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II shall automatically be deemed a Qualified Bidder. If there is more than one Qualified Bidder, then the Qualified Bidders shall participate in an auction for the Interests to be conducted by the Court at the confirmation hearing and on such terms and conditions as determined by the Court. The funds paid to the Reorganized Debtor by the New Investor or William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II, as the successful bidder for the equity interests shall be deemed capital contributions to Plumbing. Counsel for the Debtors is authorized to disburse such funds consistent with this Plan upon entry of an order confirming the Plan.

2.    <u>Funds Generated During Chapter 11</u>.

All cash in excess of operating expenses generated from operations of the Debtors' business until the Effective Date will be used for Plan Payments.

3.    <u>Management and Ownership of the Reorganized Debtor</u>.

After Confirmation, the common stock of the Equity Holders shall be extinguished and vested with William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II for each Reorganized Debtor, or their designee wholly-owned subsidiaries or

vehicles, or to the New Investor if such investor is the successful bidder at any equity auction. William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II shall remain the officers of the Reorganized Debtors.

4.    Procedures for Resolving Disputed Claims.

a.    Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Reorganized Debtors shall have the exclusive right to make and file objections to all Claims.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within ninety (90) days after the Confirmation Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that, the Debtors had immediately prior to the commencement of this Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors shall have, retain, reserve and be entitled to assert all such claims, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the commencement of its Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b.    Estimation of Claims.

Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to Section

502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

> c.    Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

> d.    Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Reorganized Debtor's Cash and Assets, such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial Distributions will be made with respect to a Disputed Claim

until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

e. Allowance of Claims and Interests

(i)      Disallowance of Claims

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor. The Debtor reserves and shall have the exclusive right and authority to bring any Causes of Action.

(ii)     Allowance of Claims

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in this Cases, unless and until such Claim or Equity Interest is deemed allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim or Equity Interest.

f. Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If

such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

## ARTICLE VII – MISCELLANEOUS.

    A.    <u>Effect of Confirmation</u>.

        1.    <u>Elimination of Equity</u>.

On the Effective Date, all currently issued and outstanding Equity Interests in the Debtors shall be extinguished and new Equity Interests in the Reorganized Debtor shall be vested with William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II, or their designee wholly-owned subsidiaries or vehicles, or the New Investor who prevails at the equity auction.

        2.    <u>Authority to Effectuate the Plan</u>.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying the Debtors' by-laws and/or operating agreement such that the provisions of this Plan can be effectuated. The Reorganized Debtors shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

        3.    <u>Post-Confirmation Status Report</u>. Pursuant to the Plan, within one hundred twenty 120 days of the entry of the Confirmation Order, the Debtors will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

B.    **Injunction**.

    1.    **Recipient**

        William Lawson, Charlene Lawson, William Lawson II, and Kimberley Lawson-Sapp (collectively, the "Guarantors"). The Guarantors have been involved with the acquisition and development of the Debtors' property and business operations for years. As a consequence of their intricate involvement with the Debtors' business development and financial affairs, Guarantors are obligated on certain direct, limited, or conditional guarantees of the Debtors' financial obligations, and as a result are liable under those contractual undertakings as accommodation parties for the Debtors or as direct obligations on account of credit obtained for the benefit of the Debtors on substantially all of the Debtors' business and operational indebtedness. Additionally, Guarantors risk exposure to potential litigation related to claims arising from the Debtors' operations. Guarantors estimates their potential exposure on contractual recourse liability for the Debtors' business obligations and other Debtors' related non-contractual claims to exceeds $1,000,000.00.

        The Debtors believe that Guarantors have contributed significant value to the Debtors' estate, and will continue to contribute value to the Reorganized Debtors. In consideration of the substantial contributions made and to be made by Guarantors, the Plan contemplates the granting of broad, conditional third-party injunctions of pursuit against Guarantors of claims arising out of and deriving from the business operations and financial affairs of the Debtors.

    2.    **Conditional Injunction**

        The Plan is premised upon the injunctions contained below. Debtors assert the injunction is being given as consideration for the accommodations provided by

Guarantors under the Plan and are fair consideration for property contributed and valuable services.

