UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

PROGRESSIVE PLUMBING, INC.,

PROGRESSIVE SERVICES, LLC, and
GRACIOUS LIVING DESIGN
CENTER, INC.

Debtors.
_____/

CHAPTER 11
CASE NO.: 6:15-BK-07275-KSJ

JOINTLY ADMINISTERED WITH
CASE NO.: 6:15-BK-07276-KSJ
CASE NO.: 6:15-BK-07277-KSJ

**JOINT DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. §1125 FOR
PROGRESSIVE PLUMBING, INC., PROGRESSIVE SERVICES, LLC,
& GRACIOUS LIVING DESIGN CENTER, INC.**

COUNSEL FOR DEBTORS

MICHAEL A. NARDELLA, ESQ.
NARDELLA & NARDELLA, PLLC
250 EAST COLONIAL DR, SUITE 102
ORLANDO, FL 32801

ROMAN V. HAMMES, ESQ.
ROMAN V. HAMMES, P.L.
1920 NORTH ORANGE AVENUE, SUITE 100
ORLANDO, FL 32804

March 25, 2016

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

PROGRESSIVE PLUMBING, INC.,

PROGRESSIVE SERVICES, LLC, and
GRACIOUS LIVING DESIGN
CENTER, INC.

Debtors.
_____/

CHAPTER 11
CASE NO.: 6:15-BK-07275-KSJ

JOINTLY ADMINISTERED WITH
CASE NO.: 6:15-BK-07276-KSJ
CASE NO.: 6:15-BK-07277-KSJ

JOINT DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. §1125 FOR
PROGRESSIVE PLUMBING, INC., PROGRESSIVE SERVICES, LLC, & GRACIOUS
LIVING DESIGN CENTER, INC.

I.    INTRODUCTION AND SUMMARY

This Joint Disclosure Statement ("Disclosure Statement") is filed pursuant to the requirements of § 1125 of Title 11 of the United States Code (the "Code"). This Disclosure Statement is intended to provide adequate information to enable holders of claims in the above-captioned bankruptcy case ("Bankruptcy Case") to make informed judgments about the Joint Plan of Reorganization (the "Plan") submitted by Progressive Plumbing, Inc. ("Plumbing"), Progressive Services, LLC("Services"), and Gracious Living Design Center, Inc. ("Gracious") (Plumbing, Services, and Gracious may collectively be referred to as the "Debtor" or "Debtors"). The Debtors are soliciting votes to accept the Plan. The overall purpose of the Plan is to provide for the restructuring of the Debtors' liabilities in a manner designed to maximize recoveries to all stakeholders. The Debtors believe that the Plan provides the best means currently available for its emergence from Chapter 11 and the best recoveries possible for holders of claims and interests against the Debtors, and thus strongly recommends that you vote to accept the Plan.

THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT, IN TURN, IS QUALIFIED IN ITS ENTIRETY BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY, IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.    ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.

NO REPRESENTATION CONCERNING THE DEBTORS ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN.    ANY REPRESENTATIONS OR INDUCEMENTS MADE WHICH ARE OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AS WELL AS THE COMPLEXITY OF THE DEBTORS' BUSINESS AND FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THIS DISCLOSURE STATEMENT INCLUDES FORWARD-LOOKING STATEMENTS BASED LARGELY ON THE DEBTORS' CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITY AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT

SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

THE PLAN PROVIDES FOR INJUNCTIVE RELIEF TO PROTECT A CERTAIN PERSONS WHO ARE (1) PROVIDING CONSIDERATION TO THE ESTATE AND REORGANIZED DEBTORS, AND (2) CRITICAL TO THE EXECUTION OF THE REORGANIZATION PLAN DETAILED HEREIN. THE PERSON SO PROTECTED, AND THE SCOPE OF THE INJUNCTION, IS DEFINED IN ARTICLE VIII OF THE PLAN AND ARTICLE V HEREOF. IF THE PLAN IS CONFIRMED THE PERSON SPECIFIED IN THESE PROVISIONS OF THE PLAN WILL NOT BE RELEASED FROM THE CLAIMS OF THE DEBTORS AND ANY CREDITOR AND PARTY IN INTEREST IN THIS CASE.

Plumbing, Services, and Gracious are debtors under Chapter 11 of the Code in the Bankruptcy Case pending in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the "Bankruptcy Court").

As prescribed by the Code and the Federal Rules of Bankruptcy Procedure (the "Rules"), claims asserted against, and equity interests in, the Debtors are placed into classes. The Plan designates 36 separate classes of claims and interests (the "Classes"). The Plan contemplates paying these Classes over time based on the ongoing operations of the Debtors' businesses.

To the extent the legal, contractual, or equitable rights with respect to any claim or interest asserted against the Debtors are altered, modified or changed by treatment proposed under the Plan, such claim or interest is considered "Impaired," and the holder of such claim or interest is entitled to vote in favor of or against the Plan. A ballot for voting in favor or against the Plan ("Ballot") will be mailed along with the order approving this Disclosure Statement.

THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE **RECEIVED** AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.

**VOTING DEADLINE**

The last day to vote to accept or reject the Plan is            , 2016. All

votes must be received by the voting agent by 5:00 p.m. (EST) on that day.

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Court for its consideration. As described in greater detail in Section IV of this Disclosure Statement, the Code prescribes certain requirements for confirmation of a plan. The Court will schedule a hearing (the "Confirmation Hearing") to consider whether the Debtors have complied with those requirements.

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is sometimes called "cramdown." As described in greater detail in Section IV of this Disclosure Statement, the Debtors have expressly reserved the right to seek "cramdown" in the event all Impaired Classes do not vote in favor of the Plan.

## II.    DESCRIPTION OF DEBTORS' BUSINESSES

### A.    In General

Plumbing. Plumbing is a commercial plumbing contractor in Clermont who has been in business since 1985. Until very recently, Plumbing had never failed to complete a job. Plumbing's role is generally as a subcontractor on large commercial construction projects, ranging from hotels, condominiums, and other multi-story structures. Jobs which Plumbing has worked on include Marriott Ocean Watch Villas, Rosen Resort Hotel at Shingle Creek, the Omni at Champions Gate, the Renaissance Hotel, and many other well-known buildings. Plumbing currently has multiple ongoing jobs in locations across the State.

