UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

PROGRESSIVE PLUMBING, INC.,

PROGRESSIVE SERVICES, LLC, and
GRACIOUS LIVING DESIGN
CENTER, INC.,

      Debtors.
_____/

Chapter 11
Case No.: 6:15-bk-07275-KSJ

Jointly Administered with
Case No.: 6:15-bk-07276-KSJ
Case No.: 6:15-bk-07277-KSJ


**ALLIED WORLD SPECIALTY INSURANCE COMPANY'S MOTION FOR RELIEF FROM AUTOMATIC STAY TO COLLECT CONTRACT BALANCES**
**(amended for attachment of exhibits)**

Allied World Specialty Insurance Company ("Allied"), a creditor and party in interest, submits this Motion For Relief From Automatic Stay pursuant to 11 U.S.C. § 362(d) to collect certain contract balances, and in support hereof states as follows:

### I. BACKGROUND

1. Subject matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), (M) and (O) and is brought pursuant to Bankruptcy Rule 4001. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Progressive Plumbing, Inc., Debtor ("Progressive" or "Debtor"), entered into several pre-petition construction contracts with various obligees in connection with construction projects. The specific bonded contracts that are the subject of this Motion were with The

Evergreen Corporation d/b/a Evergreen Construction ("Evergreen") for performance of plumbing work on a Hyatt Place hotel in Columbia, South Carolina ("the South Carolina contract") and a Hyatt House hotel in Atlanta, Georgia ("the Georgia contract").  (Exhibit "A," Affidavit of Roger Ashley ("Ashley"), ¶ 1.)   Allied issued performance and payments bonds ("the Bonds") on behalf of Progressive naming Evergreen as obligee for each of the contracts. (Ashley, ¶ 1; Exhibit "B" Affidavit of James Keating ("Keating"), ¶ 1.)

3. The South Carolina contract contains provisions (1) conditioning payment of Debtor upon payment of all subcontractors and suppliers, (2) affirmatively requiring Debtor to pay all of its subcontractors and suppliers, (3), requiring payment of laborers and materialmen upon receipt of payment by Debtor, and (4) conditioning final payment upon performance of all provisions of the contract and consent of surety.  (Ashley, ¶¶ 10-13, 15.)

4. As consideration for Allied's issuance of the Bonds, Debtor executed an indemnity agreement in favor of Allied ("Indemnity Agreement").  A true and correct copy of the Indemnity Agreement is attached hereto as Exhibit "C."  (Keating, ¶ 3.)

5. Pursuant to the Indemnity Agreement, Debtor agreed to indemnify and save harmless Allied from and against any and all liability, loss, costs, damages, or expenses of whatever nature or kind and arising out of or in any way connected with the Bond issued by Allied.

6.  Prior to filing this Chapter 11 petition, Debtor incurred obligations on the South Carolina contract but did not pay or otherwise satisfy those obligations. In other words, Progressive faltered on the job and stopped performing.  (Ashley, ¶ 16; Keating, ¶¶ 4-5.)

7. Debtor has not satisfied all conditions precedent to final payment under the South Carolina contract, including failing to submit all final closeout documentation and payment of all subcontractors and suppliers.  (Ashley, ¶¶ 15-16.)

8. Allied has performed its obligations under the Bonds by paying or otherwise satisfying the Debtor's obligations under the South Carolina contract. The amount that Allied has paid under its payment bond to Debtor's subcontractors and suppliers on the South Carolina contract is $121,096.40. (Ashley, ¶ 16; Keating, ¶¶ 4-5.)

9. Specifically, Allied paid $89,113.15 to Hajoca Corp. d/b/a Hughes Supply (claim number 2015002028 – 2) and $31,983.25 to Orlando Winnelson Co. (claim number 2015002028 – 3), for a sum total of $121,096.40 on behalf of Evergreen because of Progressive's default under the South Carolina contract. (Keating, ¶ 5.)

10. Subject to receipt of required closeout documents from the Debtor and written consent of Allied, Evergreen is holding final payment on the South Carolina contract in the amount of $69,298.20. (Ashley, ¶ 16.)

