# EXHIBIT A



Darwin National Assurance Company
30 S. 17th St., Suite 810, Philadelphia, PA 19103

# AGREEMENT OF INDEMNITY

**THIS AGREEMENT OF INDEMNITY** (this "*Agreement*"), is made and entered into on this 20th day of March, 2013 by and among the following entities and individuals, to wit:

| Principal(s) | Address(es) |
|---|---|
| Progressive Plumbing, Inc. | 1064 W. Highway 50, Clermont, Florida 34712 |
| Lawson Investment Group, Inc. | 1064 W. Highway 50, Clermont, Florida 34712 |
| Gracious Living Design Center, Inc. | 1064 W. Highway 50, Clermont, Florida 34712 |
| Central Florida Supply, Inc. | 1064 W. Highway 50, Clermont, Florida 34712 |
| Progressive Plumbing Services, LLC | 1064 W. Highway 50, Clermont, Florida 34712 |

including any affiliate or subsidiary of any of the foregoing (all such persons, affiliates and subsidiaries being referred to collectively herein as the "*Principal*") and the following entities and individuals, each intending to be jointly and severally bound hereunder, to wit

| Indemnitor(s) | Address(es) |
|---|---|
| Progressive Plumbing, Inc. | 1064 W. Highway 50, Clermont, Florida 34712 |
| Lawson Investment Group, Inc. | 1064 W. Highway 50, Clermont, Florida 34712 |
| Gracious Living Design Center, Inc. | 1064 W. Highway 50, Clermont, Florida 34712 |
| Central Florida Supply, Inc. | 1064 W. Highway 50, Clermont, Florida 34712 |
| Progressive Plumbing Services, LLC | 1064 W. Highway 50, Clermont, Florida 34712 |
| William E. Lawson, Sr. | 1803 Rosewood Dr., Clermont, FL 34711 |
| Charlene H. Lawson | 1803 Rosewood Dr., Clermont, FL 34711 |

Including any affiliate or subsidiary of any of the foregoing (all such persons, affiliates and subsidiaries being referred to collectively herein as the "*Indemnitor*"), and

**Darwin National Assurance Company**, 30 S. 17th Street Suite 810 Philadelphia PA 19103 together with its affiliated insurers and with each other subsidiary, affiliate, successor and assign of any of said insurance companies (which are referred to collectively herein as the "*Surety*")

## WITNESSETH

WHEREAS, in performing certain contracts and fulfilling related obligations, Principal may be required to obtain surety bonds, or similar undertakings or instruments of guarantee, and to renew, continue or substitute from time to time the same, or to obtain new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions (any one or more of which bonds, undertakings or instruments are hereinafter called a "*Bond*"), and

WHEREAS, acting upon the request of Principal and Indemnitors and in reliance upon the understanding that this Agreement be executed and the obligations hereunder be performed, Surety has agreed to execute Bonds or to cause Bonds to be executed and, in the same reliance, it may in the future execute or cause to be executed, one or more other Bonds on behalf of the Principal; and

WHEREAS, Indemnitors have a direct, substantial, material and beneficial interest in obtaining the Bonds and in keeping the Bonds outstanding and in the Surety's refraining from canceling said Bonds

NOW THEREFORE, in consideration of the premises the Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree. Jointly and severally, with the Surety as follows:

I. **Certain Definitions**

"*Change of Control*" means any series of events by which (a) a person or group becomes or has the unconditional right to become the direct or indirect owner, directly or indirectly of 25% or more of the voting power of the voting stock of any Indemnitor, or (b) an Indemnitor consolidates with or merges into another entity or organization, or transfers by any means all or substantially all of its assets to another entity or organization or (c) during any period of twelve consecutive months, individuals who, at the beginning of such period, constituted the board of directors of an Indemnitor (together with any new director voted to the Indemnitor's board by vote of a majority of the directors then in office who either were directors at the beginning of such period) cease for any reason to constitute at least a majority of the board of directors of such Indemnitor.

"*Claim*" means any claim, notice of default, notice of termination, demand for payment, suit, or any other form of notice or claim or demand that the Surety receives in connection with any Bond.

"*Due Date*" will mean the fifth business day after the receipt date of a written demand from the Surety, unless otherwise specified in this Agreement.

"*Interest*" means interest at the rate of four percent (4%) per annum above the Wall Street Journal prime rate, as published on the Due Date.

