**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | **CHAPTER 11** |
| | **CASE NO.: 6:15-BK-07275-KSJ** |
| **PROGRESSIVE PLUMBING, INC.,** | |
| | |
| **PROGRESSIVE SERVICES, LLC, and** | **JOINTLY ADMINISTERED WITH** |
| **GRACIOUS LIVING DESIGN** | **CASE NO.: 6:15-BK-07276-KSJ** |
| **CENTER, INC.** | **CASE NO.: 6:15-BK-07277-KSJ** |
| **Debtors.** | |
| _____/ | |

**DEBTORS' JOINT CONFIRMATION MEMORANDUM AND**
**DECLARATION IN SUPPORT OF DEBTORS' JOINT FIRST AMENDED**
**PLAN AND DISCLOSURE STATEMENT**

PROGRESSIVE PLUMBING, INC. ("Plumbing"), PROGRESSIVE SERVICES, LLC ("Services"), and GRACIOUS LIVING DESIGN CENTER, INC. ("Gracious"), (Plumbing, Services, and Gracious may collectively be referred to as the "Debtor" or "Debtors"), offers this memorandum in support of Debtors': i) First Amended Joint Plan of Reorganization (Doc. 302) (the "Plan"); and ii) Disclosure Statement (Doc. 247). Definitions in the Plan shall be applicable in this document.

I.      <u>BACKGROUND</u>.

      A.      <u>Debtor and Business of Debtors.</u>

<u>Plumbing</u>. Plumbing is a commercial plumbing contractor in Clermont who has been in business since 1985. Plumbing's role is generally as a subcontractor on large commercial construction projects, ranging from hotels, condominiums, and other multi-story structures. Jobs which Plumbing has worked on include Marriott Ocean Watch Villas, Rosen Resort Hotel at Shingle

Creek, the Omni at Champions Gate, the Renaissance Hotel, and many other well-known buildings. Plumbing currently has multiple ongoing jobs in locations across the State.

<u>Services</u>. Services is a commercial plumbing on call service business based in Clermont, Florida. Services' role is generally to provide emergency and other plumbing services to commercial customers. Representative customers of Services include Publix and Racetrack. Services currently serves locations all around Central Florida and its environs.

<u>Gracious</u>. Gracious is a kitchen and bath showroom designer and provider in Clermont who is an affiliate of Plumbing. Gracious provides services and materials to both commercial and consumer customers.

**B**.    **<u>Events Leading Up To Chapter 11 Case</u>**.

<u>Plumbing</u>. For almost 30 years, Plumbing was a very successful and profitable commercial plumbing contractor which had few financial difficulties. Plumbing had and has a reputation as one of, if not the, best commercial plumbing contractor in Central Florida. Plumbing generally operated in Florida where it had longstanding relationships with many of the general contractors with whom it did business. During the "Great Recession," however, Plumbing was unable to procure sufficient jobs in Florida and began bidding for and winning jobs out of state and consequently began working with many more unknown general contractors.

In 2013, Plumbing entered into a General Indemnity Agreement (the "GIA") with a new surety, Allied World Specialty Insurance Company f/k/a Darwin National Assurance Company ("Allied"). Plumbing began to experience collection issues with general contractors on out-of-state jobs. The contracting industry is notorious for the "chiseling" that contractors do to their subcontractors, particularly with regards to retainage, but the financial pressures of the general

economy and the lack of a personal relationship caused many of the Plumbing's general contractors to begin making false claims about Plumbing's work in order to exert leverage and in order to refuse to make payments. In particular, one contractor, Evergreen Construction Company ("Evergreen"), began assessing so many additional back charges and change orders on one particular, large job, known as the Hyatt Atlanta, that Plumbing was put in a precarious position where it would stand to lose thousands of dollars if it continued on the job.

Evergreen hired a new subcontractor who proceeded to bill for everything Plumbing had already done, as well as overbilled for the work necessary to complete the job. Costs spiraled out of control, and an expected loss of approximately $100,000.00 ballooned into a claimed loss of over $750,000.00.  In the meantime, Plumbing's financial difficulties were increasing and it was unable to meet all of its obligations, including its payroll taxes, and Allied was also financing material and labor costs for some of Plumbing's jobs.  Allied demanded immediate payment of over $750,000.00 as an indemnity under the GIA.  Plumbing simply did not have the liquidity to comply with this request and further disputed the amount due.