Except as expressly provided in the Plan or to otherwise enforce the terms of the Plan, as of the Confirmation Date, all Persons that have held, currently hold or may hold a Claim, other debt or liability, an Interest, or other right of an equity security that is impaired or terminated pursuant to the terms of the Plan, to the fullest extent permitted by applicable law, are enjoined from taking any of the following actions, as long as each respective Reorganized Debtor and the Guarantors are not in default of any obligation under the Plan or any agreements contemplated by the Plan and except as specifically provided for in the Plan, on account of any such impaired or terminated Claims, debts or liabilities, Interests or rights:  (i) commencing or continuing in any manner any action or proceeding, including but not limited to Causes of Action, against Guarantors, or their property interests; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against Guarantors, or their property interests, other than as permitted pursuant to (i) above; (iii) creating, perfecting, or enforcing any lien or encumbrance against Guarantors, or their property interests; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to Guarantors; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

From and after the Confirmation Date, the Injunctions described herein shall become effective, and all Holders of Claims and Interests shall be enjoined from commencing or continuing any of the actions detailed herein for so long as

38

**Reorganized Debtor and Guarantors remain in compliance with the Plan or any agreements contemplated by the Plan and except as specifically provided for in the Plan.**

    4.  <u>Preservation, Prosecution and Defense of Causes of Action</u>.

      The Debtors shall retain all Causes of Action.  The Debtors shall have the right to pursue any and all Causes of Action, including all pending adversary proceeding, whether or not such causes of action have been commenced as of the Effective Date.  The Debtors shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Debtors; provided, however, that the Debtors shall be authorized at any point in any litigation (a) to enter into such settlements as the Debtors deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss, and/or decide not to prosecute any such litigation.

    B.  <u>Conditions to Effectiveness</u>.

      The Effective Date shall not occur until all of the following conditions have been satisfied:

      1.  The entry of the Confirmation Order by the Bankruptcy Court in the form and content acceptable to the Debtors and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; provided, however, that, if an appeal of the Confirmation Order is filed, but no stay is granted in connection with the appeal, the Debtors may elect to permit the Effective Date to occur, notwithstanding the pendency of the appeal.

      2.  Upon the satisfaction or waiver of each of the foregoing conditions, the Debtors shall so notify the Bankruptcy Court, and upon the filing of such notice, the Plan shall become Effective without further Order of the Bankruptcy Court, provided that all of the

conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

      C.      <u>Exculpation from Liability</u>.

      The Debtors, the Reorganized Debtors, their respective shareholders, members, managers, officers, and directors, and their respective Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party.  With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtors, the Reorganized Debtors, and their respective agents have or obtain pursuant to any provision of the Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.  Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan.  The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT ASSERTING ANY SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED.**

Notwithstanding the foregoing, (i) the Reorganized Debtors shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan and (ii) the Debtors' respective shareholders, members, managers or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

D.  <u>Police Power</u>.

Nothing in this Article IV shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to the Confirmation Date to the extent such monetary claims are discharged pursuant to Section 1141 of the Code.

E.  <u>Retention of Jurisdiction</u>.

After the Effective Date, the Reorganizing Debtors will be free to perform all functions assigned to them under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in this Case with respect to the following matters:

1.  All objections to the allowance of Claims and Interests and the compromise of Claims;

41

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtors' case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Debtors or Reorganizing Debtors in the ordinary course of business without a Bankruptcy Court order; provided, further, however, that, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.    Any adversary proceedings or contested matters (except as to Released Claims and Released Parties) brought by the Debtors, including, without limitation, the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549 and 550 of the Code;

4.    All controversies and disputes arising under or in connection with the Plan;

5.    The enforcement and interpretation of the Plan;

6.    To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.    Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.    All claims arising from the rejection of any executory contract or lease;

9.    Such other matters as may be provided for in the Code or the Plan;

10.    To protect the property of the Debtors' Estate from adverse claims or interference inconsistent with the Plan; and

11.    To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement.

F.    Headings.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

G.    Cramdown

The Reorganizing Debtors reserve the right to seek confirmation of the Plan under § 1129(b) of the Code.

H.  Regulatory Approval and Retirement Plans.

It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan.  The Plan will be implemented pursuant to its provisions and the provisions of the Code.  The Debtors do not have any retirement plans.

I.    Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

Counsel for the Debtors:

**Michael A. Nardella, Esq.**
**Nardella & Nardella, PLLC**
**250 East Colonial Drive, Suite 102**
**Orlando, FL 32801**

**Roman V. Hammes, Esq.**
**Roman V. Hammes, P.L.**
**1920 North Orange Avenue, Suite 100**
**Orlando, FL 32804**

Debtors:

**Progressive Plumbing, Inc.**
**1064 W. Highway 50**
**Clermont, FL 34711**

**Progressive Services, LLC**
**1064 W. Highway 50**
**Clermont, FL 34711**

**Gracious Living Design Center, Inc.**
**1064 W. Highway 50**
**Clermont, FL 34711**

United States Trustee:

**United States Trustee**
**400 W. Washington St., Ste. 1120**
**Orlando, Florida 32801**

J.       Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Reorganizing Debtors, by wire transfer or by automated clearinghouse transfer from a domestic bank, at the option of the Reorganizing Debtors, as applicable.  Any payments remaining unclaimed after 180 days from the distribution of such payment shall become the property of the Reorganizing Debtors, except that any payments to holders of

44

Allowed Class 31 Claims shall be redistributed to holders of Allowed Class 31 Claims as part of the next Distribution.