Services. Services is a commercial plumbing on call service business based in Clermont, Florida. Services' role is generally to provide emergency and other plumbing services to

commercial customers. Representative customers of Services include Publix and Racetrack. Services currently serves locations all around Central Florida and its environs.

Gracious. Gracious is a kitchen and bath showroom designer and provider in Clermont who is an affiliate of Plumbing. Gracious provides services and materials to both commercial and consumer customers.

B.    Significant Developments and Events Leading to Current Bankruptcy Filing

Plumbing. For almost 30 years, Plumbing was a very successful and profitable commercial plumbing contractor which had few financial difficulties. Plumbing had and has a reputation as one of, if not the, best commercial plumbing contractor in Central Florida. Plumbing generally operated in Florida where it had longstanding relationships with many of the general contractors with whom it did business. During the "Great Recession," however, Plumbing was unable to procure sufficient jobs in Florida and began bidding for and winning jobs out of state and consequently began working with many more unknown general contractors.

In 2013, Plumbing entered into a General Indemnity Agreement (the "GIA") with a new surety, Allied World Specialty Insurance Company f/k/a Darwin National Assurance Company ("Allied"). Plumbing began to experience collection issues with general contractors on out-of-state jobs. The contracting industry is notorious for the "chiseling" that contractors do to their subcontractors, particularly with regards to retainage, but the financial pressures of the general economy and the lack of a personal relationship caused many of the Plumbing's general contractors to begin making false claims about Plumbing's work in order to exert leverage and in order to refuse to make payments. In particular, one contractor, Evergreen Construction Company ("Evergreen"), began assessing so many additional back charges and change orders on one particular, large job, known as the Hyatt Atlanta, that Plumbing was put in a precarious position where it would stand to lose thousands of dollars if it continued on the job. Plumbing

wanted to continue work and complete the job even at a loss, having until that time never failed to complete a job. Upon the advice of Allied, however, Plumbing left the job and let Allied step in.

This was, in hindsight, an enormous and costly mistake for Plumbing. Allied allowed Evergreen to hire a new subcontractor who proceeded to bill for everything Plumbing had already done, as well as overbilled for the work necessary to complete the job. Costs spiraled out of control, and an expected loss of approximately $100,000.00 ballooned into a claimed loss of over $750,000.00. In the meantime, Plumbing's financial difficulties were increasing and it was unable to meet all of its obligations, including its payroll taxes, and Allied was also financing material and labor costs for some of Plumbing's jobs. Allied demanded immediate payment of over $750,000.00 as an indemnity under the GIA. Plumbing simply did not have the liquidity to comply with this request and further disputed the amount due.

After negotiations, Allied and Plumbing reached a settlement whereby, on July 8, 2015, Plumbing executed a promissory note in the amount of $752,107.33 in favor of Allied (the "Allied Note"). The Allied Note provided for monthly payments on a ten-year amortization with a five-year term. To secure the Allied Note, Allied demanded collateral, and Plumbing and its affiliates and principals executed a Mortgage and Security Agreement (as amended, the "Allied Mortgage"). The Allied Mortgage granted a second mortgage to Allied in the Debtors' headquarters property, along with certain property owned by Debtors' principals personally. The Allied Mortgage (as amended) was recorded on July 27, 2015.

Barely one week after recording the Allied Mortgage, Allied called a default under the terms of the Allied Note. Allied then demanded the immediate execution of deeds to all of the real property collateral and the immediate turnover to Allied of all funds from all of Plumbing's jobs. On August 6, 2015, Allied sent letters to certain of Plumbing's general contractors

instructing and demanding that they forward all amounts due to Plumbing to Allied instead (the "Letters"). The Letters were devastating to Plumbing's business as its general contractors stopped paying anyone. On the same date as Debtors filed this bankruptcy, Allied filed an action against Debtors, *et al*, before the District Court in the Middle District of Florida.

Services and Gracious. Services and Gracious guaranteed Plumbing's GIA with Allied and co-signed the Allied Note. As Plumbing's relationship with Allied soured in July and August, 2015, Services and Gracious were dragged into the dispute and forced to join in this chapter 11 bankruptcy case.

Events Subsequent to Chapter 11 Filing

On August 24, 2015 (the "Petition Date"), the Debtors filed their respective petitions for relief under Chapter 11 of Title 11 of the United States Code ("Code"). Since the Petition Date, the Debtors have continued to operate their business as debtors-in-possession under §§ 1107(a) and 1108 of the Code (Doc. 21). No Official Committee of Unsecured Creditors, trustee or examiner has been appointed.

The Debtors filed emergency motions on or shortly after the Petition Date. First, the Debtors filed a Motion for Joint Administration of the three cases (Doc. 5), the Debtors filed a Motion to Maintain Pre-Petition Bank Accounts (Doc. 3), the Debtors filed an Emergency Motion for Authority to Pay Prepetition Compensation and Benefits, seeking authority to pay the pre-petition wages and benefits of its non-affiliate employees (Doc. 9), the Debtors filed an Emergency Motion to Use Cash Collateral (Doc. 4), the Debtors filed a Motion to Pay Critical Vendors (Doc. 8), and the Debtors filed a Motion to Authorize Adequate Protection and to Pay Utilities (Doc. 7). Second, the Debtors filed an Application to Set Affiliate and Insider Officers' Salaries Nunc Pro Tunc to the Petition Date (Doc. 6), seeking authority to pay William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II (the "Lawsons"), their

8

normal salaries during the course of the bankruptcy case.  On August 27, 2015, the Bankruptcy Court held an emergency preliminary hearing on the foregoing Motions, and granted the requested relief as to each such Motion (Doc. Nos. 39, 40, 41, 42, 43, and 45), except as to officers's salaries, which was granted on October 29, 2015 (Doc. No. 136).

The Debtors have also filed an Application to Employ Roman V. Hammes and the Law Firm of Roman V. Hammes, P.L. as Debtor's counsel (Doc. 12).  The Debtors have also filed an Application to Employ Michael A. Nardella and the Law Firm of Nardella & Nardella, PLLC as Debtor's counsel (Doc. 14).

On September 16, 2015, the Debtors filed Schedules and Statements of Financial Affairs (Doc. 76, 79, and 81).  On September 21, 2015, the United States Trustee conducted and concluded the 341 meeting of creditors.  No creditors' committee has been appointed.