11. The Georgia contract provides that Evergreen is entitled to set off against any loss on that contract with any funds otherwise owed to Progressive on any other contract with Evergreen (which includes the South Carolina contract). (Ashley, ¶ 14.)

12. Progressive abandoned the work under the Georgia contract, was declared in default and terminated by Evergreen, and undisputedly left far in excess of $70,000 in work incomplete. Evergreen completed the work and made a claim against Progressive's performance bond, issued by Allied, for over $800,000 in excess completion costs. (Ashley, ¶¶ 5-8; Keating, ¶ 6.)

13. Allied negotiated a settlement with Evergreen on the performance bond claim on the Georgia contract for a net payment of $681,000. As part of that settlement, Evergreen has acknowledged that Allied is entitled to the funds remaining on the South Carolina contract and that Evergreen therefore has no further interest in but is a stakeholder as to those funds. (Ashley, ¶¶ 14 & 17; Keating, ¶ 7.)

## II. FEDERAL BANKRUPTCY CODE REQUIRES A COURT TO LIFT AN AUTOMATIC STAY ONCE CAUSE IS SHOWN

An automatic stay is an injunction stopping lawsuits, foreclosures, wage garnishments, and other recovery activities by creditors. However, creditors are permitted to file a motion seeking relief from the stay, when good cause is shown. If a creditor is entitled to relief from the automatic stay, it can obtain stay relief by filing a motion under Section 362(d) of the Bankruptcy Code. Under this section of the Bankruptcy Code, to the extent the debtor or its estate does not have an interest in certain property, or loses an interest due to a foreclosure or other legal proceeding, the automatic stay is not applicable, nor can it create or revive the debtor's interest in such property.

Whether a debtor's interest constitutes property of the estate is a federal question. See **Hall Motors, Inc. v. Lewis (In re Lewis)**, 137 F.3d 1280, 1283 (11th Cir.1998). Therefore this court is the appropriate venue to determine if good cause exists to provide relief from the automatic stay.

The Bankruptcy Code does not provide a definition of "cause" for which an annulment or modification of the automatic stay is appropriate. ***In re Bogdanovich***, 292 F.3d 104 (2d Cir. 2002). The bankruptcy courts must determine whether "cause" exists to lift the stay based on the totality of the circumstances in each particular case. ***In re Brown***, 290 B.R. 415 (Bankr. M.D. Fla. 2003). In deciding whether there is sufficient "cause" present to warrant relief from the automatic stay, the court must conduct a balancing test whereby the interests of the estate are weighed against the hardships that will be incurred by the movants. Cause may exist whenever the automatic stay harms the moving creditor and granting relief from the stay will not unjustly harm the debtor or other creditors. ***In re Chirillo***, 84 B.R. 120 (Bankr. N.D. Ill. 1988). As discussed *infra*, the assets in question never entered into, or alternatively, are excluded from the

bankruptcy estate. Thus, Defendants are under no threat and all protections afforded by the Bankruptcy Code remain undisturbed.

### III.  THE SOUTH CAROLINA CONTRACT BALANCE IS NOT PROPERTY OF THE ESTATE BUT BELONGS TO ALLIED BY EQUITABLE SUBROGATION

Allied is entitled to receive the proceeds of the South Carolina contract under the doctrine of equitable subrogation. Equitable subrogation arises when a contractor defaults on its obligations and the surety either completes the work required by the contract or pays the bills incurred for labor and material supplied to and incorporated into the project. ***Kentucky Central Ins. Corp. v. Brown (In re Larbar Corp.)***, 177 F.3d 439 (6th Cir. 1999).

The surety's right of subrogation to recover contract funds is settled beyond dispute. The United States Supreme Court has stated, "there are few doctrines better established than that a surety that pays the debt of another is entitled to all of the rights of the person he paid to enforce his right to be reimbursed." ***Pearlman v. Reliance Ins. Co.,*** 371 U.S. 132, 83 S. Ct. 232, 9 L. Ed. 2d 190 (1962). This longstanding rule applies whether the surety performs by completing the project or by paying its principal's subcontractors and suppliers. ***Henningsen v. United States Fid. & Guar. Co.,*** 208 U.S. 404, 28 S. Ct. 389, 52 L. Ed. 547 (1908); ***Prairie State Bank v. United States****,* 164 U.S. 227, 17 S. Ct. 142, 41 L. Ed. 412 (1896).