"*Lien*" means any mortgage, pledge, assignment, encumbrance, or other security agreement or preferential arrangement of any kind or nature whatsoever.

"*Loss*" means the underlying dollar amount of all Claims and of all damages, expenses, costs, professional and consulting fees (including all legal fees and disbursements), interest and expenses of every nature (including premium and fees due-but-unpaid for the issuance and continuance of the Bonds) which the Surety sustains or incurs or becomes liable for by reason of (a) being requested to execute or procure the execution of any Bond; or (b) having executed or procured the execution of any Bond; or (c) the administration of any amendment, waiver or supplement to any Bond; or (d) any Indemnitor's failure to perform or comply with any of the covenants and conditions of this Agreement; or (e) enforcement of, attempted enforcement of, or preservation of rights under any Bond or this Agreement.

## II. Representations and Warranties

The Indemnitor(s) and each of them hereby represent and warrant to the Surety as follows:

2.1 No information, exhibit or report furnished by any Indemnitor to the Surety in connection with the negotiation of, or compliance with this Agreement or in connection with any Bond, contains or will contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading.

## III. Indemnitor Covenants

Each Indemnitor hereby agrees and covenants with the Surety as follows:

3.1   PREMIUMS – to pay the Surety, when due or otherwise promptly upon Surety's demand, all of the premiums, costs and charges for Bonds requested from and/or issued by the Surety in accordance with its rate filings, its manual of rates, or as otherwise agreed upon; and where such premium costs and charges are annual, to continue to pay them at the then applicable rate (as such rate is set forth by the Surety) until the Indemnitors or Principals will deliver evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

3.2   INDEMNITY – at all times jointly and severally to indemnify and to hold the Surety harmless from and against any and all liability for any and all Loss, and in such connection, Indemnitors will pay the Surety for all Losses specified or otherwise described in Surety's notice, no later than close of business on the Due Date with respect to such notice, whether or not the Surety has actually made any payment thereon as of such Due Date.

3.3   DEPOSIT OF FUNDS –  (a) to deposit with the Surety as collateral, by the Due Date and after receipt of the Surety's written demand, the sum equal to an amount determined by the Surety, to cover liability for Loss covered by Section 3.2, as determined by the Surety.  At Surety's sole option, such collateral will be in addition to and not in lieu of any other collateral previously provided to the Surety. Further, if an Event of Default (as defined in this Agreement below) has occurred, the Surety will be entitled to demand that the Indemnitors place with Surety funds equal to the aggregate penal sum of all then- outstanding Bonds, as such sum is determined by the Surety in its sole discretion (regardless of whether any actual liability for Loss exists under any of the Bonds).

(b) If Indemnitors fail to pay in full the amount demanded pursuant to this Agreement on the Due Date, Indemnitors will pay Interest on such overdue amount from the Due Date up to the date of actual payment to the Surety.

(c) Surety will have the right to use the collateral, or any part thereof, in payment or settlement of any liability, Loss or expense for which the Indemnitors are or would be obligated to indemnify the Surety under the terms of this Agreement. The Indemnitors will be entitled to the refund of any unused portion of the deposit upon termination of the liability of the Surety on all Bonds and the termination of Indemnitors' performance of all obligations to the Surety under the terms of this Agreement.

(d) Indemnitors acknowledge that the failure to deposit with the Surety, by the Due Date, the sum demanded by the Surety as collateral security will cause the Surety irreparable harm for which the Surety has no adequate remedy at law. Indemnitors agree that the Surety will be entitled to injunctive relief for specific performance of the Indemnitors' obligation to deposit with the Surety the sum demanded as collateral security and hereby waive any claims or defenses to the contrary and the posting of any bonds by the Surety in connection therewith

3.4   NEGATIVE PLEDGE —to not create, incur, or suffer to exist any Lien in, of or on any Indemnitor's or Principal's property *except the following which will be considered "Permitted Liens"*.