After negotiations, Allied and Plumbing reached a settlement whereby, on July 8, 2015, Plumbing executed a promissory note in the amount of $752,107.33 in favor of Allied (the "Allied Note"). The Allied Note provided for monthly payments on a ten-year amortization with a five-year term. To secure the Allied Note, Allied demanded collateral, and Plumbing and its affiliates and principals executed a Mortgage and Security Agreement (as amended, the "Allied Mortgage"). The Allied Mortgage granted a second mortgage to Allied in the Debtors' headquarters property, along with certain property owned by Debtors' principals personally. The Allied Mortgage (as amended) was recorded on July 27, 2015.

3

Barely one week after recording the Allied Mortgage, Allied called a default under the terms of the Allied Note. Allied then demanded the immediate execution of deeds to all of the real property collateral and the immediate turnover to Allied of all funds from all of Plumbing's jobs. On August 6, 2015, Allied sent letters to certain of Plumbing's general contractors instructing and demanding that they forward all amounts due to Plumbing to Allied instead (the "Letters"). The Letters were devastating to Plumbing's business as its general contractors stopped paying anyone. On the same date as Debtors filed this bankruptcy, Allied filed an action against Debtors, *et al*, before the District Court in the Middle District of Florida.

Services and Gracious. Services and Gracious guaranteed Plumbing's GIA with Allied and co-signed the Allied Note. As Plumbing's relationship with Allied soured in July and August, 2015, Services and Gracious were dragged into the dispute and forced to join in this chapter 11 bankruptcy case.

C.      **Chapter 11 Case**.

On August 24, 2015 (the "Petition Date"), the Debtors filed their respective petitions for relief under Chapter 11 of Title 11 of the United States Code ("Code"). Since the Petition Date, the Debtors have continued to operate their business as debtors-in-possession under §§ 1107(a) and 1108 of the Code (Doc. 21). No Official Committee of Unsecured Creditors, trustee or examiner has been appointed.

The Debtors filed emergency motions on or shortly after the Petition Date. First, the Debtors filed a Motion for Joint Administration of the three cases (Doc. 5), the Debtors filed a Motion to Maintain Pre-Petition Bank Accounts (Doc. 3), the Debtors filed an Emergency Motion for Authority to Pay Prepetition Compensation and Benefits, seeking authority to pay the pre-petition wages and

benefits of its non-affiliate employees (Doc. 9), the Debtors filed an Emergency Motion to Use Cash Collateral (Doc. 4), the Debtors filed a Motion to Pay Critical Vendors (Doc. 8), and the Debtors filed a Motion to Authorize Adequate Protection and to Pay Utilities (Doc. 7). Second, the Debtors filed an Application to Set Affiliate and Insider Officers' Salaries Nunc Pro Tunc to the Petition Date (Doc. 6), seeking authority to pay William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II (the "Lawsons"), their normal salaries during the course of the bankruptcy case. On August 27, 2015, the Bankruptcy Court held an emergency preliminary hearing on the foregoing Motions, and granted the requested relief as to each such Motion (Doc. Nos. 39, 40, 41, 42, 43, and 45), except as to officers' salaries, which was granted on October 29, 2015 (Doc. No. 136).

The Debtors have also filed an Application to Employ Roman V. Hammes and the Law Firm of Roman V. Hammes, P.L. as Debtor's counsel (Doc. 12). The Debtors have also filed an Application to Employ Michael A. Nardella and the Law Firm of Nardella & Nardella, PLLC as Debtor's counsel (Doc. 14).

On September 16, 2015, the Debtors filed Schedules and Statements of Financial Affairs (Doc. 76, 79, and 81). On September 21, 2015, the United States Trustee conducted and concluded the 341 meeting of creditors. No creditors' committee has been appointed.

On August 26, 2015, the Debtors filed a Motion to Compel Compliance with the Automatic Stay and require Allied to retract the letters sent to the Debtors' general contractors (Doc. 22). After an evidentiary hearing on September 9, 2015, the Court granted the Motion and the letters were retracted (Doc. 98).