      K.     Compliance with Tax Requirements.

           In connection with this Plan, to the extent applicable, the Reorganizing Debtors shall comply with all tax withholding and reporting requirements imposed on it by any governmental until, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganizing Debtors may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganizing Debtors the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganizing Debtors to the appropriate authority. If the holder of an Allowed Claim fails to provide to the Reorganizing Debtors the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of the first notification by the Reorganizing Debtors to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

      L.     Transmittal of Distributions to Parties Entitled Thereto.

           All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All distributions by wire shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the holder with the provisions of this Plan to (i) its address set forth in its proof of

claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the holder's transferee as identified in a filed notice served on the Debtors pursuant to Bankruptcy Curl 3001(e), or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and records.

      M.     <u>Distribution of Unclaimed Property</u>.

        Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan which is unclaimed after six (6) months following the relevant distribution date shall be forfeited, and such distribution together with all interest earned thereon shall become the property of the Reorganizing Debtors, except that any payments to Holders of Allowed Class 31 Claims shall be redistributed to holders of Allowed Class 31 Claims as part of the next Distribution.  Thereafter, any unclaimed funds to holders of Allowed Class 31 Claims shall be donated to a 501(c)(3) organization.  However, checks issued by the Reorganizing Debtors will be null and void if not cashed within sixty (60) days of the date of issuance.

      N.     <u>Fractional Cents and Equity; Multiple Distributions</u>.

        Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents or distributions of fractional equity will be made under this Plan.  Cash will be issued to holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent).  To the extent that cash remains undistributed as a result of rounding such fractions, such cash shall be treated as unclaimed property under the Plan.

O.     Transfer Taxes.

Under § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, including the documents and instruments with respect to any proposed sale under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.

P.     Revocation and Withdrawal of the Plan.

The Debtors reserve the right to withdraw this Plan at any time before entry of the Confirmation Order.  If (i) the Debtors revoke and withdraw this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (iv) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

Q.     Modification of Plan.

The Debtors may seek to amend or modify this Plan in accordance with § 1127(b) of the Bankruptcy Code, or remedy and defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtors may issue, execute, deliver, or file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

R.     Final Decree.

Upon substantial consummation of the confirmed plan, the Debtors may ask the Court to issue a final decree and to close this case. Services will be authorized to seek and obtain a final decree from the Court upon a showing that it has substantially consummated the plan as it relates to all non-classified claims and treatments associated with classes 3, 19, 20, 21 and 32 only. Gracious will also be authorized to seek and obtain a final decree from the Court upon a

showing that it has substantially consummated the plan as it relates to all non-classified claims and treatments associated with classes 22, 23, 24, 25, 26, 30 and 33 only. Services and Gracious will be authorized to seek and obtain a final decree prior to Plumbing resolving its post-confirmation bankruptcy matters so long as Plumbing has commenced performance of its post-confirmation obligations in connection with Classes 1, 2 and 5.

**DATED** this 25th day of March 2016, in Orlando, Florida.

Progressive Plumbing, Inc.

By:
Title: CFO / Treasurer

/s/ Michael A. Nardella
Michael A. Nardella, Esq.
Florida Bar No. 51265
Nardella & Nardella, PLLC
250 East Colonial Drive, Suite 102
Orlando, FL 32801
(407) 966-2676
mnardella@nardellalaw.com
Attorney for Debtors

Progressive Services, LLC

By:
Title: CFO / Treasurer

/s/ Roman V. Hammes
Roman V. Hammes, Esq.
Florida Bar No. 087250
Roman V. Hammes, P.L
1920 North Colonial Avenue, Suite 100
Orlando, FL 32804
(407) 650-0003
roman@romanvhammes.com
Attorney for Debtors

Gracious Living Design Center, Inc.

By:
Title: CFO / Treasurer

Exhibit "A"
Assumed Contract and Leases

1. Plumbing[2]
   (a) Evergreen (South Carolina Hyatt)
   (b) Kast (Waterclub at West Palm Beach)
   (c) Kast (Waterclub at Snell Isle)
   (d) Pinkerton & Laws (Jekyll Island Westin)
   (e) Pinkerton & Laws (Winter Garden)
   (f) Tazh Hall (Tallahassee condominium lease)

2. Services[3]
   (a) Racetrac
   (b) Walmart
   (c) Publix

---

[2] The cure amount for each of these construction contracts is $0.
[3] The cure amount for each of these service contracts is $0.