On August 26, 2015, the Debtors filed a Motion to Compel Compliance with the Automatic Stay and require Allied to retract the letters sent to the Debtors' general contractors (Doc. 22).  After an evidentiary hearing on September 9, 2015, the Court granted the Motion and the letters were retracted (Doc. 98).

On December 1, 2015, the Debtors filed a Motion to Sell Property Free and Clear of Liens (Doc. 169) in order to sell its "Fab Shop."  On January 20, 2016, the Court entered an order approving the sale (Doc. 208) and the property was sold.

III.    THE PLAN

THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE DEBTORS' PLAN.  ANY PARTY IN INTEREST CONSIDERING A VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN.  THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.

A.    Overview.

In summary, the Debtors shall: (i) continue to operate their businesses in the ordinary course; (ii) make payments to secured and unsecured creditors as set forth in detail in the Plan; and (iii) assume some of the Debtors' executory contracts on the Effective Date.

All Claims against the Debtors shall be classified and treated pursuant to the terms of the Plan. As noted more fully below, the Plan contains 36 classes of Claims and Interests. There are 30 classes of Secured Claims, 3 classes of Unsecured Claims, and 3 class of Interests.

The Allowed Secured Claims will be paid and treated as set forth below and under the Plan. Allowed Priority Claims and Allowed Administrative Claims shall be paid in full over time, and Allowed Unsecured Claims shall receive their interest in payments over time.

Classification and Treatment of Claims.

1.    Priority Claims.

a.    Administrative Expense Claims.

Holders of all allowed Administrative Expense Claims of the Debtors as approved by the Court shall be paid in full on the Effective Date, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Court. However, nothing in this provision of the Plan shall preclude the Debtors from paying any holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim holder consents to different payment terms. The Allowed Administrative Claims shall be paid from the Equity Infusion on the Effective Date, and if such funds are not available from the proceeds, shall be paid from the Debtors' cash on hand from operation of the facility. The anticipated Administrative Expense Claims are anticipated to be the Allowed Administrative

Claim of Nardella & Nardella, PLLC and Roman V. Hammes, P.L. in an amount approximately $100,000 over their pre-petition retainer.

   b. Priority Tax Claims.

     Except to the extent that the Holders and the Debtors have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall be paid by the Debtors, in an amount equal to the Allowed Priority Tax Claim. Payment shall occur in 60 monthly installments and will be paid with 3% interest. The Plan contains a listing of the Priority Tax Claims.

   c. United States Trustee Fees.

     All outstanding fees due to the Unites States Trustee will be paid in full on the Effective Date.

   2. Secured Claims.

A. Class 1- FGB (Plumbing, Services and Gracious)

Class 1 consists of the Allowed Secured Claim of FGB in the amount of $1,015,142.21 as to Plumbing and Services, and non-recourse as to Gracious. The Class 1 Claim is secured by a first priority lien on Debtors' headquarters real property, an assignment of leases and rents on same, Plumbing's and Services' personalty, and Plumbing's and Services' accounts. Class 1 is impaired. In full satisfaction of its Allowed Secured Claim, FGB's Allowed Class 1 Claim shall be treated as follows: (a) FGB shall retain is liens on the Property, and (b) FGB shall receive monthly payments based on a 20 year amortization, fixed 4.25% interest rate, and a maturity 7 years from the Effective Date. All other terms of the existing loan documents shall remain in place. The Debtors shall sign loan modification documents and security agreement necessary to evidence this obligation to FGB if reasonably requested by FGB. Gracious shall continue to

remain liable for the obligations of Class 1 solely to the extent of any collateral pledged by Gracious.

B.      Class 2 – FGB (Plumbing and Gracious).

Class 2 consists of the Allowed Secured Claim of FGB in the amount of $494,403.66 as to Plumbing and non-recourse as to Gracious. The Class 2 Claim is secured by a second priority lien on Debtors' headquarters real property, and a junior priority lien on Plumbing's accounts. Class 2 is impaired. In full satisfaction of its Allowed Secured Claim, FGB's Allowed Class 2 Claim shall be treated as follows: (a) FGB shall retain is liens on the Property, and (b) FGB shall receive monthly payments based on a 20 year amortization, fixed 4.25% interest rate, and a maturity 7 years from the Effective Date. All other terms of the existing loan documents shall remain in place. The Debtors shall sign loan modification documents and security agreement necessary to evidence this obligation to FGB if reasonably requested by FGB. Gracious shall continue to remain liable for the obligations of Class 2 solely to the extent of any collateral pledged by Gracious.

C.      Class 3 – FGB (Services).

Class 3 consists of the Allowed Secured Claim of FGB in the amount of $100,086.65 as to Services. The Class 3 Claim is secured by a junior priority lien on Services' accounts. Class 3 is impaired. In full satisfaction of its Allowed Secured Claim, FGB's Allowed Class 3 Claim shall be treated as follows: (a) FGB shall retain is liens on the Property, and (b) FGB shall receive monthly payments based on a 5 year amortization, fixed 4.25% interest rate, and a maturity 5 years from the Effective Date. All other terms of the existing loan documents shall remain in place. The Debtors shall sign loan modification documents and security agreement necessary to evidence this obligation to FGB if reasonably requested by FGB.

D.    Class 4 – Internal Revenue Services (Plumbing).

Class 4 consists of the Allowed Secured Claim of the IRS in the amount of approximately $257,444.20 as to Plumbing. The Class 4 Claim is secured by a junior priority lien on Plumbing's headquarters real property and the adjacent lots. Class 4 is impaired. In full satisfaction of its Allowed Secured Claim, the IRS's Allowed Class 4 Claim shall be treated as follows: (a) IRS shall retain its lien on the Property of Plumbing, (b) IRS shall be paid in full, with 3% interest, over 60 months and (c) payments to the IRS will commence on the Effective Date.