South Carolina's courts likewise long have recognized that a surety who pays subcontractors and suppliers on behalf of its principal is subrogated not only to the rights of those paid but also to the rights of its principal and the rights of the party for whom the contract was performed. ***Sumter Trust Co. v. Sumter County***, 134 S.E. 209 (S.C. 1926) (paying surety subrogated to rights of entity who otherwise owed bonded contractor); ***Brown Constr. Co. v. Massachusetts Bonding & Ins. Co.***, 179 S.E. 697, 702 (S.C. 1935) (paying surety subrogated to

creditor's rights to contract funds and superior to all other creditors); *United States v. Crosland Constr. Co.*, 120 F. Supp. 792, 795-796 (E.D.S.C. 1954). This rule has been recognized and applied equally by the bankruptcy courts. *In re Cone Constructors, Inc.*, 265 B.R. 302 (M.D. Fla. 2001); *In re Padula Construction Co., Inc.*, 118 B.R. 143 (S.D. Fla. 1990).

Furthermore, the right of equitable subrogation attaches at the time the bond is issued. *Prairie State Nat'l Bank v. U.S.*, 164 U.S. 227, 17 S. Ct. 142, 41 L. Ed. 412 (1896); *In re Ward Land Clearing & Drainage, Inc.*, 73 B.R. 313 (N.D. Fla. 1987). Allied's equitable subrogation claim to the contract funds in this case does not constitute a "security interest" under the Uniform Commercial Code. Compliance with the requirements of Article 9 was unnecessary to preserve its equitable right to the funds. *Id.* at 316. A performing or paying surety prevails, to the extent of its loss, over a secured creditor whose claim to contract proceeds is based solely upon a perfected security interest. *In re Alcon Demolition, Inc.*, 204 B.R. 440, 447-448 (Bankr. D.N.J. 1997); *Brown Constr. Co. v. Massachusetts Bonding & Ins. Co.*, 179 S.E. 697, 702 (S.C. 1935).

To the extent of its loss, Allied is subrogated to and acquires the rights of the contractor whose obligation it discharged (Progressive), the subcontractors whose claims it paid (Hajoca Corp. and Orlando Winnelson Co.), and the party who holds the contract balances and retention (Evergreen). *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962). Allied obtained the right to payment due Progressive when Allied completed Progressive's obligations, whether payment of job debts or performance of work. *Id.* at 139; *In re Larbar*, 177 F.3d at 443.

Allied's property interest by virtue of its right of equitable subrogation, whether characterized as an ownership interest, an equitable lien, or a priority right, cannot be administered, liquidated, or distributed to creditors of the estate, as it is not an asset or property

of the estate.  *See* **Pearlman**, *supra*; **In re Alcon Demolition, Inc.**, 204 B.R. 440, 447-448 (Bankr. D.N.J. 1997).

Under equitable subrogation, Allied's rights arise both because it paid Progressive's debts on the South Carolina contract and because it stands in Evergreen's shoes to set off the loss on the Georgia contract against the funds remaining on the other job.  Evergreen incurred a loss on the Georgia contract and, by both common law and specific contract term, was entitled to set off that loss against excess job proceeds otherwise owed to Progressive on the South Carolina contract.  When Allied paid Evergreen's loss on the Georgia contract, Allied became subrogated to all of Evergreen's rights, including its right of setoff.  *See* **Pearlman v. Reliance Ins. Co.**, 371 U.S. 132 (1962); **In re Larbar Corp.**, 177 F.3d 439 (6th Cir. 1999); **United States v. Crosland Constr. Co.**, 120 F. Supp. 792, 795-796 (E.D.S.C. 1954).