      3.4.1   Liens for taxes, assessments or governmental charges or levies on its property that (a) are not at the time delinquent or thereafter can be paid without penalty, or (b) are being contested in good faith and by appropriate proceedings and for which adequate reserves are set aside on its books;

      3.4.2   Liens imposed by law, such as carriers', warehousemen's and mechanics' liens and other similar liens arising in the ordinary course of business which secure payment of obligations not more than 60 days past due or which are being contested in good faith by appropriate proceedings and for which adequate reserves are set aside on its books;

      3.4.3   Liens arising out of pledges or deposits under worker's compensation laws, unemployment insurance, old age pensions, or other social security or retirement benefits, or similar legislation;

      3.4.4   Utility easements, building and zone restrictions, minor defects or irregularities in title and such other encumbrances or charges against real property that generally exist on similar types of properties and which do not in any material way adversely affect the marketability of the same or interfere with the use thereof in the business of the Indemnitor or its subsidiaries;

      3.4.5   Judgment and attachment liens that do not cause a default under this Agreement, or liens created by or existing from any litigation or legal proceeding that are being contested in good faith by appropriate proceedings, promptly instituted and diligently conducted, and for which adequate reserves or other appropriate provisions, if any, are made in respect of a claim not to exceed $100,000; and

      3.4.6   Liens in favor of collecting or payor banks that have a right of setoff, revocation, refund or chargeback in their favor with respect to money or instruments of the Indemnitor or any of its subsidiaries on deposit with or in possession of such banks;

*provided, however*, Indemnitors will provide the Surety notice within 10 days of the incurrence of any Permitted Lien in excess of $100,000.

3.5   CHANGE OF CONTROL – to not permit any Change of Control to occur without the Surety's prior written consent, such consent not to be unreasonably withheld or denied.

3.6   REPORTING/RIGHT TO INFORMATION – to maintain a system of accounting established and administered in accordance with United States generally accepted accounting principles ("GAAP") and until such time as the potential liability of the Surety under any Bond or Bonds is terminated, the Indemnitors and its subsidiaries will promptly furnish to the Surety such information as the Surety may request from time to time, and the Surety will have the right to examine and copy the books, records and accounts of the Indemnitors. Further, the Indemnitor will furnish to the Surety;

      3.6.1   Within 10 days of such event, (i) notice of any modification, change, amendment or termination of any credit facility agreements, (ii) notice of any technical or other default under any credit facility agreements as soon as possible and within 10 days of the occurrence thereof, whether or not such default has been waived or cured, (iii) notice of delivery of any certificate or notice required to be delivered by an Indemnitor to lenders or agents under any credit facility agreements to which an Indemnitor is party;

      3.6.2   As soon as possible and within 10 days after Indemnitor's receipt thereof, a copy of (i) any notice or claim to the effect that the Indemnitor or any of its subsidiaries is or may be liable to any person as a result of the release by the Indemnitor, any of its subsidiaries or any other Person of any toxic or hazardous waste or substance into the environment, and (ii) any notice alleging any violation of any federal, state or local environmental, health or safety law or regulation by the Indemnitor or any of its subsidiaries; and

3.6. 3   Upon becoming aware of any demand, notice or proceeding which may result in liability to the Surety under any Bond, Principal and Indemnitors will provide notice promptly thereof. Such notices will include, but are not limited to bank notices and environmental notices of default. The Indemnitor further authorizes any bank, depository, creditor, Obligee of a Bond, subcontractor, materials supplier or other person, firm or corporation possessing records or having information concerning the financial affairs and operations of the Indemnitor to furnish to the Surety and its representatives or consultants any such records or information requested by the Surety.

3.7   COOPERATION WITH INVESTIGATION – to promptly, upon receipt of a notice from the Surety regarding the Surety's investigation of a Claim, or upon receipt of a request for additional information from the Surety regarding any Claim, provide the Surety with access to full, complete, accurate and up to date information regarding Indemnitor's position regarding the validity or defenses to the Claim. If the Indemnitor's attorney possesses information concerning the Claim, Indemnitor will instruct its attorney to cooperate with the Surety and Indemnitor will provide the Surety with access to said attorney and information.

3.8   TRUST FUND –-to hold as a trust fund and/or as a constructive or equitable trust, all interest, title and rights in any contract or undertaking referred to in any Bond, or in, or arising in any matter out of, any Bond, including but not limited to payments for or on account of any contract, in which the Surety has an interest, which will inure to the Surety's benefit for any liability for Loss it may have or sustain under any Bond; and, further, it is expressly declared that all monies due or to become due under any contract covered by any Bond are trust funds, whether in the Indemnitors' possession or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract for which the Surety would be liable under any Bond; said trust also inures to the Surety's benefit for any liability or Loss it may have or sustain under any Bond or under this Agreement, and this Agreement constitutes notice of such trust.