On December 1, 2015, the Debtors filed a Motion to Sell Property Free and Clear of Liens (Doc. 169) in order to sell its "Fab Shop." On January 20, 2016, the Court entered an order

approving the sale (Doc. 208) and the property was sold.

On March 25, 2016, the Debtors filed their Joint Plan of Reorganization (Doc. 239), as amended by the Plan, and on March 29, 2016, the Debtors filed the Disclosure Statement.  The Court entered an order (Doc. 253) conditionally approving the Disclosure Statement and scheduling a combined hearing to consider Disclosure Statement and confirmation of the Plan.

      **D.**    **Summary of Plan**.  Under the Plan, the reorganized Debtors will:

      1.    continue to operate their businesses in the ordinary course;

      2.    issue enforceable obligations, and

      3.    distribute cash payments.

**II.**    **CONFIRMATION STANDARDS.**

      **A.**    **Plan Compliance - Section 1129(a)(1).**[1]    The Plan complies with the applicable provisions of the Bankruptcy Code.  Among other things, the Plan:

      1.    designates, subject to §1122 of the Bankruptcy Code, Classes of Claims, and Classes of Interest;

      2.    specifies any Class of Claims or Interests that is not impaired under the Plan;

      3.    specifies the treatment of any Class of Claims or Interest that is impaired under the Plan;

---

[1] Some Courts have concluded that "it is doubtful that violations of Code provisions unrelated to the form and content of a plan, such as voting procedure, implicate Section 1129(a)(1) . . . "Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2nd Cir. 1988).  Accord, In re AOV Industries, Inc., 792 F.2d 1140, 1150 (D.C. Cir. 1986).

4.      provides the same treatment for each Claim or Interest of a particular Class, unless the holder of a particular Claim or Interest agrees to a less favorable treatment of such particular Claim or Interest.

5.      provides adequate means for implementation of the Plan, such as:

a.      retention by the Debtors of property of the estate;

b.      extension of maturity dates on claims;

c.      reduction of interest rates on claims; and

d.      contains only provisions that are consistent with the interests of creditors and equity security holders and with public policy with the respect to the manner of selection of any officer, director, or trustee under the Plan and any successor of such officer, director or trustee.

**B.      Proponent Compliance - Section 1129(a)(2)**.[2]      The proponent of the Plan, the Debtors, have complied with the applicable provisions of the Bankruptcy Code.  Among other things, the Debtors have:

1.      performed and complied with the duties imposed under Bankruptcy Code §1107; and

2.      solicited acceptances of the Plan only in compliance with Bankruptcy Code §1125.

---

[2] "The principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of Section 1125 in the solicitation and acceptances of the plan. " In re Texaco, Inc., 84 Bankr. 893, 906-7 (Bankr. S.D.N.Y. 1988).  See also H.R. Rep. No. 95-595, 95th Cong. lst Sess. 412 (1977).

**C.** **Good Faith - Section 1129(a)(3)**.[3]   The Plan has been proposed in good faith[4] and not by any means forbidden by law.  The primary objectives of the Debtors in proposing the Plan:

1.  provide for payment of Allowed Priority, Secured, and Unsecured Claims;

2.  preserve going concern value of the business and employees' welfare;

3.  obtain restructuring and liquidation of large debts; and

4.  assume unexpired contracts.

**D.** **Payments – Section 1129(a)(4)**.  All payments made or to be made by the Debtors in or in connection with the Chapter 11 case or in connection with the Plan have been approved by or are subject to this Court's approval, including:

| Name | Position | Approximate Claim |
|---|---|---|
| Roman V. Hammes, P.L.[5] | Attorneys for Debtor-in-Possession | $55,284.41[6] |
| Nardella & Nardella, PLLC[7] | Attorneys for Debtor-in-Possession | $76,849.96[8] |

---

[3] If no objection is timely filed, then the Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on the issues. Rule 3020(b)(2) F.R.B.P.

[4] "Good faith" merely requires that "there be a reasonable likelihood that the plan will achieve a result consistent with the standards described under the Code."  Hanson v. First Bank of South Dakota, N.A., 828 F.2d 1310, 1315 (8th Cir. 1987).  Accord, In re Madison Hotel Associates, 749 F.2d 410, 425 (7th Cir. 1984).