E.    Class 5 – Allied (Plumbing, Services, and Gracious).

Class 5 consists of the Allowed Secured Claim of Allied in an amount to be determined by the Court. The Class 5 Claim is secured by a junior priority lien on Debtors' headquarters and a junior priority lien on certain accounts of Plumbing.  Class 5 is impaired. In full satisfaction of its Allowed Secured Claim, Allied's Allowed Class 5 Claim shall be treated as follows: (a) Allied shall retain is liens on the Property. (b) Allied shall receive monthly payments on that certain Promissory Note dated July 8, 2015, in the original principal amount of $752,107.33 (the "Allied Note") which Allied Note shall be reinstated and decelerated and any missed or incorrect payments shall be immediately rectified by the Debtors. (c) Allied shall receive a mortgage on that certain condominium located at 4434 Gearhart Road in Tallahassee (the "Condo") to further secure the obligations of Class 5.  Allied shall receive all of the net proceeds of the sale of the Condo, and the sale of any non-debtor collateral, which Allied shall apply to the obligations under subparagraphs (d) and (e) below, except that if the proceeds are in excess of the total amount owed pursuant to subparagraphs (d) and (e) below, the remaining proceeds shall be applied against the Allied Note.  Plumbing will immediately list the Condo on the market after confirmation at $180,000.00, and lower the listing price by 10% if not sold

13

within 30 days, and by 5% for each 30 days thereafter. Plumbing shall continue to pay taxes, insurance, association fees, and any other fees related to the Condo prior to the sale. (d) Allied shall receive payment in full of whatever amount the Court or other competent tribunal determines Debtors owe to Allied on account of the claims made by Evergreen Construction Company ("Evergreen") and related to that certain adversary proceeding Case No. 6:15-ap-00145-KSJ. Payments shall be made in monthly installments based on a 10 year amortization, fixed 4.5% interest rate, with a 6 year maturity date. Payments shall commence 30 days after a final, non-appealable judgment is entered declaring the amount owed by Debtors to Allied and related to same. If Allied settles with Evergreen prior to a final determination by the Court as to Debtors' liability, the bankruptcy court shall determine what amount is owed to Allied. (e) Allied shall receive payment in full of whatever amount the Court determines Debtors owe to Allied on account of the claims made by Kellogg & Kimsey, Inc. ("Kellogg") and related to Claim No. 35-1. Payments shall be made in monthly installments based on a 10 year amortization, fixed 4.5% interest rate, and a 6 year maturity. Debtors shall file a claims objection against the Kellogg claim. Payments shall commence 30 days after a final, non-appealable judgment or order is entered declaring the amount owed by Debtors on Claim No. 35-1. Debtors will receive credit and shall not pay Allied any amounts Debtors are to pay Kellogg due to Kellogg's Claim No 35-1, contingent upon Kellogg giving Allied credit for such receipts. If Allied settles with Kellogg prior to a final determination by the Court as to Debtors' liability, the bankruptcy court shall determine what amount is owed to Allied. (f) Debtors will provide Allied with copies of all insurance policies related to Kellogg and Evergreen. (g) Upon the Effective Date, Debtors shall release Allied of any claims accruing prior to the Effective Date, except for any and all claims related to Evergreen and Kellogg.

14

The Debtors shall sign loan documents and security agreements necessary to evidence this obligation to Allied if reasonably requested by Allied. Provided that Debtors are current with their obligations under Class 5, Allied shall be prohibited from taking any action to collect against Lawson Investment Group, Inc., and Central Florida Supply, Inc., but in the event of a default under the terms of this Class 5, this limited conditional injunction shall immediately and automatically dissipate.

F.      Class 6 – Canon Financial Services, Inc. (Plumbing)

Class 6 consists of the Allowed Secured Claim of Canon in an amount to be determined by the Court. The Class 6 Claim is secured by a lien on Plumbing's copy machine. The Debtor intends to file a motion to value this claim at $5,000.00. The secured portion of the claim will be treated in this class. The unsecured portion will be treated in Class 31. Class 6 is impaired. In full satisfaction of its Allowed Secured Claim, Cannon's Allowed Class 6 Claim shall be treated as follows: (a) Cannon shall retain its lien on the Property and (b) Cannon shall receive monthly payments based on a straight 5 year amortization at 4.25% interest with payments commencing on the Effective Date.

G.      Class 7 – Marlin (Plumbing).

Class 7 consists of the Allowed Secured Claim of Marlin in an amount to be determined by the Court. The Class 7 Claim is secured by a lien on Plumbing's server. The Debtor intends to file a motion to value this claim at $3,200.00. The secured portion of the claim will be treated in this class. The unsecured portion will be treated in class 31. Class 7 is impaired. In full satisfaction of its Allowed Secured Claim, Marlin's Allowed Class 7 Claim shall be treated as follows: (a) Marlin shall retain its lien on the Property and (b) Marlin shall receive monthly payments based on a straight 5 year amortization at 4.25% interest with payments commencing on the Effective Date.

15

H.      Class 8 – PNC Equipment Financing, LLC (Plumbing).

Class 8 consists of the Allowed Secured Claim of PNC in the amount of approximately $13,659.48. The Class 8 Claim is secured by an interest in Plumbing's plotter. This class is unimpaired. The holder of the Class 8 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

I.      Class 9 – Ford Motor Credit Company, LLC (Plumbing).

Class 9 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $5,732.58. The Class 9 Claim is secured by an interest in a 2011 Ford Ranger (Vin 9270). This class is unimpaired. The holder of the Class 9 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $978.

J.      Class 10 – Ford Motor Credit Company, LLC (Plumbing).

Class 10 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $5,704.61. The Class 10 Claim is secured by an interest in a 2011 Ford Ranger (Vin 1106). This class is unimpaired. The holder of the Class 10 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $1,444.

K.      Class 11 – Ford Motor Credit Company, LLC (Plumbing).

Class 11 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $5,707.58. The Class 11 Claim is secured by an interest in a 2011 Ford Ranger (Vin 9314). This class is unimpaired. The holder of the Class 11 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $972.

L.      Class 12 – Ford Motor Credit Company, LLC (Plumbing).

Class 12 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $5,998.12. The Class 12 Claim is secured by an interest in a 2011 Ford Ranger (Vin 9287). This class is unimpaired. The holder of the Class 12 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $992.

M.      Class 13 – Ford Motor Credit Company, LLC (Plumbing).

Class 13 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $12,252.42. The Class 13 Claim is secured by an interest in a 2011 Ford Explorer (Vin 6426). This class is unimpaired. The holder of the Class 13 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $500.

N.      Class 14 – Ford Motor Credit Company, LLC (Plumbing).

Class 14 consists of the Allowed Secured Claim of Ford Credit in the amount of approximately $14,620.77. The Class 14 Claim is secured by an interest in a 2011 Ford F150 (Vin 1117). This class is unimpaired. The holder of the Class 14 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $1,956.