This application of subrogation to the right of setoff was demonstrated and explained in **Transamerica Insurance Co. v. United States**, 989 F.2d 1188, 1191-1192 (Fed. Cir. 1993):

> Only one case has been cited to us, and we find no other, that squarely addresses the present situation—*District of Columbia v. Aetna* [462 A.2d 428 (D.C. 1983)]. That case presented a surety who completed the obligations of a contract on behalf of a defaulting contractor and then claimed the right to funds owed by the government (in that case, of the District of Columbia, rather than the United States) to the defaulting contractor on a separate contract.
>
> As in the present case, the government in *District of Columbia* had no claim to the retained funds. In *District of Columbia,* summary judgment was entered for the surety on the question of whether it was subrogated to the right to offset the loss on the one contract against the funds owed on the second contract. The Court of Appeals affirmed, as discussed above. That court distinguished its holding from cases in which there were competing equities to be weighed regarding the entitlement to the funds at issue. 462 A.2d at 431–32.
>
> The *District of Columbia* court refuted the District's argument that the right to subrogate is restricted to agreements for which either there is contractual privity between the surety and the obligee (in that case, the District), or, absent privity, for which the surety is a party. *Id.* at 431. The court instead relied on the equitable nature of the right of subrogation:

> Fairness would dictate that the surety be accorded the owner's rights and remedies with respect to the contractor. In circumstances, like the present, where the same contractor is engaged in more than one project, it becomes clearer that it is the reach or scope of the remedy rather than the equitable right itself which is at issue. Finding no persuasive reasons to the contrary, we adopt the view that, "[t]he right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties."

As in both *Transamerica* and *District of Columbia*, Allied satisfied a performance bond claim by an obligee, Evergreen, who was entitled to set off against that loss the amount otherwise due to Progressive on another contract. By its payment on the Georgia contract, Allied became subrogated to Evergreen's right of setoff and therefore to the funds held on the South Carolina contract.

Honoring Allied's subrogation rights is the essence of fairness and equity. But for Allied's payments of Progressive's debts on the South Carolina contract, no funds would have been due—Evergreen would have had to pay those bills itself and backcharge Progressive's contract balance accordingly. But for Allied's performance bond in favor of Evergreen on the Georgia contract, Evergreen would have incurred a large loss and exercised its setoff rights to apply the funds otherwise due Progressive on the South Carolina contract. In both cases, no funds would remain for Progressive or any other creditor, in the bankruptcy or otherwise. The very existence of these funds is due solely to Allied's payment and performance on behalf of both Progressive and Evergreen. Allied has honored its bond obligations, and equitable subrogation in return merely places Allied in the shoes of each party benefited by the surety—Progressive, the paid subcontractors and suppliers, and Evergreen. Evergreen's rights, most of

all, are superior to all others because it never would have owed the money at all (but for Allied's bonds).

Pursuant to Section 362(d)(2)(A) and (B) of the Bankruptcy Code, this Court should grant Allied relief from the stay to collect the outstanding balance on the South Carolina contract because that sum is not property of the Debtor's estate due to Allied's superior property right under the doctrine of equitable subrogation.

### IV. RELIEF REQUESTED

WHEREFORE, Allied requests that this Court grant Allied relief from the stay to collect the remaining balance due from Evergreen on the South Carolina contract in the amount of $69,298.20.

Respectfully submitted, this ____ day of May 2016.

*s/Jonathan P. Cohen*
Jonathan P. Cohen, P.A.
Florida Bar No. 11526
500 East Broward Blvd.
Suite 1710
Fort Lauderdale, FL 33394
Telephone: (954) 462-8850
Facsimile: (954) 848-2987
jcohen@jcohenpa.com service@jcohenpa.com
*Counsel for Allied World Specialty*
*Insurance Company*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 11, 2016, I electronically filed the foregoing motion with the Clerk of the Court by using the CM/ECF system and a true and correct copy of the foregoing has been furnished to all parties participating in CM/ECF electronic noticing and by U.S. Mail to those not participating.

/s/ Jonathan P. Cohen
Counsel