3.9   SURETYSHIP COVERED – Each Indemnitor expressly recognizes and covenants that this Agreement is a continuing obligation and that it will continue to apply to and indemnify the Surety as to any and all Bonds (whether or not covered by any application signed by an applicant with such application to be considered merely supplemental to this Agreement) heretofore or hereafter executed or caused to be executed by Surety on behalf of such applicant until this Agreement will be canceled in the manner hereinafter provided.

## IV.   Settlements, Use of Collateral and Payment

4.1   SETTLEMENTS.  The Surety is granted the option to adjust, settle or compromise any Claim, demand, suit or judgment with respect to any Bond in Surety's sole discretion.  An Indemnitor may request the Surety to litigate such Claim or demand, or to defend such suit, or to appeal from such judgment, but Surety will be under no obligation to do so unless (i) Surety is provided with an opinion of Indemnitor's counsel which indicates that such suit or appeal has reasonable basis in law, and (ii) the Indemnitor deposits with the Surety, at the time of such request, cash or collateral satisfactory to the Surety to be used to pay any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

4.2   USE OF COLLATERAL. Upon the occurrence of an Event of Default (as defined below), the Surety will have the right to use any collateral, or any part thereof, including but not limited to any letter of credit, in payment or settlement of such liabilities for which the Indemnitors (or any one of them) would be obliged to indemnify the Surety under the terms of this Agreement whether or not such liabilities arise out of or in connection with the Bond under which such collateral was delivered. The Surety may sell any property assigned to it pursuant to this Agreement at public or private sale, with or without notice, at any time or place without incurring any liability of any kind. The Surety may purchase any of the property at such sale and Indemnitors hereby waive any objection to Surety's purchase as aforesaid.

4.3   PAYMENTS. In the event of any Loss payment by the Surety, the Indemnitors further agree that in any accounting between the Surety and Indemnitors, the Surety will be entitled to charge for any and all disbursements made by it in good faith concerning the matters contemplated in this Agreement under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments the Surety made will be prima facie evidence of the fact and amount of the Surety's liability.

V.   **Assignment, Events of Default, Advances, Attorney-in-Fact**

5.1   ASSIGNMENT; COLLATERAL

5.1.1   Each Principal and Indemnitor hereby assigns, transfers, pledges, conveys and sets over to the Surety, as collateral to secure every obligation under this Agreement, whether such obligation has arisen before or after the date of this Agreement (with the assignment of any contract to become effective as of the date of the Bond covering such contract), a security interest in the following, whether now owned or hereafter existing or acquired:

(a) all of the Principals' and/or Indemnitors' rights, title and interest in, and arising in any manner out of, all contracts referred to in the Bonds (whether or not bonded), or in, or arising in any manner out of the Bonds;

(b) any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds including, but not limited to, all percentages retained, progress payments, deferred payments, compensation for extra work and proceeds of damage claims;

(c) all of the Principals' and/or Indemnitors' rights, title and interest in and to all machinery, supplies, equipment, plant, tools and materials of every nature and description which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites;

(d) all proprietary systems, software or any other assets of a similar nature which are employed by the Principals in connection with any and all contractual work referred to in the bonds;

(e) all of the Principals' and/or Indemnitors' rights, title and interest in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts;

(f) all actions, causes of actions, claims and demands whatsoever which the Principal and/or Indemnitors may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialman and

(g) all proceeds of the foregoing.

5.1.2   The foregoing assignment is effective as of the date of this Agreement's execution and delivery as to each contract covered by Bonds executed prior to such date, although nothing herein limits the Surety's right to claim under any prior assignment. As to any Bond executed and delivered on or after the date of this Agreement's execution and delivery, the assignment will be effective as of the respective Bond's effective date.

5.2   EVENTS OF DEFAULT – Surety, or any persons the Surety designates, may enforce the security interests granted herein and may take, and are hereby authorized and empowered by each Principal and each Indemnitor to take, any action necessary to obtain possession of the funds, rights and property subject thereto if any of the following occur (each an "Event of Default"):

(1) any abandonment, breach of or failure, refusal or inability to perform, any contract referred to in the Bonds or of any breach of any said Bonds;

(2) a failure by any Principal or Indemnitor, or delay, refusal, or inability to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract covered by a Bond;

(3) any breach of an obligation set forth in Article III of this Agreement;

(4) any Indemnitor's assignment for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for any Indemnitor or its property, whether insolvent or not, or any Indemnitor's application for reorganization or arrangement under the terms of the United States Bankruptcy Code or any similar laws of any state, possession or territory of the United States, or if other Persons initiate such proceedings, the continuance of those proceedings for a period of thirty days;

(5) any proceeding which deprives the Principal of, or interferes with, the use of any machinery, equipment, plant, tools, or material;

(6) any default under any credit facility agreement of any kind which is not waived by the lenders or any contracting party thereto; or

(7) the Principal's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Principal be an individual or, if the Principal is any other type of entity, any change in the Principal's name, principal place of business or existence.