[5] See Doc. No.'s 288, 289 and 290 for a complete breakdown of this claim.

[6] Total claim as of May 16, 2016. A portion of the total claim has been paid from the retainer.

[7] See Doc. No.'s 291, 292 and 293 for a complete breakdown of this claim.

[8] Total claim as of May 16, 2016. A portion of the total claim has been paid from the retainer.

Martin, Klayer & Assoc.[9]          Accountants for                          $17,072.00[10]
                                    Debtor-in-Possession


**E.    Officers/Directors - Section 1129(a)(5).**[11]  Upon the Effective Date, the operation of

the reorganized Debtors shall be the general responsibility of the current management of the Debtors,

William Lawson, Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II, who shall

thereafter have the continued responsibility for the management, control, and operation of the

reorganized Debtors.  Subject to the Plan, the management, operation, lease, sale, or abandonment of

the assets of Debtors will be in the sole discretion of the respective Presidents and CEO acting in

good faith in accordance with their business judgment and will not be subject to the supervision of

the Bankruptcy Court, the creditors, or anyone else. It is projected that insiders William Lawson,

Charlene Lawson, Kimberly Lawson-Sapp, and William Lawson II will remain as the officers,

directors, and managers for each Reorganized Debtor.  Debtors project monthly compensation to

insiders and management will be the same or lower as already approved by the Court during the

pendency of this bankruptcy case. If, and only if, Class 31 does not vote in favor of the Plan, the

Debtors shall conduct an auction of Plumbing's equity interest at the hearing on confirmation of the

Plan, which could result in a change of management.


**F.    Government Approval - Section 1129(a)(6)**.  Debtors' businesses are not subject to

---

[9] See Doc. No.'s 286 and 287 for a complete breakdown of this claim.

[10] Total claim as of May 16, 2016. A portion of the total claim has been paid from the retainer.

[11] "Section 1129(a)(5) does not require anything more than full and complete disclosure.  In *re
Sound Radio, Inc.*, 18 B.C.D. 788 (Bankr. D. N.J.1988).

any government regulatory agency with jurisdiction whose approval would be needed.

G.    **Best Interest of Creditors - Section 1129(a)(7)**.[12]

1    **Chapter 7 Liquidation**. Debtors have carefully considered the probable effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors and holders of Equity Interests.  Debtors believe that liquidation would result in substantial diminution in the value to be realized by creditors because : (i) failure to utilize the expertise of current management; (ii) additional administrative expenses involved in the appointment of the trustee and professionals to assist the trustee; (iii) additional expenses and Claims, some of which would be entitled to priority and  would arise by reason of the liquidation and from rejection of leases and other executory contracts in connection with the termination of the Debtors' operations; (iv) failure to obtain new capital; (v) the substantial time which would elapse before creditors would receive any distribution in respect of their Claims; and vi) loss of operating income.  Debtors project

---

[12] Section 1129(a)(7) provides in relevant part:

With respect to each impaired Class of Claims or Interests—

(A) each holder of a claim or interest of such class:
   i. has accepted the Plan; or
   ii. will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of [the Bankruptcy Code] on such date; or
(B) if section 111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan on account of such claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claim.

that Secured Claims would exceed the proceeds of liquidation of the business and assets of Debtors.

Plumbing projects a liquidating distribution as follows:

| Plumbing Assets on Petition Date | Value |
|---|---|
| 1064 W. Highway 50 (with 2 adjacent lots) | $0[13] |
| 4434 Gearhart Road | $90,000[14] |
| Bank Accounts and Cash | $500[15] |
| Accounts Receivable | $0[16] |
| Work Vehicles | $47,320[17] |
| Furniture, Fixtures and Equipment | $0[18] |
| Tools and Equipment | $0[19] |

---

[13] Real estate valued at $1,600,000. Property subject to liens in favor of First Green Bank ($1,509,545), IRS ($242,444) and Allied ($752,100). In a hypothetical chapter 7, $0 would come into the estate

[14] Real estate valued at $100,000. In a hypothetical chapter 7, the trustee would incur at least $10,000 in closing costs

[15] Plumbing had $46,353 in its First Green Bank accounts on the Petition Date and $500 in petty cash. The First Green Bank deposits would be subject to the First Green Bank liens. In a hypothetical chapter 7, $500 would come into the estate

[16] Plumbing had $2,932,878 in accounts receivable on the Petition Date. The liquidation value of these receivables is estimated to be $293,287. The receivables are subject to liens in favor of First Green Bank ($1,509,545) and Allied ($752,100). In a hypothetical chapter 7, $0 would come into the estate.