O.      Class 15 – Nissan Motor Acceptance Corporation (Plumbing).

Class 16 consists of the Allowed Secured Claim of Nissan in the amount of approximately $14,907.98. The Class 15 Claim is secured by an interest in a 2013 Nissan Frontier (Vin 6953). This class is unimpaired. The holder of the Class 15 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $922.

P.      Class 16 – Nissan Motor Acceptance Corporation (Plumbing).

Class 16 consists of the Allowed Secured Claim of Nissan in the amount of approximately $14,907.98. The Class 16 Claim is secured by an interest in a 2013 Nissan Frontier (Vin 7058). This class is unimpaired. The holder of the Class 16 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $922.

Q.      Class 17 – Nissan Motor Acceptance Corporation (Plumbing).

Class 17 consists of the Allowed Secured Claim of Nissan in the amount of approximately $14,907.98. The Class 17 Claim is secured by an interest in a 2013 Nissan Frontier (Vin 7077). This class is unimpaired. The holder of the Class 17 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $922.

R.      Class 18 – Nissan Motor Acceptance Corporation (Plumbing).

Class 18 consists of the Allowed Secured Claim of Nissan in the amount of approximately $14,908.20. The Class 18 Claim is secured by an interest in a 2013 Nissan Frontier (Vin 7092). This class is unimpaired. The holder of the Class 18 Claim shall retain the

lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan. Any arrearage due on this claim will be paid in full on the Effective Date. The Debtor estimates the arrearage on this claim to be $922.

      S.      Class 19 – Ally Bank (Services).

Class 19 consists of the Allowed Secured Claim of Ally in the amount of approximately $6,096.68. The Class 19 Claim is secured by an interest in a 2010 Ford F150 (Vin 1538). This class is unimpaired. The holder of the Class 19 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

      T.      Class 20 – Ally Bank (Services).

Class 20 consists of the Allowed Secured Claim of Ally in the amount of approximately $21,852. The Class 20 Claim is secured by an interest in a 2015 Chevrolet City Express (Vin 4179). This class is unimpaired. The holder of the Class 20 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

      U.      Class 21 – Ally Bank (Services).

Class 21 consists of the Allowed Secured Claim of Ally in the amount of approximately $21,828.06. The Class 21 Claim is secured by an interest in a 2015 Chevrolet City Express (Vin 4255). This class is unimpaired. The holder of the Class 21 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

      V.      Class 22 – Lake County Tax Collector (Plumbing and Gracious).

Class 22 consists of the Allowed Secured Claim related to the 2014 real estate tax certificate issued to TLGFY in the amount of $2,367.53 (Certificate No. 3040) on the Debtor's property at 1064 W. Highway 50, Clermont. Class 22 is impaired. In full satisfaction of its Allowed Secured Claim, the holder of the Allowed Class 22 Claim shall be treated as follows: (a) the holder shall retain its lien on the property and (b) the holder shall be paid in full over 60

months with the tax certificate interest rate of 0.25% so that monthly payments equal $39.70. All payments shall be sent to TLGFY c/o Capital One, N.A. as collateral assignee, P.O. Box 54347, New Orleans, LA 70154 and payments shall commence on the Effective Date.

    W.    Class 23 – Lake County Tax Collector (Plumbing and Gracious).

Class 23 consists of the Allowed Secured Claim related to the 2014 real estate tax certificate issued to Ascot Capital in the amount of $13,761.86 (Certificate No. 3042) on the Debtors' property at 1064 W. Highway 50, Clermont. Class 23 is impaired. In full satisfaction of its Allowed Secured Claim, the holder of the Allowed Class 23 Claim shall be treated as follows: (a) the holder shall retain its lien on the property and (b) the holder shall be paid in full over 60 months with the tax certificate interest rate of 0.25% so that monthly payments equal $230.81. All payments shall be sent to Ascot Capital at P.O. Box 645040, Cincinnati, OH 45264 and payments shall commence on the Effective Date.

    X.    Class 24 – Lake County Tax Collector (Plumbing and Gracious).

Class 24 consists of the Allowed Secured Claim of the Lake County Tax Collector for 2015 real estate taxes on the Debtors' property at 1064 W. Highway 50, Clermont in the amount of $15,152.13. Class 24 is unimpaired. The holder of the Class 25 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

    Y.    Class 25 – Lake County Tax Collector (Plumbing and Gracious).

Class 25 consists of the Allowed Secured Claim related to the 2014 real estate tax certificate issued to Cazenovia Creek in the amount of $804.20 (Certificate No. 3039) on the Debtors' property at West Juniata Street, Clermont. Class 25 is impaired. In full satisfaction of its Allowed Secured Claim, the holder of the Allowed Class 25 Claim shall be treated as follows: (a) the holder shall retain its lien on the property and (b) the holder shall be paid in full over 60 months with the tax certificate interest rate of 0.25% so that monthly payments equal $13.49. All

payments shall be sent to Cazenovia Capital at P.O. Box 54897, New Orleans, LA 70154 and payments shall commence on the Effective Date.

Z.     Class 26 – Lake County Tax Collector (Plumbing and Gracious).

Class 27 consists of the Allowed Secured Claim of the Lake County Tax Collector for 2015 real estate taxes on the Debtors' property at West Juniata Street, Clermont in the amount of $874.32. Class 27 is unimpaired. The holder of the Class 22 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

AA.     Class 27 – Lake County Tax Collector (Plumbing).

Class 27 consists of the Allowed Secured Claim related to the 2014 real estate tax certificate issued to Cazenovia Creek in the amount of $999.19 (Certificate No. 3041) on the Debtors' property at West Broome Street, Clermont. Class 27 is impaired. In full satisfaction of its Allowed Secured Claim, the holder of the Allowed Class 27 Claim shall be treated as follows: (a) the holder shall retain its lien on the property and (b) the holder shall be paid in full over 60 months with the tax certificate interest rate of 0.25% so that monthly payments equal $16.76. All payments shall be sent to Cazenovia Capital at P.O. Box 54897, New Orleans, LA 70154 and payments shall commence on the Effective Date.

BB.     Class 28 – Lake County Tax Collector (Plumbing).