5.3   TAKEOVER – if an Event of Default occurs, the Surety will have the option in its sole discretion and it is hereby authorized to take possession of any part or all of the work under any contract or contracts covered by any Bond, including, but not limited to, machinery, supplies, equipment, plant, tools and materials, without charge and at the Indemnitors' cost and expense, to complete or arrange completion of the same, and the Indemnitors will promptly upon demand pay to the Surety all Losses, fees, costs and expenses so incurred.

5.4   ADVANCES–the Surety is authorized and empowered (in its sole discretion and without any obligation to do so) to guarantee loans, to advance or lend to the Principal any money for any contracts referred to in or guaranteed by the Bonds; and all money the Surety expends in the completion of any such contracts, or lends or advances from time to time to the Principal, or the Surety guarantees for the purposes of any such contracts, and all costs, and expenses the Surety incurs in relation thereto, unless repaid with legal interest by the Principal to the Surety when due, will be a Loss by the Surety for which the Principal and the Indemnitors will be responsible, notwithstanding that said money or any part thereof should not be so used by the Principal.

5.5   ATTORNEY-IN-FACT – Principal and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety, or any persons the Surety designates, as their attorney-in-fact with the right, but not the obligation, to exercise all of the Principals' and Indemnitors' rights assigned, transferred and set over to the Surety in this Agreement, and in the Principals' and Indemnitors' name to make, execute, and deliver any and all additional or other assignments, documents, financing statements or papers the Surety deems necessary and proper to (i) vest in the Surety absolute title to any and all monies, property and rights hereby assigned and (ii) provide the protection and rights to the Surety contemplated by all of the provisions of this Agreement. The Principal and Indemnitors hereby ratify and confirm all of the Surety's acts and actions taken and done as such attorney-in-fact and agree to protect and hold the Surety harmless for acts herein granted as attorney-in-fact.

VI      Termination

6.1     *Immediately upon receipt of Surety's written request for its release and discharge from any Bond (or Bonds), Indemnitors will use their best efforts to cause the Surety to be fully and completely released and discharged from such Bond(s) and from all liability by reason of such Bond(s).*

6.2     Principal or Indemnitors may terminate this Agreement upon twenty days written notice sent by registered mail to the Surety at its principal bond office at 30 S. 17th Street Suite 810 Philadelphia PA 19103, but any such notice of termination will not operate to modify, bar, or discharge the Principal or the Indemnitors as to the Bonds that may have been theretofore executed or Losses theretofore incurred. Such notice of termination will operate only with respect to those Principals and Indemnitors upon whose behalf such notice of termination will have been given. All other notices or certificates required to be delivered hereunder should also be sent to the above address.

### VII. General Provisions

7.1     AMENDMENTS – This Agreement may not be changed or modified orally. No change or modification will be effective unless made by written endorsement executed by the Surety to form a part hereof. The addition to this Agreement of any Indemnitor or Principal, including any entities acquired after the date of execution of this Agreement, may be effected by written amendment executed by such Indemnitor or Principal only, notwithstanding any language herein to the contrary.

7.2     CHANGES; WAIVER OF NOTICE – The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors (any notice to Indemnitors being hereby *expressly waived*), to assent, or to refuse to assent, to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent, or to refuse to assent, to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Indemnitors will remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Indemnitors.

7.3     NO WAIVER; REMEDIES CUMULATIVE – No failure or delay on the part of Surety in the exercise of any power, right or privilege hereunder or under any Bond will impair such power, right or privilege or be construed to be a waiver of any default or to be acquiescence therein, and no single or partial exercise of any such power, right or privilege will preclude further exercise thereof or of any other power, right or privilege. The rights, powers and remedies given to Surety hereby are cumulative and will be in addition to and independent of all rights, powers and remedies existing by virtue of any statute or rule of law, including every right and remedy which a personal surety without compensation would have and nothing herein contained will be considered or construed to waive, abridge or diminish any right or remedy which the Surety might have if this Agreement were not executed.