[17] Plumbing had $143,745 in vehicles on the Petition Date. $47,320 of these vehicles were unencumbered.

[18] Plumbing had a going concern FF&E value of $75,000 on the Petition Date. $15,000 of this amount was encumbered by purchase money liens in favor of Canon, Marlin and PNC. The remaining $60,000 is encumbered by liens in favor of First Green Bank ($1,509,545) and Allied ($752,100). In a hypothetical chapter 7, $0 would come into the estate.

[19] Plumbing had a going concern tools and equipment value of $150,000 on the Petition Date. Plumbing estimates the liquidation value of the remaining assets to be 25% of going concern value or $37,500. The tools and equipment are encumbered by liens in favor of First Green

Inventory                                             $0[20]

                    Total:                            $137,820[21]

Services and Gracious are paying their creditors 100% of all Allowed Claims, and each Class for

same has either accepted the Plan or will receive more than would be distributed in a chapter 7

liquidation.

            2.      **Distribution under Plan**.  The Plan provides for payment of: i) all Allowed

Secured Claims; ii) all Allowed Priority Tax Claims; iii) all Allowed Unsecured Claims of Gracious

and Services; and iv) an amount not to exceed $380,000.00 on account of Allowed Unsecured

Claims of Plumbing.  Therefore, the expected recovery under the Plan exceeds the recovery under a

hypothetical Chapter 7 liquidation and the Plan satisfies the "best interests" of creditors test.

        H.      **Accept/Reject – Section 1129(a)(8)**.[22]  Debtor's ballot tabulation is attached and

incorporated by reference as **Exhibit A**.  As more fully set forth in the tabulation:

            1.      Classes 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 24, 26, 28, 29, 30,

and 37 are not impaired under the Plan;[23]

---

Bank ($1,509,545) and Allied ($752,100). In a hypothetical chapter 7, $0 would come into the
estate.

[20] Plumbing had an inventory value of $35,000 on the Petition Date. The inventory is
encumbered by liens in favor of First Green Bank ($1,509,545) and Allied ($752,100). In a
hypothetical chapter 7, $0 would come into the estate.

[21] Actual amount will be reduced further by the costs associated with administering a chapter 7
estate, including the chapter 7 trustee's fees.

[22] Acceptance by a class of creditors requires two-thirds in amount and more than one-half in
number of the allowed claims actually voting.  11 U.S.C. §1126(c).

[23]  Voting is not required by an unimpaired Class, which is conclusively presumed to accept
the Plan.  11 U.S.C. §1126(f).

    2.       Classes 1, 2, 3, 5, 31[24], and 32 are impaired and have accepted the Plan;

    3.       Classes 4, 6, 7, 22, 23, 25, and 27 have not voted;[25]

    4.       Class 33 rejected the Plan; however, the Plan is fair and equitable and does not discriminate unfairly with respect to such Class.[26]

    **I.**      **Priority Claims - Section 1129(a)(9)**.  Except to the extent that the holder of the Claim agrees to different treatment, the Plan provides as follows:

    1.       <u>Allowed Non-Tax Priority Claims.</u>  Cash equal to the amount of such Claims. Debtor is not aware of material Non-Tax Priority Claims.

    2.       <u>Allowed Priority Tax Claims.</u>  Tax notes payable over a period not exceeding five (5) years after the Petition Date in full at 3% interest. Debtor estimates such Claims to be approximately $300,000.00.

    **J.**      **Acceptance By Impaired Class – Section 1129(a)(10)**.[27]  As more fully set forth in

---

[24] In addition, one creditor in Class 31 who filed a ballot to reject the plan has stated it will change its vote to acceptance provided that an order is entered on its motion for relief from stay, to which motion there has been no objection.