Class 28 consists of the Allowed Secured Claim of the Lake County Tax Collector for 2015 real estate taxes on the Debtors' property at West Broome Street, Clermont in the amount of $699.46. Class 28 is unimpaired. The holder of the Class 28 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

CC.     Class 29 – Lake County Tax Collector (Plumbing).

Class 29 consists of the Allowed Secured Claim of the Lake County Tax Collector for 2015 tangible personal property taxes in the amount of $3,483.88. Class 30 is unimpaired. The

21

holder of the Class 29 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

DD.    Class 30 – Lake County Tax Collector (Gracious).

Class 30 consists of the Allowed Secured Claim of the Lake County Tax Collector for 2015 tangible personal property taxes in the amount of $653.30. Class 30 is unimpaired. The holder of the Class 30 Claim shall retain the lien securing its claim and its legal, equitable and contractual rights will be unaltered by the Plan.

3.    Unsecured Claims

A. Class 31 – Unsecured Creditors of Plumbing.

Class 31 consists of all Allowed Unsecured Claims against Plumbing. Class 31 is impaired.  Plumbing will pay the holders of Class 31 Claims in full, except that the maximum sum to be paid shall no greater than an aggregate sum of $380,000 (the "Unsecured Pot") which Plumbing believes is the maximum amount of legitimate Allowed Class 31 Claims. Each holder of an Allowed Unsecured Claim will be paid a Pro Rata share of the Unsecured Pot if not paid in full.  Payments will be made over 120 months and shall commence on the thirtieth day after a final order as entered determining all remaining Disputed Claims.  Payments shall continue until either the Unsecured Pot or 100% of all Class 31 Claims are paid in full.

B. Class 32 – Unsecured Creditors of Services.

Class 32 consists of all Allowed Unsecured Claims against Services. Class 32 is impaired. Services will pay each holder of an Allowed Unsecured Claim in full in equal monthly installments over 24 months.

C.  Class 33 – Unsecured Creditors of Gracious.

Class 33 consists of all Allowed Unsecured Claims against Gracious. Class 33 is impaired. Gracious will pay each holder of an Allowed Unsecured Claim in full in equal monthly installments over 12 months.

4.      Equity Interests

A. Class 34 – Equity (Plumbing).

Class 34 shall consist of all equitable interest in Plumbing.  Class 34 is impaired. Class 34 consists of all equitable interests in Plumbing.  All currently issued and outstanding Equity Interests in Plumbing shall be extinguished on the Effective Date and new Equity Interests in the Reorganized Debtor shall be re-vested with William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II, or their designee wholly-owned subsidiaries or vehicles, or New Investor.

B. Class 35 – Equity (Services).

Class 35 shall consist of all equitable interest in Services.  Class 35 is impaired. Class 35 consists of all equitable interests in Services.  All currently issued and outstanding Equity Interests in Services shall be extinguished on the Effective Date and new Equity Interests in the Reorganized Debtor shall be re-vested with William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II, or their designee wholly-owned subsidiaries or vehicles.

C. Class 36 – Equity (Gracious).

Class 36 shall consist of all equitable interest in Gracious.  Class 36 is impaired. Class 36 consists of all equitable interests in Gracious.  All currently issued and outstanding Equity Interests in Gracious shall be extinguished on the Effective Date and new Equity Interests in the Reorganized Debtor shall be re-vested with William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II, or their designee wholly-owned subsidiaries or vehicles.

B.      Means of Implementation.

1.      Operation of Business

The Debtors intend to fund the Plan from cash generated by operating their respective businesses and, if necessary, from the Equity Infusion.

2.      Funds Generated During Chapter 11.

All cash in excess of operating expenses generated from operations of the Debtors' business until the Effective Date will be used for Plan Payments.

3.      Management and Ownership of the Reorganized Debtors

After Confirmation, the common stock of the Equity Holders shall be extinguished and vested with William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II for each Reorganized Debtor, or their designee wholly-owned subsidiaries or vehicles, or to the New Investor if such investor is the successful bidder at any equity auction. William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II shall remain the officers of the Reorganized Debtors.

If, and only if, Class 31 does not vote in favor of the Plan, the Debtors shall conduct an auction of Plumbing's equity interest at the hearing on confirmation of the Plan. Any party desiring to purchase the equity interests in Plumbing, shall deposit in escrow with the Debtors' attorneys, at least five (5) business days prior to the hearing on confirmation of the Plan, but not less than $10,000.00 (the "Minimum Deposit"). The Minimum Deposit is only refundable if such party is not the successful bidder at the auction. Any party who timely makes the Minimum Deposit shall be deemed a Qualified Bidder. William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II shall automatically be deemed a Qualified Bidder. If there is more than one Qualified Bidder, then the Qualified Bidders shall participate in an auction for the Interests to be conducted by the Court at the confirmation hearing and on such

terms and conditions as determined by the Court. The funds paid to the Reorganized Debtor by the New Investor or William Lawson, Charlene Lawson. Kimberly Lawson-Sapp. and William Lawson II, as the successful bidder for the equity interests shall be deemed capital contributions to Plumbing. Counsel for the Debtors is authorized to disburse such funds consistent with this Plan upon entry of an order confirming the Plan.

     D.     Other Provisions.

          1.     Leases and Executory Contracts.

          The Debtors shall assume the executory contracts or leases listed on Exhibit "A" of the Plan and pay the specified cure amount to the counter-party by the Effective Date. except that the Debtors retain the right to reject any of the contracts or leases listed on Exhibit A at the hearing on confirmation. Any executory contract or lease not expressly assumed before the entry of the Confirmation Order shall be deemed rejected. It is the position of the Debtors that the executory contracts listed in the respective Schedules of Executory Contracts filed pursuant to Rule 1007, are the only executory contracts to which the Debtors were a party on the Petition Date. If such counter-party disputes the amount of the cure amount, they shall have until seven (7) days prior to the confirmation hearing of the Plan to object to such cure amount. The cure amount, as determined by the Court, shall be paid from the Debtor's operations income on the Effective Date. If the cure amount is determined to be higher than the Debtor is willing to pay, the Debtor will reject the contract at the confirmation hearing.

          2.     Procedures for Resolving Disputed Claims.

              a.     Prosecution of Objections to Claims.

          Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, the Debtors or Reorganized Debtors shall have the exclusive right to make and file objections to all Claims.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within ninety (90) days after the Confirmation Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that, the Debtors had immediately prior to the commencement of this Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors shall have, retain, reserve and be entitled to assert all such claims, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the commencement of its Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b.    Estimation of Claims.

Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the

estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

        c.      Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

        d.      Payments and Distributions on Disputed Claims.

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Reorganized Debtors' Cash and Assets, such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

e.   Allowance of Claims and Interests

(i).   Disallowance of Claims

According to the Plan, all Claims held by entities against whom the Debtors have obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the Debtors by that Entity are turned over to the Debtors. The Debtors reserves and shall have the exclusive right and authority to bring any Causes of Action.

(ii).   Allowance of Claims

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in this Cases, unless and until such Claim or Equity Interest is deemed allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim or Equity Interest.

f.      Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

3.      Effect of Confirmation.

a.      On the Effective Date, all currently issued and outstanding Equity Interests in the Debtors shall be extinguished and new Equity Interests in the Reorganized Debtor shall be vested with William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II, or their designee wholly-owned subsidiaries or vehicles, or the New Investor who prevails at the equity auction.

b.      Authority to Effectuate the Plan.  Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying the Debtors' by-laws such that the provisions of this Plan can be effectuated. The Reorganized Debtors shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

c.      Post-Confirmation Status Report. Pursuant to the Plan, within one hundred twenty (120) days of the entry of the Confirmation Order, the Debtors will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, and those parties

who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

IV.    **INJUNCTION.**

    A.    Recipient.

         **William Lawson, Charlene Lawson, William Lawson II, and Kimberley Lawson-Sapp (collectively, the "Guarantors"). The Guarantors have been involved with the acquisition and development of the Debtors' property and business operations for years. As a consequence of their intricate involvement with the Debtors' business development and financial affairs, Guarantors are obligated on certain direct, limited, or conditional guarantees of the Debtors' financial obligations, and as a result are liable under those contractual undertakings as accommodation parties for the Debtors or as direct obligations on account of credit obtained for the benefit of the Debtors on substantially all of the Debtors' business and operational indebtedness. Additionally, Guarantors risk exposure to potential litigation related to claims arising from the Debtors' operations. Guarantors estimates their potential exposure on contractual recourse liability for the Debtors' business obligations and other Debtors' related non-contractual claims to exceeds $1,000,000.00.**

         **The Debtors believe that Guarantors have contributed significant value to the Debtors' estate, and will continue to contribute value to the Reorganized Debtors. In consideration of the substantial contributions made and to be made by Guarantors, the Plan contemplates the granting of broad, conditional third-party injunctions of pursuit against Guarantors of claims arising out of and deriving from the business operations and financial affairs of the Debtors.**

    B.    Conditional Injunction.

The Plan is premised upon the injunctions contained below. Debtors assert the injunction is being given as consideration for the accommodations provided by Guarantors under the Plan and are fair consideration for property contributed and valuable services.

Except as expressly provided in the Plan or to otherwise enforce the terms of the Plan, as of the Confirmation Date, all Persons that have held, currently hold or may hold a Claim, other debt or liability, an Interest, or other right of an equity security that is impaired or terminated pursuant to the terms of the Plan, to the fullest extent permitted by applicable law, are enjoined from taking any of the following actions, as long as each respective Reorganized Debtor and the Guarantors are not in default of any obligation under the Plan or any agreements contemplated by the Plan and except as specifically provided for in the Plan, on account of any such impaired or terminated Claims, debts or liabilities, Interests or rights:  (i) commencing or continuing in any manner any action or proceeding, including but not limited to Causes of Action, against Guarantors, or their property interests; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against Guarantors, or their property interests, other than as permitted pursuant to (i) above; (iii) creating, perfecting, or enforcing any lien or encumbrance against Guarantors, or their property interests; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to Guarantors; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

From and after the Confirmation Date, the Injunctions described herein shall become effective, and all Holders of Claims and Interests shall be enjoined from

commencing or continuing any of the actions detailed herein for so long as Reorganized Debtor and Guarantors remain in compliance with the Plan or any agreements contemplated by the Plan and except as specifically provided for in the Plan.

## V. CONFIRMATION

    A.    Confirmation Hearing.

Section 1128 of the Code requires the Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing. Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to Confirmation Hearing:

Counsel for the Debtors:

Michael A. Nardella, Esq.
Nardella & Nardella, PLLC
250 East Colonial Drive, Suite 102
Orlando, FL 32801

Roman V. Hammes, Esq.
Roman V. Hammes, P.L.
1920 North Orange Avenue, Suite 100
Orlando, FL 32804

Debtors:

**Progressive Plumbing, Inc.**
**1064 W. Highway 50**
**Clermont, FL 34711**

**Progressive Services, LLC**
**1064 W. Highway 50**
**Clermont, FL 34711**

**Gracious Living Design Center, Inc.**
**1064 W. Highway 50**
**Clermont, FL 34711**

B.    Confirmation Standards

For a plan of reorganization to be confirmed, the Code requires, among other things, that a plan be proposed in good faith and complies with the applicable provisions of Chapter 11 of the Code. Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accept a plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Court shall confirm a plan only if it finds that all of the requirements enumerated in Section 1129 of the Code have been met. The Debtors believe that the Plan satisfies all of the requirements for Confirmation.

1.    Best Interests Test.

Before the Plan may be confirmed, the Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each holder of an Allowed Claim or Interest of such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were, on the

Effective Date, liquidated under Chapter 7 of the Code. The Debtors believe that satisfaction of this test is established by the soon to be filed financial projections as well as the Equity Infusion.

The Debtors' costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee and any unpaid expenses incurred by the Debtors during the Chapter 11 Case, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in a Chapter 7 liquidation could be substantial and would decrease the possibility that Unsecured Creditors and holders of Equity Interests would receive meaningful distributions. The foregoing types of Claims arising from Chapter 7 administration and such other Claims as may arise in Chapter 7 or result from the pending Chapter 11 Cases would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors. Liquidation in Chapter 7 might substantially delay the date at which Creditors would receive any Payment.

The Debtors have carefully considered the probable effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors and holders of Equity Interests, including the following:

a.      the possible costs and expenses of the Chapter 7 trustee or trustees;

b.      the possible adverse effect on recoveries by Creditors under Chapter 7 due to reduced sale prices for the Debtors' assets caused by the forced Chapter 7 liquidation; and

c.      the possible substantial increase in Claims, which would rank prior to or on parity with those of Unsecured Creditors.