7.4     COUNTERPARTS – This Agreement may be executed in any number of counterparts, all of which taken together will constitute one agreement, and any of the parties hereto may execute this Agreement by signing any such counterpart. This Agreement will be effective as to each Indemnitor when such Indemnitor has executed it and notified the Surety by facsimile transmission that it has taken such action. The Indemnitors hereby acknowledge that the failure of anyone of them to execute this Agreement will not in any way affect the validity or enforceability of this Agreement as to those Indemnitors who have executed the Agreement.

7.5     ENTIRE AGREEMENT –This Agreement (together with any Bonds issued by the Surety on behalf of a Principal and any other documents delivered in connection herewith or therewith) constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all other prior agreements and understandings, both written and verbal, among the parties or any of them with respect to the subject matter hereof. This Agreement is between sophisticated parties, each of which has reviewed the Agreement and is fully knowledgeable about its terms and conditions. The parties therefore agree that this Agreement will be construed without regard to the authorship of the language and without any presumption or rule of construction in favor of either of them.

7.6     DECLINE EXECUTION – *All parties acknowledge and agree that nothing in this Agreement will be construed as an explicit or implicit commitment by Surety to execute, renew or extend any bonds to a Principal or otherwise.* The Surety may, in its sole discretion, decline to execute, renew or extend any Bond and may cancel any Bond for whatever reason, in Surety's sole discretion, and the Principal and Indemnitors agree to make no claim to the contrary. Without limiting the foregoing, if the Surety will execute a Bid or Proposal Bond, it will have retain the right to decline to execute any Bond that may be required in connection with an award that may be made under the proposal for which the Bid or Proposal Bond is given, and such declination will not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond. The Indemnitors acknowledge that the Surety makes no representation as to the validity or acceptability of any Bond to any person, firm or entity of whatever sort or kind under any contract, and Indemnitors agree that they will have no claim against the Surety arising out of or in any manner relating to the failure or refusal of any person, firm or entity of whatever sort or kind to award any contract to the Principal, or to accept any bond executed and delivered by the Surety, or that surety has been requested to execute and deliver.

7.7     INVALIDITY; SAVINGS CLAUSE – Invalidity of any provision of this Agreement by reason of the laws of any jurisdiction will not render the other provisions hereof invalid. In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity will not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing will be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. Each party agrees to execute promptly any documentation necessary to cure any such failure, defect or invalidity. It is understood and agreed by the Indemnitors that the rights, powers, and remedies given the Surety under this Agreement will be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise.

7.8     GOVERNING LAW; JURISDICTION -This Agreement will be governed by and construed in accordance with the law of the State of New York without regard to conflict of laws principles. As to any legal action or proceeding related to this Agreement, the Indemnitors will be subject to the jurisdiction of the federal courts, or if such courts do not have jurisdiction then the state courts, located in the Borough of Manhattan in the State of New York, and waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or similar basis. Indemnitors further waive personal service.

7.9     NOTICE OF EXECUTION -The Principal and Indemnitors hereby waive notice of the execution of any Bond and of the acceptance of this Agreement, and also waive notice of any change in surety credit or other fact that might materially alter the Principal's and Indemnitors' obligations hereunder. The Principal and the Indemnitors hereby further waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Principal and the Indemnitors will be and continue to be liable hereunder, *notwithstanding* any notice of any kind to which they might have been or be entitled, and *notwithstanding* any defenses they might have been entitled to make as a result of lack of notice.

7.10  OTHER INDEMNITY -The Principal and the Indemnitors will continue to be bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Principal and the Indemnitors, accepted, reduced or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Principal or Indemnitors or others, it being expressly understood and agreed by the Principal and the Indemnitors that any and all other rights which the Surety may have or acquire against the Principal and the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral will be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement. No Indemnitor will make any defense to the enforcement of this Agreement based on the addition or the release of any Indemnitor. The security interest, assignments, trust, indemnity and other rights granted herein, will not be deemed a waiver of Surety's equitable subrogation rights or other rights, said security and rights being in addition to the rights of exoneration, subrogation, and other rights to which Surety is entitled to under law or in equity.

7.11  SUITS —Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action will not prejudice or bar the bringing of other suits, upon other causes of action, whether theretofore or thereafter arising.