[25] An impaired creditor's failure to vote on or object to a plan of reorganization constitutes acceptance of the plan for purposes of §1129(a)(8) and (b). <u>Heins v. Ruti-Sweetwater, Inc.</u>, 836 F.2d 1263, 1266-7 (10th Cir. 1988); <u>In re Szostck</u>, 886 F.2d 1405, 1413 (3rd Cir. 1989). <u>In re Campbell</u>, 89 Bankr. 187 (Bankr. N.D. Fla. 1988), the court holds that "those impaired classes which failed to vote and did not object to confirmation of the plan are deemed to have accepted the plan for purposes of meeting the requirements of §1129(a) of the Bankruptcy Code." <u>Id.</u> at 188.  See, <u>In re Yentis</u>, 125 Bankr. 158, 163 (N.D. Tex. 1991)(". . . concerned creditors will take an active role in protecting claims.")

[26] See discussion of cramdown below.

[27] The legislative history of the definition of "impairment" suggests that the impairment can be of nominal financial significance, since Congress rejected both the Bankruptcy Act definition and the Bankruptcy Commission's recommendation that impairment be deemed to exist only if the class is materially and adversely affected. <u>Commission Report</u>, Section 7-

the attached ballot tabulation, an impaired Class has accepted the Plan, determined without including

an acceptance of the Plan by an insider, including Classes 1, 2, 3, 5, and 32.

**K.    Feasibility – Section 1129(a)(11).**[28]

The Debtor contends that it will be able to make the payments required under the Plan.  Attached to

the Disclosure Statement as Exhibit B (Doc. 247-2), the projected revenue and operating expenses

are within the range of historical revenue and operating expenses of Debtors and will be sufficient to

cover all payments required under the Plan.

**L.    Trustee Fees - Section 1129(a)(12).**  The Plan provides for the payment of all fees

payable under 28 U.S.C. §1930 on the Effective Date of the Plan.

**M.    Retirement Benefits - Section 1129(a)(13).**  Debtors do not provide retiree benefits.

**N.    Domestic Support – Section 1129(a)(14).**  This section is not applicable to the

Debtors.

**O.    Individual Case – Section 1129(a)(15).**  This section is not applicable to the Debtors.

**P.    Non-Profit Debtors – Section 1129(a)(16).**  This section is not applicable to the

Debtors.

---

310(d)(1); In re Barrington Oaks General Partnership, 15 Bankr. 952 (Bankr. D. Utah 1981).  See, In re Sun Country Development, Inc., 754 F.2d 406, 408 (5th Cir. 1985), (the plan was proposed in good faith even though it was modified to impair the unsecured creditors, apparently solely to satisfy Section 1129(a)(10)); In re L&J Anaheim Associates, 995 F.2d 940, 943 (9th Cir. 1993) ( impairment requires nothing more than altered rights even if the alteration enhances the rights of the creditor); In re Hotel Associates of Tucson, 165 Bankr. 470 (9th Cir. BAP 1994), (a class of unsecured claims to be paid in full with interest 30 days after the effective date was an impaired class).

[28] The Court must determine "whether the plan offers a reasonable assurance of success. Success need not be guaranteed."  Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988).

Q. **<u>Cramdown - Section 1129(b)</u>**.  Classes 4, 6, 7, 22, 23, 25, 27, and 33 are impaired and have rejected the Plan or not cast a ballot; however, the Plan does not discriminate unfairly and is fair and equitable with respect to such Claims as described in the Motions to Cramdown.

R. **<u>Multiple Plans - Section 1129(c)</u>**.  This section is not applicable to the Debtors.

S. **<u>Avoidance – Section 1129(d).</u>**  This section is not applicable to the Debtors.

T. **<u>Small Business Case – Section 1129(e)</u>**  This section is not applicable to the Debtors.

III.    **DECLARATION UNDER PENALTY OF PERJURY.**   The undersigned offers this declaration in support of confirmation of the Plan and declares under penalty of perjury: (i) I am the President of Gracious, and the Treasurer and CFO of Plumbing and Services; (ii) I have participated in and supervised the formulation of the Plan, Disclosure Statement and this Confirmation Memorandum; and (iii) I have personal knowledge of the factual matters set forth in this Confirmation Memorandum offered in support of the Plan and such factual matters are true.