For these reasons. the Debtors believe that Creditors will receive less if these cases are converted to Chapter 7. A true and correct copy of Plumbing's liquidation analyses (the "Liquidation Analyses") is attached hereto as **Exhibit "A."**[1]

2.    Financial Feasibility.

The Code requires. as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors, unless the liquidation is proposed in the Plan. As set forth above. the financial projections based on the Equity Infusion. cash on hand and value saved under the Plan are evidence that the Plan is feasible. A projected budget for the Debtors in the year following confirmation is attached as **Exhibit "B".**

3.    Acceptance by Impaired Classes.

The Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under a Plan is deemed to have accepted such Plan; solicitation of acceptances with respect to such Class is not required. A Class is Impaired unless (i) the legal, equitable and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan

---

[1] Services and Gracious are not providing a liquidation analysis because they are paying their Allowed Unsecured Claims in full. Plumbing is proposing a pot plan that it also believes will pay its Allowed Unsecured Claims in full. Plumbing is providing a liquidation analysis to clearly illustrate that the Unsecured Pot will substantially exceed the amount that would be recoverable for unsecured creditors in a hypothetical chapter 7.

provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest, Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the holder is entitled.

4.    Confirmation Without Acceptance by all Impaired Classes: "Cramdown."

The Code contains provisions that enable the Court to confirm the Plan as to a respective Debtor, even though the Plan has not been accepted by all Impaired Classes of that respective Debtor, provided that the Plan has been accepted by at least one Impaired Class of Claims of that respective Debtor. Section 1129(b)(1) of the Code states:

> "Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and had not accepted, the plan."

This section makes clear that the Plan may be confirmed as to a respective Debtor, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly, and it is fair and equitable with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

**THE DEBTORS BELIEVE THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO THE NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

a.    Consummation.

The Plan will be consummated and Payments made if the Plan is Confirmed pursuant to a Final Order of the Court, the Effective Date occurs, and the Reorganized Debtors and applicable parties reach agreement on any required documents. It will not be necessary for the Reorganized Debtors to await any required regulatory approvals from

agencies or departments of the United States to consummate the Plan.  The Plan will be implemented pursuant to its provisions and the Code.

        b.     Exculpation from Liability.

        The Debtors, the Reorganized Debtors. their respective members, managers, and executive officers, and their respective Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement. any Plan Document, or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Reorganization Case; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party.  With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Reorganization Case.  The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtors, the Reorganized Debtors, and their respective agents have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law, or any agreement, including the Post Confirmation Credit Facility.  This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.  Notwithstanding anything to the contrary contained herein. the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan.  The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION.    MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT ASSERTING ANY SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED.

Notwithstanding the foregoing, (i) the Reorganized Debtors shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan and (ii) the Debtors' members, managers, executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

c.    Police Power.

Nothing in this Article IV shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtors for any act, omission, or event occurring prior to the Confirmation Date to the extent such monetary claims are discharged pursuant to Section 1141 of the Code.

C.    Preservation, Prosecution and Defense of Causes of Action.

The Debtors shall retain all Causes of Action.  The Debtors shall have the right to pursue any and all Causes of Action, including all pending adversary proceeding, whether or not such causes of action have been commenced as of the Effective Date.  The Debtors shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Debtors; provided, however, that the Debtors shall be authorized at any point in any litigation (a) to enter into such settlements as the Debtors deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a

hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss, and/or decide not to prosecute any such litigation.

      D.     Conditions to Effectiveness.

      The Effective Date shall not occur until all of the following conditions have been satisfied:

      1.     The entry of the Confirmation Order by the Bankruptcy Court in the form and content acceptable to the Debtors and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; provided, however, that, if an appeal of the Confirmation Order is filed, but no stay is granted in connection with the appeal, the Debtors may elect to permit the Effective Date to occur, notwithstanding the pendency of the appeal.

      2.     Upon the satisfaction or waiver of each of the foregoing conditions, the Debtors shall so notify the Bankruptcy Court, and upon the filing of such notice, the Plan shall become Effective without further Order of the Bankruptcy Court, provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

      E.     Revocation and Withdrawal of this Plan.  The Debtors reserves the right to withdraw this Plan at any time before entry of the Confirmation Order.  If (i) the Debtors revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (iv) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

      F.     Modification of Plan.  The Debtors may seek to amend or modify this Plan in accordance with § 1127(b) of the Bankruptcy Code, or remedy and defect or omission or

reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

On or before substantial consummation of the Plan, the Debtors may issue, execute, deliver, or file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

## VI.    ALTERNATIVE TO THE PLAN.

If the Plan is not confirmed and consummated, the Debtors believe that the most likely alternative is a liquidation of the Debtors under Chapter 7 of the Code. In a liquidation or sale of the Debtors' assets, all of the net proceeds would be divided between FGB, the IRS and Allied in order of priority. In such event, the Debtors believe that no or nominal sums would be left for the unsecured creditors. The Debtors believe that liquidation of all personal property in a Chapter 7 scenario would dramatically reduce the total amount available to Creditors. In a case under Chapter 7 of the Code, a trustee would be elected or appointed to liquidate the assets of the Debtors for distribution to Creditors in accordance with the priorities established by the Code. The Debtors' analysis of the probable recovery to Creditors and holders of equity Interest is set forth in the Liquidation Analysis.

## VII.    CONCLUSION

The Debtors recommend that holders of Claims and Interests vote to accept the Plan.

**DATED** this 25th day of March, 2016, in Orlando, Florida.

Progressive Plumbing, Inc.

By:

Title:

/s/ Michael A. Nardella
Michael A. Nardella, Esq.
Florida Bar No. 51265
Nardella & Nardella, PLLC
250 East Colonial Drive, Suite 102
Orlando, FL 32801

(407) 966-2676
mnardella@nardellalaw.com
Attorney for Debtors

Progressive Services, LLC

By:
Title: Kimberly Lewis Sapp
CFO

/s/ Roman V. Hammes
Roman V. Hammes, Esq.
Florida Bar No. 087250
Roman V. Hammes, P.L
1920 North Colonial Avenue, Suite 100
Orlando, FL 32804
(407) 650-0003
roman@romanvhammes.com
Attorney for Debtors

Gracious Living Design Center, Inc.

By:
Title: Kimberly Lewis Sapp
CFO Treasurer

41