7.12  CO-SURETIES – In the event the Surety procures the execution of any Bond by other sureties, or executes any Bond with cosureties, or reinsures any portion of any Bond with reinsuring sureties, then all the terms and conditions of this Agreement will inure to the benefit of such other sureties, co-sureties and reinsuring sureties, their successors and assigns, as their interests may appear.

7.13  UNIFORM COMMERCIAL CODE – This Agreement will constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity. The Indemnitors will execute and deliver such other instruments as may be necessary or desirable to permit either the filing of this Agreement as a Financing Statement or the filing of a Financing Statement based upon this Agreement as a Security Agreement in such jurisdictions as the Surety will deem necessary or desirable. Each Indemnitor hereby authorizes the Surety to make such filings, including continuation statements and amendments thereto, without the signature of such Indemnitor.

**IN WITNESS WHEREOF**, the undersigned expressly recognize and covenant that this Agreement is a continuing obligation applying to and indemnifying the Surety as to any and all bonds heretofore or hereinafter executed by the Surety on behalf of the principal until this Indemnity Agreement will be terminated.

## PRINCIPAL

Corporate / Partnership Name: Progressive Plumbing, Inc.
*On behalf of all Principals (if more than one)*

BY: _____
Name & Title: William E. Lawson, Jr., President

## INDEMNITOR(S):

Corporate / Partnership Name: Progressive Plumbing, Inc.
FEIN # ███████
BY: _____
Name & Title: William E. Lawson, Jr., President

Corporate / Partnership Name: Lawson Investment Group, Inc.
FEIN # ███████
BY: _____
Name & Title: William E. Lawson, Sr., President

Corporate / Partnership Name: Gracious Living Design Center, Inc.
FEIN # ███████
BY: _____
Name & Title: Charlene H. Lawson, President

Corporate / Partnership Name: Central Florida Supply, Inc.
FEIN # ███████
BY: _____
Name & Title: Charlene H. Lawson, President

Corporate / Partnership Name: Progressive Plumbing Services., LLC
FEIN # ███████
BY: _____
Name & Title: William E. Lawson, Sr., Managing Member

Individual:        Signature: _____
SS# ███████        Name : William E. Lawson, SR.

Individual:        Signature: _____
SS# ███████        Name   Charlene H. Lawson

## SURETY

Darwin National Assurance Company
*On behalf of itself and its subsidiary and affiliated corporations*

BY: _____
Name & Title: Robert E. Staples, Senior Vice President

*Acknowledgements:*
*(Please include corporate and individual notary acknowledgements for each signatory)*

# COPY OF RESOLUTION OF BOARD OF DIRECTORS AUTHORIZING CORPORATE INDEMNITY OR SUBORDINATION

At a regular/special meeting of the Board of Directors of (Names of Company/Affiliates)(hereinafter called Company) duly called and held on the ___20th___ day of ___March___, 2013 a quorum being present, the following Preambles and Resolutions were adopted:

WHEREAS, this Company is materially interested through stock ownership or other interest in transactions appertaining to the general conduct of its business, including but not limited to various contracts or agreements in connection with which the Company and/or any present or future subsidiary or any subsidiary of a subsidiary, whether alone or in joint venture with others not named herein (and/or any other corporation, partnership or person upon written request of the Company), (hereinafter called Principal) has applied or will apply to any of the American International Companies (hereinafter called Surety) for certain bonds or undertakings of whatever kind or nature and

WHEREAS, the Surety is willing to execute such bonds or undertakings as surety upon the written indemnity of this Company or written subordination of moneys owed to this Company:

RESOLVED, that ___William E Lawson___ / _William E Lawson_ , ___President___ / _President_
(Type Name of Authorized Signatory)              (Title)
___William E Lawson II___ / _William E Lawson_ , ___Exec V President___ / _Exec. V. President_
(Type Name of Authorized Signatory)              (Title)

be and they are hereby authorized and empowered to execute any indemnity or subordination agreement or agreements required by the Surety as consideration for the execution by it of bonds or undertakings of whatever kind or nature in behalf of the Principal described:

RESOLVED FURTHER, that the said officers be and they are hereby authorized and empowered, at any time prior or subsequent to the execution by said Surety of any such bonds or undertakings, to execute any and all amendments to said indemnity or subordination agreement or agreements; and to execute any other or further agreements relating to any such bonds or undertakings or to any collateral that may be or has been deposited with the Surety in connection therewith; and to take any and all other actions that may be requested or required by the Surety in the premises; and that any and all actions previously taken by the said officers of the kind and nature above described be and they are hereby ratified and accepted.