**Progressive Plumbing, Inc.**

By:    Kimberly Lawson-Sapp
Title:   CFO and Treasurer


**Progressive Services, LLC**

By:    Kimberly Lawson-Sapp
Title:   CFO and Treasuer


**Gracious Living Design Center, Inc.**

By:    Kimberly Lawson-Sapp
Title:   President


Dated: June _6_, 2016.

**IV.**    **CERTIFICATE OF SERVICE**.  I certify that a copy of this confirmation memorandum,

with all attachments, has been served on June 6, 2016 by electronic notice to United States Trustee,

400 West Washington Street, Suite 1101, Orlando, FL 32801.

<u>/s/ Michael A. Nardella</u>
Michael A. Nardella, Esq.
Florida Bar No. 051265
Nardella & Nardella, PLLC
250 East Colonial Drive, Suite 102
Orlando, FL 32801
(407) 966-2680
mnardella@nardellalaw.com

Counsel for Debtor

and

<u>/s/ Roman V. Hammes</u>
Roman V. Hammes, Esq.
Florida Bar No. 087250
Roman V. Hammes, P.L.
1920 N. Orange Ave., Suite 100
Orlando, FL 32804
(407) 650-0003
roman@romanvhammes.com

Counsel for Debtor

**EXHIBIT A**

**<u>BALLOT TABULATION</u>**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

|  |  |
|---|---|
| PROGRESSIVE PLUMBING, INC., | Chapter 11<br>Case No.: 6:15-bk-07275-KSJ |
| PROGRESSIVE SERVICES, LLC, and<br>GRACIOUS LIVING DESIGN<br>CENTER, INC. | Jointly Administered with<br>Case No.: 6:15-bk-07276-KSJ<br>Case No.: 6:15-bk-07277-KSJ |

Debtors.
_____/

## BALLOT TABULATION

Date prepared:                              June 6, 2016

Prepared by:                                Roman V. Hammes, Esq.
                                            Michael A. Nardella, Esq.
                                            Attorneys for the Plan Proponents

## SUMMARY OF VOTE BY CLASSES OF CLAIMS AND INTERESTS

| | | Impaired/ Unimpaired I/U | Total Voting | | Acceptances | | Percentages | | Requisite Vote Y/N |
|---|---|---|---|---|---|---|---|---|---|
| Class | Description/Name of Creditor | | No. | Amount | No. | Amount | No. | Amount | |
| 1 | FGB (Plumbing, Services, and Gracious) | I | 1 | $1,015,142.21 | 1 | $1,015,142.21 | 100 | 100% | Y |
| 2 | FGB (Plumbing, Services, and Gracious) | I | 1 | $494,403.66 | 1 | $494,403.66 | 100 | 100% | Y |
| 3 | FGB (Plumbing and Gracious) | I | 1 | $100,086.95 | 1 | $100,086.65 | 100 | 100% | Y |
| 4 | Internal Revenue Service (Plumbing) | I | 0 | | | | | | |