I, ___Charlene Lawson___ Secretary of the Company, have compared the foregoing
(Type Name of Secretary)
preambles and resolutions with the original thereof, as recorded in the Minute Book of said Company, and do certify that the same are correct and true transcripts therefrom, and of the whole of said original preambles and resolutions, which have not been amended, annulled or revoked, and are still in full force and effect.

Given under my hand and the seal of the Company, in the City of ___Clermont___, State of Florida this _20th_ day of ___March___, 2013
(Affix Corporate Seal)

Charlene Lawson
_Charlene Lawson_
(Signature), Secretary

_Charlene Lawson_
(Name of Secretary)

For Acknowledgement of **PRINCIPAL'S** Signature

## CORPORATE ACKNOWLEDGEMENT

STATE OF Florida )
COUNTY OF LAKE ) ss.:

On this 20TH day of MARCH, in the year 2013, before me personally come(s) William E. Lawson Jr., to me known, who, being by me duly sworn, deposes and says that he resides in the City of Clermont that he is the **President** of **Progressive Plumbing, Inc.** the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)

KRISTYN L NEWTON
Notary Public - State of Florida
My Comm. Expires Jul 11, 2016
Commission # EE 215732

## CORPORATE ACKNOWLEDGEMENT

STATE OF Florida )
COUNTY OF LAKE ) ss:

On this 20 day of MARCH, in the year 2013, before me personally come(s) William E. Lawson Sr., ., to me known, who, being by me duly sworn, deposes and says that he resides in the City of Clermont that he is the President of **Lawson Investment Group, Inc.** the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)

KRISTYN L NEWTON
Notary Public - State of Florida
My Comm. Expires Jul 11, 2016
Commission # EE 215732

## CORPORATE ACKNOWLEDGEMENT

STATE OF Florida )
COUNTY OF LAKE ) ss.:

On this 20TH day of MARCH, in the year 2013, before me personally come(s) Charlene H. Lawson, to me known, who, being by me duly sworn, deposes and says that he resides in the City of Clermont that he is the **President** of **Gracious Living Design Center, Inc.** the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)

KRISTYN L NEWTON
Notary Public - State of Florida
My Comm. Expires Jul 11, 2016
Commission # EE 215732

SUR 00009 00 (11/2012)

## CORPORATE ACKNOWLEDGEMENT

STATE OF Florid )
COUNTY OF LAKE ) ss:

On this 20TH day of MARCH, in the year 2013, before me personally come(s) <u>Charlene H. Lawson</u>, to me known, who, being by me duly sworn, deposes and says that he resides in the City of <u>Clermont</u> that he is the **President** of **Central Florida Supply, Inc.** the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)

KRISTYN L NEWTON
Notary Public - State of Florida
My Comm. Expires Jul 11, 2016
Commission # EE 215732

## LIMITED LIBILIATY ACKNOWLEDGEMENT

STATE OF Florida )
COUNTY OF LAKE ) ss.:

On this 20TH day of MARCH, in the year 2013, before me personally come(s) <u>William E. Lawson Sr.– Managing Member</u>, a member of **Progressive Plumbing Services, LLC**, to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he executed the same as and for the act and deed of the said co-partnership.

_____
(Signature of Notary Public)

KRISTYN L NEWTON
Notary Public - State of Florida
My Comm. Expires Jul 11, 2016
Commission # EE 215732

For Acknowledgement of **INDEMNITORS** Signatures

## INDIVIDUAL ACKNOWLEDGEMENT

STATE OF Florida )
COUNTY OF LAKE ) ss:

On this 20TH day of MARCH, in the year 2013, before me personally come(s) **William E. Lawson Sr.**, to me known and know to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me that he executed the same.

_____
(Signature of Notary Public)

KRISTYN L NEWTON
Notary Public - State of Florida
My Comm. Expires Jul 11, 2016
Commission # EE 215732

## INDIVIDUAL ACKNOWLEDGEMENT

STATE OF Florida)
COUNTY OF LAKE ) ss:

On this 20TH day of MARCH, in the year 2013, before me personally come(s) **Charlene H. Lawson**, to me known and know to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me that he executed the same.

_____
(Signature of Notary Public)

SUR 00009 00 (11/2012)

KRISTYN L NEWTON
Notary Public - State of Florida
My Comm. Expires Jul 11, 2016
Commission # EE 215732