1

| Class | Description/Name of Creditor | Impaired/ Unimpaired I/U | Total Voting | | Acceptances | | Percentages | | Requisite Vote Y/N |
|---|---|---|---|---|---|---|---|---|---|
| | | | No. | Amount | No. | Amount | No. | Amount | |
| 5 | Allied (Plumbing, Services, and Gracious) | I | 1 | $2,001,681.97 | 1 | $2,001,681.97 | 100 | 100 | Y |
| 6 | Canon Financial Srvs (Plumbing) | I | 0 | | | | | | |
| 7 | Marlin (Plumbing) | I | 0 | | | | | | |
| 8 | PNC Equipment Financing, LLC (Plumbing) | U | 0 | | | | | | |
| 9 | Ford Motor Credit Company (Plumbing) | U | 1 | $5,732.58 | 1 | $5,732.58 | 100 | 100 | Y |
| 10 | Ford Motor Credit Company (Plumbing) | U | 1 | $5,704.31 | 1 | $5,704.61 | 100 | 100 | Y |
| 11 | Ford Motor Credit Company (Plumbing) | U | 1 | $5,707.58 | 1 | $5.707.58 | 100 | 100 | Y |
| 12 | Ford Motor Credit Company (Plumbing) | U | 1 | $5,998.12 | 1 | $5,998.12 | 100 | 100 | Y |
| 13 | Ford Motor Credit Company (Plumbing | U | 1 | $12,252.42 | 1 | $12,252.42 | 100 | 100 | Y |
| 14 | Ford Motor Credit Company (Plumbing | U | 1 | $14,620.77 | 1 | $14,620.77 | 100 | 100 | Y |
| 15 | Nissan Motor Acceptance Corp. (Plumbing) | U | 0 | | | | | | |
| 16 | Nissan Motor Acceptance Corp. (Plumbing) | U | 0 | | | | | | |
| 17 | Nissan Motor Acceptance Corp. (Plumbing) | U | 0 | | | | | | |
| 18 | Nissan Motor Acceptance Corp. (Plumbing) | U | 0 | | | | | | |
| 19 | Ally Bank (Services) | U | 0 | | | | | | |
| 20 | Ally Bank (Services) | U | 0 | | | | | | |
| 21 | Ally Bank (Services) | U | 0 | | | | | | |
| 22 | Lake County Tax Collector(Plumbing and Gracious) | I | 0 | | | | | | |
| 23 | Lake County Tax Collector(Plumbing and Gracious) | I | 0 | | | | | | |
| 24 | Lake County Tax Collector(Plumbing and Gracious) | U | 0 | | | | | | |

2

| Class | Description/Name of Creditor | Impaired/ Unimpaired I/U | Total Voting | | Acceptances | | Percentages | | Requisite Vote Y/N |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | No. | Amount | No. | Amount | No. | Amount | |
| 25 | Lake County Tax Collector(Plumbing and Gracious) | I | 0 | | | | | | |
| 26 | Lake County Tax Collector(Plumbing and Gracious) | U | 0 | | | | | | |
| 27 | Lake County Tax Collector(Plumbing) | I | 0 | | | | | | |
| 28 | Lake County Tax Collector(Plumbing) | U | 0 | | | | | | |
| 29 | Lake County Tax Collector(Plumbing) | U | 0 | | | | | | |
| 30 | Lake County Tax Collector(Gracious) | U | 0 | | | | | | |
| 31 | Unsecured Creditors of Plumbing | I | 18[1] | $1,263,518 | 18 | $1,263,518 | 100 | 100 | Y |
| 32 | Unsecured Creditors of Services | I | 1 | $48,673.70 | 1 | $48,673.70 | 100 | 100 | Y |
| 33 | Unsecured Creditors of Gracious | I | 1 | $1,203.11 | 0 | 0 | 0 | 0 | N |
| 34 | Equity (Plumbing) | I | NA | | | | | | |
| 35 | Equity (Services) | I | NA | | | | | | |
| 36 | Equity (Gracious) | I | NA | | | | | | |
| 37 | Leon County Tax Collector (Pumbing) | U | 0 | | | | | | |

---

[1] Kellogg & Kimsey, Inc. cast a class 31 ballot on June 3, 2016 in the amount of $813,547.94 rejecting the plan. Undersigned counsel for the Debtors has been informed by counsel for Kellogg & Kimsey that the rejection ballot will be withdrawn at the confirmation hearing on June 10, 2016 if its Motion for Relief from Stay (Doc. No. 251) is granted. To date no objections to the motion have been raised. Accordingly, the Debtors did not include the rejection ballot in the tabulation for class 31.

/s/Michael A. Nardella
Michael A. Nardella
Florida Bar No. 051265
Nardella & Nardella, PLLC
250 East Colonial Drive, Suite 102
Orlando, FL 32801
(407) 966-2680
mnardella@nardellalaw.com
Attorney for Debtor

and

/s/ Roman V. Hammes
Roman V. Hammes, Esq.
Florida Bar No. 087250
Roman V. Hammes, P.L.
1920 North Orange Ave
Suite 100
Orlando, FL 32804
(407)650-0003
roman@romanvhammes.com
Attorney for the Debtor

Certificate of Service

I certify that a copy of the foregoing was served on June 6, 2016 on the CM/ECF participants in this case and the following non CM/ECF participants: none.

/s/Roman V. Hammes
Roman V. Hammes